EDWARD BROWN
P.O. BOX 409020
IONE, CA 95640
M.C.S.P. A-5/207
C.D.C.#T-60348



**FILED**

MAY  4 2007



CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EDWARD DON BROWN,          )
    PETITIONER,            )
                          )
                          )
                          )
                          )
    V.                    )               PETITION FOR WRIT OF
                          )               HABEAS CORPUS "TRAVERSE"
                          )
                          )               CASE# CIV S-05-1195 LKK DAD P
CAMPBELL, WARDEN,         )
    RESPONDENT            )
                                          HON. DALE A. DROZD,
                                          U.S. MAGISTRATE JUDGE

1               Standard of Review

2          Petitioner filed his habeas petition after April 24,
3  1996, thus review of his habeas petition is within the ambit
4  of the Antiterrorism and Effective Death Penalty Act ("AEDPA"),
5  effective April 24, 1996.

6          The AEDPA requires considerable deference to state
7  court decisions. The "state court's factual findings are
8  presumed correct unless the petitioner rebuts the presumption
9  with clear and convincing evidence." Pollard v. Galaza, (9th
10  Cir. 2002) 290 F.3d 1030, 1033; 28 U.S.C. § 2254(e)(1).

11          The application of law to the historical facts must
12  be reviewed de novo. [See Thompson v. Borg, (9th Cir. 1996)
13  74 F.3d 1371, 1373.] As an assiduous de novo review of the
14  factual record will elucidate petitioner's contentions within
15  the purview of 28 U.S.C. § 2254(d)(2) (i.e., "resulted in
16  a decision that was based on an unreasonable determination
17  of the facts in light of the evidence presented at the State
18  court proceeding.")

19          Petitioner unequivocally denies all of
20  Respondent's dispositive allegations asserted in "Answer To
21  Petition For Writ Of habeas Corpus" ("APWHC"); unless expressly
22  so declared.

23          A state court decision is "contrary to" federal
24  law "if the state court applies a rule that contradicts the
25  governing law set forth in [Supreme Court] cases or if the
26  state court confronts a set of facts that are materially
27  indistinguishable from a decision of [the Supreme Court] and
28  nevertheless arrives at a result different from [Supreme Court]

                                    τ

1  precedent." Id. at 1173 (quoting Williams v. Taylor, 529 U.S.

2  362, 405-06 (2000) (O'Connor, J., concurring)). A state court

3  decision involves an unreasonable application if it correctly

4  identifies the governing rule but unreasonably applies it

5  to a new set of facts, see id. at 1174 (citing Williams, 529

6  U.S. at 413), or fails to extend a clearly established legal

7  principle to a new context in a way that is unreasonable,

8  see Bailey v. Newland, 263 F.3d 1022, 1028 (9th Cir. 2001)

9  (citing Van Tran v. Lindsey, 212 F.3d 1143, 1150 (9th Cir.

10  2000)).

11          In other words, a  federal court may grant relief

12  when a state court has misapplied a "governing legal principle"

13  to "a set of facts different from those of the case in which

14  the principle was announced." Lockyer v. Andrade, 538 U.S.

15  63, 70-71 (2003)(citing Williams v. Taylor, supra, at 407).

16

17

18

19

20

21

22

23

24

25

26

27

28

II

PETITIONER CONTENDS THE COUNSEL WAS IRREGULARLY, OR INEFFECTIVELY, OR SEVERELY ABRIDGED BECAUSE TRIAL COUNSEL FAILED TO PROFFER REQUISITE SUBSTANTIAL EVIDENCE DURING THE COMPETENCY PHASE OF THE TRIAL TO "RAISE A SUSPICION" THAT PETITIONER SUFFERED FROM A DEVELOPMENTAL DISABILITY AS DEFINED IN PENAL CODE SECTION 1370.1 CORRELATIVE WITH A PLEA OF NOT GUILTY BY REASON OF INSANITY, SUBSEQUENTLY PROCURING PETITIONER'S ACQUIESCENCE TO AN EXECUTORY CONTRACT WITH THE GOVERNMENT, VIOLATING PETITIONER'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION.

The United States Constitution Sixth Amendment, Cal. Const. Art. 1 §15, pertain to defendant's right to competent counsel. A criminal defendant is entitled to counsel at all critical stages of the proceedings when his substantial rights may be affected. Mempha v. Rhay, (1967) 339 U.S. 128, 134[88 S Ct 254,256].

To establish actual prejudice in the context of an ineffective assistance claim, petitioner must meet the prejudice standard established in Strickland v. Washington, (1984) 466 U.S. 668[104 S Ct 2052]80 L Ed 2d 674, by demonstrating a "reasonable probability that, but for...[the] errors, the result of the proceeding would have been different."

A defense attorney has a general "duty to make reasonable investigations or to make a reasonable decision that makes a particular investigation unnecessary." Strickland, supra, at p.688-690; Harris v. Wood (9th Cir 1995) 64 F 3d 1432, 1435-36; Turner v. Duncan, (9th Cir 1998) 158 F 3d 449.]

Although there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential," defense counsel must, "at a minimum, conduct a reasonable investigation, enabling him to make informed decisions about how best to represent his client." Strickland, 466 U.S. at 639.

Petitioner contends appointed trial counsel [Dennis Hoptowit], failed to perform basic pretrial preparation in accord with a plea of not guilty by reason of insanity (RT 1) (e.g., to research and ultimately proffer readily available evidence that petitioner's developmental disability fit within the criterion for a finding of "substantial" evidence, requiring the appointment

1

1  of the director of the regional center for the developmentally disabled prior
2  to a court determination on the issue of competency.) Reasonably competent
3  counsel should have known the laws, regulations and standard[s] correlative
4  with his client's case. [See Harris by and through Ramsayer v. Blodgett,
5  (1994) 853 F. Supp. 1239, 1256; Futch v. Dugger, (10th Cir 1989) 874 F 2d
6  1483.]

7      A defendant may not be criminally prosecuted while he is incompetent, and
8  the state must give him access to procedures  for determining his competency.
9  See Medina v. California, 505 U.S. 437, 449 (1992) (citing Drope v. Missouri,
10 420 U.S. 162, 172-73 (1975); Pate v. Robinson, 383 U.S. 375,386 (1966)).

11     It is well settled that the criminal trial of an incompetent defendant
12 violates due process. Godinez v. Moran, (1993) 509 U.S. 389,396; Medina v.
13 California, 505 U.S. 437,449, [112 S Ct 2572,2579], 120 L Ed 2d 353,
14 establishes that a State may presume that the defendant is competent and
15 require him to prove incompetence by a preponderance of the evidence. Such a
16 presumption does not offend a "'pinciple of justice so rooted in the
17 traditions and conscience of our people as to be ranked as fundamental.'" Id.
18 at 445,[112 S Ct at 2577], for it affects the outcome "only in a narrow class
19 of cases...where the evidence that a defendant is competent is just as strong
20 as the evidence that he is incompetent," Id.  at 449,[112 S Ct at 2579.]

21     Competence to stand trial is rudimentary, for upon it depends the main
22 part of those rights deemed essential to a fair trial, including the right to
23 effective assistance of counsel, the rights to summon, to confront and to
24 cross-examine witnesses, and the right to testify on one's own behalf or to
25 remain silent without penalty for doing so. Drope, supra, 420 U.S. 171-172.
26 Riggins v. Nevada, 504 U.S. 127,139-140, 112 S Ct 1810, 1817-1818,
27 118-L-Ed-2d 479 (1992)(opinion concurring in judgment).

28     The test for incompetence is also well settled. A defendant may not be

put to trial unless he "'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [and] a rational as well as factual understanding of the proceedings against him.'" Dusky v. United States, 362 U.S. 402,[80 S Ct 788], 4 L Ed 2d 824 (1960)(per curiam).

Inchoate, in our assiduous analysis we can glean guidance in the state procedure[s] adopted to protect defendant[s] right not to be tried while incompetent.

Penal Code section 1367(a) provides:

> "A person cannot be tried or adjudged to punishment while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (Penal Code Sec. 1367(a);)(all statutory reference is to the California Penal Code.)

> Penal Code Section 1369, subdivision (a), specifically states: "If it is suspected the defendant is developmentally disabled, the court shall appoint the director of the regional center for the developmentally disabled established under Division 4.5 (commencing with Section 4500) of the Welfare and Institutions Code, or the designee of the director, to examine the defendant." (Penal Code Section 1369(a), emphasis added.) Section 1369, subdivision (a) further states: "Prior to issuing an order pursuant to this section, the court shall consider the recommendation of the regional center director."(Ibid.)

Thus, under Penal Code Section 1369, when there is substantial evidence that gives rise to a suspicion that a defendant is developmentally disabled, the defendant must be evaluated by the regional center for the developmentally disabled, and his competence to stand trial cannot be ruled upon until that is done and the trial court has considered the report of the regional center. (See People v. Castro, (2000) 78 Cal.App.4th 1402, 1417-1418; see also 5

1 | Witkin, Cal. Criminal Law (2d ed. 1989) Trial, §3002, pp. 3681-3682.)

2 | Tantamount, Penal Code Section 1370.1, subdivision (a)(1)(H) defines

3 | "developmenatlly disability," in pertinent part, as:

4 |   "...A disability that originates before an
    | individual attains age 18, continues, or can be
5 |   expected to continue, indefinitely and
    | constitutes a substantial handicap for the
6 |   individual... As defined by the Director of
    | Developmental Services, in consultation with the
7 |   Superintendent of Public Instruction, this term
    | shall include mental retardation ... this term
8 |   shall also include handicapping conditions found
    | to be closely related to mental retardation or
9 |   to require treatment similar to that required
    | for mentally retarded individuals, but shall not
10 |  include other handicapping conditions that are
    | solely physical in nature."
11 |

12 | Welfare and Institutions Code Section 4512, subdivision (a) provides

13 | essentially the same definition of developmental disability. (See Welfare &

14 | Inst. Code Section 4512(a); People v. Mobley, (1999) 72 Cal.App.4th 761, 787,

15 | fn. 17.)

16 | Developmental disability includes mental retardation. The American

17 | Psychiatric Association defines mental retardation as follows:

18 |   "Significantly subaverage general intellectual
    | functioning (Criterion A) that is accompanied
19 |   by significant limitations in adaptive
    | functioning in at least two of the following
20 |   skill areas: communication, self-care, home
    | living, social/interpersonal skills, use of
21 |   community resources, self-direction,
    | functional academic skills, work, leisure,
22 |   health, and safety (Criterion B). The onset
    | must occur before age 18 years (Criterion C)."
23 |

24 | (Diagnostic and Statistical Manual of Mental Disorders (4th Ed.)(1994)

25 | [DSM IV], at p.39)

26 | Petitioner contends the failure of defense counsel to marshall and

27 | subsequently proffer evidence of petitioner's developmental disability

28 | comporting to Penal Code Section 1367 et. seq. correlative with the

4

1 | established standard of review [i.e., the Diagnistic and Statistical Manual of
2 | Mental Disorders [DSM IV] in accord with section 1370.1 (a)(1)(H), resulted in
3 | a deficient performance. [See Seidel v. Markle, (9th Cir 1998) 146 F 3d 750;
4 | Jennings v. Woodford, (9th Cir 2002) 290 F 3d 1006,1013.]

5 | While ineffective assistance of counsel issue is common in the appellate
6 | arena, People v. Pope, (1979) 23 C 3d 412], it also is one which may be
7 | pursued in the context of a Motion for New Trial. Pope, supra, requires the
8 | reviewing court to "see if the record contains any explanation, for the
9 | challenged aspect of representation," and if it does, to "inquire whether the
10 | explanation demonstrates that counsel was reasonably competent and acting as a
11 | conscientious, diligent advocate."

12 | A defendant's representation is Constitutionally deficient if it falls
13 | "below an objective standard of reasonableness," or "outside the wide range of
14 | professionally competent assistance." Strickland, 466 U.S. at p.689]. The
15 | inexplicable failure to do even the most minimal investigation cannot be
16 | viewed a strategic decision. See Sanders v. Ratelle, (9th Cir 1994) 21 F 3d
17 | 1446,1456; United States v. Burrows, (9th Cir 1989) 872 F 2d 915,918; Evans v.
18 | Lewis, (9th Cir 1988) 855 F 2d 631,637].

19 | Moreover, petitioner's factual history elucidates significant subaverage
20 | functioning as a juvenile (e.g., petitioner's criminal record starts at age
21 | 10, at age 14 petitioner was ajudged a ward of the court.) In accord with
22 | criterion (B) DSM IV petitioner's interpersonal skills, self-care, home living
23 | and social skills make it pellucid that if counsel raised factual inclusive
24 | factors within the purview of section 1369(a) (i.e., developmentally
25 | disabled), the court would have been required to appoint the Regional Center
26 | Director. Notwithstanding, the mental, physical and sexual abuse petitioner
27 | sustained as a child, coupled with his significant alcohol and drug abuse
28 | problem.   Can we actually palliate defense counsel's failure to proffer evidence of

5

1 materiality under our Constitutional framework of jurisprudence? [See Exhibit
2 PWHC.]       Petitioner's statement subsequent to the offense adduces
3 petitioner's delusional thought pattern further exacerbated by visual and
4 auditory hallucinations (e.g., hearing voices to kill his father and himself.)
5 (See Exhibit PWHC.]    Given the fact the defense did not procure any expert
6 psychiatric testimony and the state's psychiatrist Dr. Wuehler deducing at the
7 time of the offense petitioner was suffering from a "mental defect" gives
8 significant weight to petitioner's contentions. The historical record contains
9 numerous medical records supporting petitioner's claim (e.g., Tehama County
10 Mental Helath and Butte County Behavioral Health), for the court's
11 consideration albeit all for not because the defense failed to marshall
12 pertinent evidence, proffer expert testimony and paramount, promulgate the
13 standard in accord with competency determinations (i.e., the DSM IV) resulted
14 in a superficial defense, resultant in prejudice.

15 The clear trend in Federal Courts is toward the admission of expert
16 testimony whenever it will aid the trier of fact, but warned that "a strong
17 countervailing restraint on the admission of expert testimony is the
18 defendant's right to a fair trial." United States v. Smith, 3 F 3d 1088,1097].

19 Apposite to the instant case the United States Ninth Circuit Court of
20 Appeals in Caro v. Calderon, (9th Cir 1999) 165 F 3d 1223 provided, defense
21 counsel have an obligation to conduct an investigation which will allow a
22 determination of what sort of experts to consult. Once that determination has
23 been made, counsel must present those experts with information relevant to the
24 conclusion of the experts. (Ibid); also see Hendricks v. Calderon, (9th Cir
25 1995) 70 F 3d 1032,1043-44].

26 The United States Supreme Court has read the Sixth Amendment right to
27 trial to include right to counsel. To satisfy this right to counsel, it is not
28 enough that a person who happens to be a lawyer is present at trial alongside

6

1 the accused. Rather, the "accused is entitled to be assisted by an
2 attorney...who plays the role necessary to ensure that the trial is fair."

3 A developmentally disability has been defined as one that originates
4 before the person reaches 18, continues or can be expected to continue
5 indefinitely, and constitutes a substantial handicap. The term includes mental
6 retardation, cerebral palsy, epilepsy, and autism, as well as handicapping
7 conditions closely related to mental retardation or requiring treatment
8 similar to that required for mentally retarded individuals.

9 In United States v. Hutson, 821 F 2d 1015 (5th Cir 1987): The Court
10 provided in determining defendant's competency to stand trial, quantity of
11 available evidence must be such that competency assessment can be labeled as
12 more than mere speculation.

13 Assuming aruendo defense counsel proffered all the readily available
14 evidence, procured expert psychiatric testimony and was aware and subsequently
15 promulgated established standards [DSM IV] petitioner would have had a
16 different outcome.

17 Abstruse as it may be defense counsel opted to enter his client
18 [petitioner] into an executory contract with the government. It is well
19 established a defendant cannot waive a fundamental right while incompetent.
20 Fay v. Noia, (1963) 372 U.S. 391,427 [an incompetent person cannot make an
21 intelligent waiver.] It is axiomatic that a court cannot except a defendant's
22 allocution to an offense [waiver of the right to jury trial, as with other
23 fundamental rights if not knowing and intelligent i.e., made with full
24 awareness of the nature of the right being waived and the consequences of the
25 waiver. In addition the waiver must be voluntary. (See Colorado v. Spring,
26 (1987) 479 U.S. 564,573; New York v. Hill, (2000) 528 U.S. 110,114-118.) The
27 burden is on the party claiming the existence of the waiver to prove it by
28 evidence that does not leave the matter to speculation, and doubtful cases

7

1   will be resolved against a waiver. (People v. McAuthur, (1992) 11 Cal.App. 4th
2   619,627.)

3       According to the Supreme Court, an attempt to retrospectively determine
4   the mental competency of an accused by means of a nunc pro tunc hearing, even
5   "under the most favorable circumstances," is hampered by "inherent
6   difficulties." Drope, supra, 420 U.S. 172, 95 S Ct 896.

7       The AEDPA does not countenance Federal Courts to turn an amaurotic eye to
8   state court decisions without regard to whether they are contrary to clearly
9   established Federal Law as determined by the United States Supreme Court.
10  Indeed true cooperative Federalism demands a more nuanced approach.

11      In O'Neil v. McAninch, 115 S Ct 992, 995 (1995): The Court noted that in
12  order to "protect individuals from unconstitutional convictions" and "to
13  guarantee the integrity of the criminal process," courts should find for-the
14  petitioner whenever the record leaves the conscientious judge in grave doubt
15  about the likely effect of an error.

16      [W]hether a criminal defendant has received such a "dignified or fair"
17  trial, as mandated by the Fourteenth Amendment, must be determined by
18  examining the particular facts of each case. (Rose v. Clark, (1986) 478 U.S.
19  570,577-578.)

20      [A] trial that is unfair, whatever the cause of such unfairness violates
21  due process of law clauses to the United States Constitution's Fourteenth
22  Amendment. See Menzies v. Procunier, (1984) 743 F 2d 281].

23      Tantamount, petitioner has assiduously sought to develop the factual
24  basis of his ineffective assistance of counsel claim[s], yet the state court's
25  failure to conduct prudent [plenary] evidentiary proceedings militates
26  fundamental unfairness. McDonald v. Johnson, (5th Cir 1998) 139 F 3d 1056].
27  Section 2254(e)(2) should not preclude an evidentiary hearing in federal Court
28  where an applicant has diligently sought to develop the factual basis of a

1 | claim for habeas relief, but denied the opportunity to do so by the State
2 | Court. Jones v. Wood, (9th Cir 1998) 114 F 3d 1002,1009]. Also see 28 U.S.C.
3 | §2254(d)(6)(West 1994); Silva v. Woodford, (9th Cir 2002) 279 F 3d 825,835].

4 | Simply put petitioner is entitled to a federal evidentiary hearing if 1)
5 | he has alleged facts that, if proven, would entitle him to habeas relief, and
6 | 2) he did not receive a full and fair opportunity to develop those facts in a
7 | state court. See Laboa v. Calderon, (9th Cir 2000) 244 F 3d 972,981, n.7;
8 | Phillips v. Woodford, (9th Cir 2001) 267 F 3d 966,973].

9 | Petitioner avers since it is quite apparent he falls within the ambit of
10 | section 1367 et seq. and the DSM IV regarding incompetency, a voluntary
11 | knowing and intelligent waiver of fundamental rights ipso facto could not have
12 | been procured thus in contravention to the mens legis, violative of
13 | petitioner's "substantive" rights ergo petitioner must be returned to his
14 | original status prior to the Constitutionally contumacious plea agreement. A
15 | fortiori, due process is at its apogee requiring competency determinations
16 | anew correlative with contentions ante. The instant petition is authored by a
17 | "next friend," albeit lodged pro se as petitioner's inability to seek relief
18 | for himself. Whitmore v. Arkansas, (1990) 495 U.S. 149.]

19
20
21
22
23
24
25
26
27
28

9

A WAIVER OF
"FUNDAMENTAL" RIGHTS PRIOR TO ACCEPTING PETITIONER'S ACQUIESCENCE TO A MYRIAD
OF CHARGES, THUS IN CONTRAVENTION OF MANDATED PROCEDURAL REQUIREMENTS,
ABRIDGING PETITIONER'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO THE
UNITED STATES CONSTITUTION.

Petitioner asserts in the instance of plain error rule the defendant is entitled to obtain review in a state/federal habeas corpus proceeding of plain error, whatever procedural defaults he may have committed. See Wainwright v. Sykes, (1976) 433 U.S. 72. The doctrine of procedural default is based on comity not jurisdiction. Petitioner avers the trial court failed to expressly take a waiver of petitioner's "substantial" rights ipso facto a voluntary and intelligent waiver is not possible. [See Exhibit E (Entry of Plea Transcript) PWHC.]

The United States Ninth Circuit Court of Appeals provided in United States v. Barron Jr., (9th Cir 1999) 172 F 3d 1153, a prisoner in custody has the right to bring a motion to vacate, set aside or correct a sentence, upon the grounds that the conviction/sentence was imposed in violation of the Constitution or Laws of the United States.

As a general rule, a defendant who enters a voluntary and intelligent guilty plea "may not thereafter raise independant claim[s] relating to the deprivation of Constitutional rights that occurred prior to entry of the guilty plea." See Tollet v. Henderson, (1973) 411 U.S. 258,267, however, the United States Supreme Court established exceptions to the bar on post-plea collateral challenges. In order to satisfy the Due process requirements of the Fifth Amendment, a defendant's guilty plea must be voluntary and intelligent. See Carter v. McCarthy, (9th Cir 1986) 806 F 2d 1373,1375]. We cannot possibly make such a determination in the instant case where the historical record is pellucid petitioner was never expressly admonished in-court what "fundamental" rights he would be waiving. (RT 4/11/02 pps. 6-10) If petitioner was aware he could have confronted and cross-examined his accuser and subpoenaed percipient witnesses he would have surely gone to trial. Thus resultant in undue

10

1  prejudice.

2      The factual record indicates on April 11, 2002 the information was
3  amended pursuant to petitioner's acquiescence to a plea bargain. (RT 4/11/02
4  pps. 1-5). The terms of the plea agreement required petitioner enter guilty pleas to
5  counts 2 through 5 and to admit correlative enhancements to wit: Ct.2, assault
6  with a firearm on a peace officer [Penal Code §245(d)(1)]; Ct.3, kidnapping
7  [§207]; Ct.4, first degree robbery [§211]; Ct.5, resisting an officer [§69].
8  Also included were special allegations of great bodily injury [§12022.7] and
9  personal and intentional use of a firearm causing great bodily injury [§§
10 12022.5(a)(1), 12022.53 subds.(b)(c)(d)]. (CT 11-13, 139: RT 4/11/02 2-6.]

11     Petitioner's trial counsel told petitioner to put his initials on the
12 circled numbers of the plea form or he'd get a double-life sentence. So
13 petitioner did so, unaware of his fundamental rights (e.g., to a jury trial,
14 to confront and cross-examine his accuser[s], the right to present evidence
15 and procure the subpoena power of the court, the right against self-
16 incrimination and to have legal representation at all stages of the
17 proceedings.) Mr. Hoptowit [Defense Counsel] was in a hurry as the court had
18 stopped the proceeding, so he could fill-out the amended plea forms. [See
19 Exhibit D PWHC (RT 4/11/02 p.5).]

20     Notwithstanding defense counsel's cursory admonishment viz, if you want
21 to take the plea just initial where you see the circles.  The government made
22 no attempt to succinctly promulgate exactly what rights petitioner would be
23 waiving. Albeit, petitioner initialled the plea form, no subsequent colloquy
24 was conducted by the court correlative with Bokin/Tahl rights. [See RT 4/11/02
25 pps.6-10.] Moreover, when the court has a plea of "not guilty by reason of
26 insanity" initially promulgated by the defendant it is only prudent to assess
27 the defendant is aware of the waiver. (Boykin v. Alabama, (1969) 395 U.S.
28 238,243-244; In re Tahl, (1969) 1 Cal 3d 133.)

11

1    Our federal courts have enunciated the plea of an individual whose sanity
2  is in question cannot be summarily accepted by the government without
3  conducting an interrogation before accepting the plea agreement. United States
4  v. Scott, (7th Cir 1978) 583 F 2d 362,364.

5    The admonitions in question arise from holdings in Boykin v. Alabama,
6  (1969) 395 U.S. 238 and In re Tahl, (1969) 1 Cal 3d 122. In Boykin, the United
7  States Supreme Court held that when a defendant voluntarily enters a guilty
8  plea, the trial court must affirmatively establish that the defendant is aware
9  of the Constitutional rights that he or [she] is waiving. [Boykin, supra, at
10 pp.242-244.] These rights include the right to a jury trial, the right against
11 self-incrimination, and the right to confront one's accusers. (Id. at 395 U.S.
12 234.) In Tahl, the California Supreme Court extended   the Boykin ruling by
13 requiring that the record must "expressly" show the defendant entered a guilty
14 plea and waived his or her Constitutional rights following the trial court's
15 enumeration of those rights. [In re Tahl, supra, 1 Cal 3d 131-132.]

16   Albeit the court conducted a brief colloquy with petitioner correlative
17 with his allocution, (RT 4/11/02 pps. 6-7), asking petitioner if he had any
18 questions regarding the plea form or other procedures, enough time to talk
19 with his attorney about the possible consequences and asked petitioner if he
20 is entering the executory contract freely and voluntarily, and is aware of the
21 elements of the crimes and special allegations (Id. at RT 4/11/02 p.7.)

22       We  cannot  palliate  the  courts  failure  to  "personally"  take
23 petitioner's waiver of his fundamental rights. (People v. Montoya, (2001) 86
24 Cal.App. 4th 825,829.] In assessing whether there has been a waiver of
25 fundamental rights there is no specific formula or extensive questioning
26 beyond assuring that the waiver is personal, voluntary and intelligent. People
27 v. Castaneda, (1975) 52 Cal.App. 3d 334,344.

28      Asking the defendant if he understands or has any questions is not

                                     12

1 | remotely in equipoise to expressly enumerating the specific substantial rights
2 | to be waived. Ergo without a personal express waiver we cannot countenance
3 | that the ostensibly accepted plea was voluntary or intelligent.

4 |     Our Federal Courts have unambiguously articulated that the defendant must
5 | be aware of his fundamental rights "before" he pleads guilty, not that he will
6 | become aware of those rights some time "after" the plea. See United States v.
7 | Graibe, (9th Cir 1991) 946 F 2d 1428,1434]. Where the court has failed to
8 | provide the defendant with the required information regarding an important
9 | right, the record must demonstrate that the defendant was aware of the
10 | necessary information at the time he entered his plea. [Id. at Graibe, supra,
11 | p. 1434.]

12 |     The United States Ninth Circuit Court of Appeals in United States of
13 | America v. Vonn, 2000 Daily Journal, D.A.R. 10193, reaffirmed the established
14 | procedure, "Failure to advise defendant of continuing right to counsel at
15 | trial prior to accepting guilty plea is not harmless." Moreover, articulating
16 | the burden is on the government to make an affirmative showing on the record
17 | that the defendant was actually aware of the advisement for the error to be
18 | harmless. Also see United States v. Odedo, (9th Cir 1998) 154 F 3d 937,939].
19 | Analogous, to the instant case as the record succinctly indicates the trial
20 | court failed to comprehensively   advise petitioner of his "substantial"
21 | Constitutional rights necessary to invoke an intelligent waiver.

22 |     As the United States Supreme Court has observed, "the acceptance of a
23 | guilty plea requires the utmost solicitude of which courts are capable in
24 | canvassing the matter with the accused to make sure he has a full
25 | understanding of what the plea connotes and its consequences." Boykin, supra,
26 | 395 U.S. at pp. 243-244.]

27 |     Once a prisoner has demonstrated that the plea taking was not conducted
28 | in accordance with Boykin, the government can cure the defective plea-taking

13

1  transcript at an evidentiary hearing. The record developed by the government
2  at the evidentiary hearing must contain specific testimony pertinent to
3  whether the plea was intelligent and voluntary. Thus, the government must,
4  under these circumstances, "affirmatively prove" that the plea was voluntary
5  and intelligent.

6      We can glean substantial guidance in utilizing the verbatim record to
7  assess the subsequent attack on the plea. [Fed. Crim. Rev. Proc. 11(g),
8  Advisory Committee' note (1974)].

9                  "prejudice...is established when lack
                   of understanding in a specific and
10                 material respect is sufficiently
                   alleged and such asserted lack, if it
11                 existed, would have been disclosed by a
                   proper examination by the trial judge."
12                 Heiden v. United States, (9th Cir 1965)
                   353 F 2d 53].
13

14     Waiver is ordinarily a question of fact. The burden is on the party
15  claiming the existence of the waiver to prove it by evidence that does not
16  leave the matter to speculation, and doubtful cases will be resolved against
17  a waiver. (See People v. McCarthur, (1992) 11 Cal.App. 4th 619,627.)

18     Petitioner respectfully requests the de novo reviewing court assiduously
19  review the record of petitioner's allocution, once the court determines the
20  procedure was contumacious to state and federally established standards,
21  return the parties to their original status prior to the defective plea. A
22  fortiori, our Constitutional framework of jurisprudence under the Fifth, Sixth
23  and Fourteenth Amendments to the United States Constitution requires the
24  convictions[s] be vacated.

25
26
27
28

                                    14

PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL GUARANTEED
UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

1    Petitioner asserts the "cause" for the untimeliness of ·the instant
2  petition is predicated on appellate counsel's failure to raise and exhaust
3  crucial Constitutional assignments of error.

4    Petitioner's methodology is consistent with the Anti-Terrorism-Effective
5  Death Penalty Act of 1996. [Codified 28 U.S.C. §2254(d)], as petitioner has
6  copiously raised issue[s] with points and authorities in support of state law
7  being applied contrary to or an unreasonable application of federal law, as
8  determined by the United States Supreme Court.

9    It is appropriate to raise an issue of ineffectiveness of counsel on
10  appeal by way of a petition for writ of habeas corpus. In re Smith, (1970) 3
11  Cal. 3d 192,202-203]. "The defendant need not show he was entitled to a
12  reversal". [5 Witkin & Epstien, Cal. Criminal Law (2d ed. 1989) Trial, §2790,
13  pp.3383-3384].

14    The United States Supreme Court provided in Edwards v. Carpenter, ·529
15  U.S. 446[120 S Ct 1587]146 L Ed 2d 518 (4-25-2000), that, procedurally
16  defaulted ineffective-assistance claim can serve as "cause" to excuse the
17  procedural default of another habeas claim only if the habeas petitioner can
18  satisfy the "cause" and "prejudice," standard with respect to the
19  ineffective-assistance claim itself. The procedural default doctrine and its
20  attendant "cause and prejudice" standard are grounded in comity and federalism
21  concerns, Coleman v. Thompson, 501 U.S. 722,730[115 L Ed 2d 640]111 S Ct 2546,
22  and apply whether the default occurred at trial, on appeal, or on state
23  collateral attack. Murray v. Carrier, 477 U.S. 478,490-492[91 L Ed 2d 397]106
24  S Ct 2639.

25    In the instance of plain error rule defendant/petitioner is entitled to
26  obtain review in a federal habeas corpus proceeding of plain error, whatever
27  procedural defaults he may have committed. See Wainwright v. Sykes, (1976) 433
28  U.S. 72[53 L Ed 2d 594.] The doctrine of procedural default is based on comity

15

1  not jurisdiction, and the federal court's retain power to consider the merits
2  of a procedurally defaulted claim.

3      Moreover, petitioner contends the states erroneous determination[s] a
4  priori resultant in a "miscarriage of justice" within the meaning and purview
5  of the reviewing court.

6      Petitioner's appellate counsel's wavier of potentially meritorious
7  Constitutional claim[s] vitiated petitioners "substantive" rights.

8      Tantamount, contrary to the United States Supreme Court standards
9  enunciated in Anders v. California, (1967) 386 U.S. 738; Strickland v.
10 Washington, 91984) 466 U.S. 668.]

11     Consistent with Doctrine of Stare Decisis and United States Supreme Court
12 precedent, the claims asserted [ante] need  to be addressed by the de novo
13 reviewing court, as a matter of comity under our Constitutional framework of
14 jurisprudence.

15

16

17

18

19

20

21

22

23

24                              Respectfully Submitted,

25

26

27  $\overline{5.\text{-}07}$                      Don Brown
          Date
28
                              16

1                    CERTIFICATE OF SERVICE BY MAIL

2

3          I, the undersigned, hereby declare and state that, I am over the age of

4     eighteen (18) years old and I (am)        a party to the within cause of action

5     that on this  $\underline{5}$ , day of  $\underline{\qquad}$  ,  $\underline{0\underline{1}}$  , I placed the below named

6     legal documents in the United States Mail:

7

8

9                    PETITION FOR WRIT OF HABEAS CORPUS
                     _____

10                              "TRAVERSE"
                     _____

11                   _____

12                   _____

13                   _____

14

15         for which are addressed to the below named parties/persons:

16

17   1.                                   2.
     United States District Court          Department of Justice
18   Eastern District of California        Office of the Attorney General
     501 "I" St. 4-200                     P.O. Box 944255
19   Sacramento, California 95814          1300 I Street, Ste., #125      .
                                           Sacramento, CA 94244-2550

20

21   3.                                   4.

22

23

24         I, hereby declare under the penalty of perjury of the laws of the State of

25   California, and the United States, that the above certificate of service is

26   true and correct to the best of my knowledge and recollection.

27

28                                       _____
                                         DECLARANT