IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA,

EDWARD DON BROWN,

    Petitioner,                    No. CIV-S-05-1195 LKK DAD P

    vs.

WARDEN YATES,                  FINDINGS AND RECOMMENDATIONS

    Respondent.

_____/

    Petitioner is a state prisoner proceeding with an application for writ of habeas corpus under 28 U.S.C. § 2254. On June 18, 2001, in the Butte County Superior Court, petitioner through his trial counsel entered a dual plea of not guilty and not guilty by reason of insanity to the charges set forth in an amended information. (Reporter's Transcript on Appeal (RT-I[1]) at 6.) On April 11, 2002, petitioner withdrew his previously entered plea and entered pleas of no contest to assault with a firearm on a police officer, kidnapping, first degree robbery, and resisting an officer. (RT-II at 6.) With sentencing enhancements for causing great bodily

---

[1] Respondent has lodged with this court two transcripts, both entitled "Reporter's Transcript on Appeal - One Volume." The first such transcript is of proceedings conducted in the Butte County Superior Court on June 18 and August 27, 2001 and will be referred to herein as "RT-I." The second such transcript is of proceedings conducted in that same court on April 11 and June 24, 2002 and will be referred to herein as "RT-II."

1

injury and intentional use of a firearm causing great bodily injury, petitioner was sentenced to an aggregate term of 49 years in state prison. (RT-II at 23-25.) On appeal, the California Court of Appeal for the Third Appellate District modified the judgment due to sentencing error, thereby reducing petitioner's sentence to a total aggregate term of 36 years and four months. (Resp't Lodged Doc. 4, Opinion at 3-6.) As modified, petitioner's judgment of conviction was affirmed. (Id. at 7.)

Petitioner seeks federal habeas relief on the grounds that: (1) he was denied the effective assistance of counsel when his attorney failed to raise the issue of petitioner's developmental disability and its impact on his competency to stand trial; (2) the trial court failed to "personally" take a voluntary and intelligent waiver of his right to a trial in violation of his due process rights; and (3) he was denied effective assistance of appellate counsel when his attorney on appeal failed to raise potentially meritorious constitutional claims. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Because there was no trial and the issues on appeal were limited to claims of sentencing error, the following factual summary of the events of September 24, 2000, is taken from the presentence report prepared in petitioner's case.[2]

> The victim stated that he was employed as a driver by American Taxi. He responded to an apartment complex to pick up a fare, however, he was unable to locate the fare. While leaving, he was flagged down by [petitioner], who requested transportation. The [petitioner] entered the vehicle and sat in the middle of the rear seat. The [petitioner] introduced himself as "Mike" and said he was intoxicated. The [petitioner] requested to be transported to a residence on Hicks Lane, although he did not know the specific address and did not have any money to pay for transportation. The victim stopped the vehicle to talk to the [petitioner] when he noticed the [petitioner] had a short-barreled shotgun in his hand.

---

[2] The parties do not dispute these facts and petitioner submitted the presentence report as an exhibit to his federal petition. See Pet., Ex. B; Answer at 6-10.

The [petitioner] instructed the victim to drive to Hicks Lane and stated that he would then decide if he was going to take the victim's money or not. The victim continued to drive and attempted to signal another taxi cab driver that he needed help. However, his efforts were unsuccessful. The [petitioner] told the victim not to make any kind of signal to any other drivers.

The victim said he feared for his life and decided he would escape from the vehicle when he stopped for a red traffic signal light. When he stopped, he grabbed his bag of receipts and cash ($242.00), opened the driver's side door, felt and heard the shotgun blast, stepped out of the vehicle, and began emptying his pockets. The victim thought if the [petitioner] was going to rob him, he might as well make it easier and perhaps the [petitioner] would not shoot him again. The victim said he began to run towards the Enloe [hospital] outpatient building. He heard the [petitioner] exit the vehicle and run behind him for a short while. The [petitioner] then returned to the vehicle and drove away. The victim said he returned to collect his bag of receipts and cash. He then saw Lynetta D. in her vehicle, so he ran to her for help and she transported him to the hospital.

\* \* \*

. . . Officers then received notice of a traffic collision on Manzanita Avenue in front of Hooker Oak Park. Officers located the missing taxicab. The engine was running although there were no occupants. The officers were advised that the [petitioner] might be armed with a weapon.

The officer advised dispatch of the events. A few minutes later, another CPD officer located the [petitioner] in the Hooker Oak Park Recreation Area parking lot. The officers noted the [petitioner] was armed with a bolt-action sawed-off shotgun. While additional officers were responding, the [petitioner] waived [sic] the shotgun around. In response, the officers told the [petitioner] to put the gun down several times however, the [petitioner] continued to wave the gun around while yelling "Fuck you, cops. Go ahead and shoot me." The [petitioner] then lowered the gun to a shooting position and took aim. The officer was forced to shoot the [petitioner].

\* \* \*

While at the hospital, a medical staff member provided the officer with blood test results. The officer noted the [petitioner] tested positive for methamphetamine, marijuana, and alcohol.

\* \* \*

/////

>     The officers then proceeded to [petitioner's] hospital room. As
> they walked into the room, [petitioner] said, "Where is my lawyer?
> Just so you know I ain't answering any questions without my
> lawyer.["] An officer advised [petitioner] he was under arrest. As
> the officer advised the [petitioner] of his Miranda Rights, the
> [petitioner] began to recite the Miranda Warning and then said "the
> voices, they wouldn't fucking stop." He said the "voices" had been
> talking to him all week long and making him feel "shitty" about
> everything. The voices were telling him to hurt himself. He then
> said "they are just going to stick me in a mental institution, I'm
> cool but I'd rather go to jail."

(Clerk's Transcript on Appeal (CT) at 150-56.)

Immediately following petitioner's entry of his dual plea of not guilty and not guilty by reason of insanity on June 18, 2001, the Butte County Superior Court ordered a psychiatric evaluation to be conducted by a board certified psychiatrist, Dr. Lancaster.[3] (CT at 112-13.) The evaluation was to determine whether petitioner was insane at the time of the charged offenses and whether he was competent to stand trial. (Id.) On August 6, 2001, Dr.

---

[3] In this regard, California Penal Code § 1026(a) states in relevant part:

> When a defendant pleads not guilty by reason of insanity, and also
> joins with it another plea or pleas, the defendant shall first be tried
> as if only such other plea or pleas had been entered, and in that trial
> the defendant shall be conclusively presumed to have been sane at
> the time the offense is alleged to have been committed. If the jury
> shall find the defendant guilty, or if the defendant pleads only not
> guilty by reason of insanity, then the question whether the
> defendant was sane or insane at the time the offense was
> committed shall be promptly tried, either before the same jury or
> before a new jury in the discretion of the court. In that trial, the
> jury shall return a verdict either that the defendant was sane at the
> time the offense was committed or was insane at the time the
> offense was committed. If the verdict or finding is that the
> defendant was sane at the time the offense was committed, the
> court shall sentence the defendant as provided by law. If the
> verdict or finding be that the defendant was insane at the time the
> offense was committed, the court, unless it shall appear to the court
> that the sanity of the defendant has been recovered fully, shall
> direct that the defendant be confined in a state hospital for the care
> and treatment of the mentally disordered or any other appropriate
> public or private treatment facility approved by the community
> program director, or the court may order the defendant placed on
> outpatient status.

Lancaster submitted his report reflecting his opinion that petitioner was sane at the time of the charged offenses and needed no psychiatric treatment or medications because he did not suffer from mental illness, either in the past or on the date the report was authored. (CT at 119.) On August 27, 2001, the trial court ordered another independent evaluation of petitioner by a licensed psychologist and qualified medical examiner, Dr. Wuehler. (RT-I at 8.) The court also requested that Dr. Lancaster prepare a supplemental report to further clarify whether or not, in Dr. Lancaster's opinion, petitioner was insane at the time of the crime. (CT at 121-22.) On October 2, 2001, the trial court received Dr. Wuehler's report and on October 10, 2001 received the supplemental report of Dr. Lancaster. (CT at 123-24.) Both doctors concluded that petitioner was sane at the time the offenses were committed and capable of understanding the nature of his actions and of distinguishing right from wrong. (CT at 119, 123 & 136.) In his report Dr. Wuehler also specifically found that petitioner was capable of assisting his attorney with his defense. (CT at 132.)

On April 11, 2002, trial counsel appeared with petitioner in the Butte County Superior Court and advised the trial judge that he and petitioner had met that morning to discuss a proposed plea agreement. (RT-II at 1.) Trial counsel informed the court, in petitioner's presence, that petitioner had agreed to plead no contest to assault with a firearm, kidnapping, first degree robbery, and resisting an officer. (Id.)[4] The trial court indicated it would allow petitioner to withdraw his not guilty and not guilty be reason of insanity pleas in order to accept this plea agreement with the prosecution. (Id. at 6.) The court was provided with a completed entry of plea form executed by petitioner in which petitioner indicated that he understood the nature of the charges, the consequences of his plea and his constitutional rights. (CT at 140-44.) In addition, the trial court engaged in an abbreviated plea colloquy with petitioner in open court to ensure that petitioner understood the plea agreement in his case, the possible consequences of his

---

[4] When the plea was taken petitioner also admitted the enhancement allegations of causing great bodily injury and using a firearm causing great bodily injury. (RT-II at 3, 8-9.)

plea and that the plea was being freely and voluntarily made. (RT-II at 6-10.) In accepting petitioner's plea, the court found that petitioner had voluntarily and intelligently waived his constitutional rights, that his pleas and admissions were freely and voluntarily made and that there was a factual basis for those pleas and admissions. (CT at 144; RT-II at 10.)

After petitioner's plea was entered, trial counsel requested that the court review the preliminary hearing transcript prior to sentencing to better understand petitioner's history and personal background. (RT-II at 11.) Trial counsel acknowledged that his client had previously entered a dual plea of not guilty and not guilty by reason of insanity and had a history of mental health problems. (Id.) Nonetheless, counsel stated that in light of the psychiatric evaluations from Dr. Lancaster and Dr. Wuehler, it was counsel's evaluation that petitioner's mental health problems would not serve to be an effective defense to the charges pending against him and that those charges posed the potential imposition of two life sentences. (Id.) Based on the foregoing, the facts of the case and their discussions, trial counsel informed the court that petitioner had decided to accept the plea offer of a determinate term sentence which was substantially better than the prosecution's original plea offer of 28 years-to-life. (RT-II at 11-12.) Finally, counsel acknowledged that with this plea, petitioner would be legally eligible for parole upon completion of his sentence. (Id.)

As noted above, on June 24, 2002, petitioner was sentenced to 49 years in state prison. (RT at 23-25.) On January 14, 2003, he appealed from his judgment of conviction only on the ground of sentencing error. (See Resp't Lodged Doc. 1, Appellant's Opening Br. on Appeal.) On October 31, 2003, the California Court of Appeal for the Third Appellate District modified the judgment thereby reducing petitioner's sentence to a total aggregate term of 36 years and four months due to sentencing error. (Resp't Lodged Doc. 4, Opinion at 3-6.) As modified, petitioner's judgment of conviction was otherwise affirmed. (Id. at 7.)

On November 14, 2003, petitioner filed a petition for writ of habeas corpus in the Butte County Superior Court alleging that he received ineffective assistance of trial counsel, the

trial court erred by failing to "personally" take a voluntary and intelligent waiver of his right to trial in violation of his due process rights and that he received ineffective assistance of appellate counsel when his counsel failed to raise potentially meritorious constitutional claims on appeal. (See Resp't Lodged Doc. 5.) On January 5, 2004, the Butte County Superior Court issued a form order denying the writ. (Resp't Lodged Doc. 6 at 1.) The form order had boxes checked indicating that the denial was because:

> The vague, unsupported, and conclusionary allegations contained in the petition are insufficient to allow for intelligent consideration of the issues which petitioner has attempted to raise. (In re Swain (1949) 34 Cal.2D 300; In re Patton, 1918) [sic] 178 Cal. 629).
>
> Petitioner has failed to establish a prima facie case for relief on habeas corpus (In re Lawler, Cal. 3rd 190, 194).

Id.

On February 5, 2004, petitioner filed a petition for writ of habeas corpus with the California Court of Appeal for the Third Appellate District presenting the same issues he had presented to the Butte County Superior Court. (Resp't Lodged Doc. 7.) That petition was summarily denied on February 26, 2004. (Resp't Lodged Doc. 8.) On April 12, 2004, petitioner filed a petition for writ of habeas corpus presenting the same issues in the California Supreme Court. (Resp't Lodged Doc. 9.) That petition was summarily denied on March 2, 2005. (Resp't Lodged Doc. 10.) On June 15, 2005, petitioner filed his federal petition for writ of habeas corpus with this court.

## ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

As noted, the Butte County Superior Court denied petitioner habeas relief in reliance on the decision in In re Swain, finding that the allegations of the petition were insufficient to allow for consideration of the issues presented. Nonetheless, respondent concedes that petitioner's claims were properly presented in state court for purposes of the exhaustion requirement and that because the state court did not issue a decision on the merits, the correct standard to be employed by this court is de novo review. (Answer at 11.)

II. Petitioner's Claims

    1. Ineffective Assistance of Trial Counsel

First, petitioner asserts that his trial counsel rendered ineffective assistance by failing to adequately investigate and raise the issue of petitioner's developmental disability in order to determine his competency to stand trial. (Pet. at 5, 5(a), 5(b).)

As a general rule, a petitioner may not raise claims of deprivation of his constitutional rights that occurred prior to his guilty plea. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). See also Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992) ("petitioner's nolo contendere plea precludes him from challenging alleged constitutional violations that occurred prior to the entry of that plea"); Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-plea constitutional violations); Hodge v. Carey, No. Civ. S 04-0617 MCE DAD P, 2006 WL 236932, *5 (E.D. Cal. Jan. 31, 2006) (when he entered a no contest plea petitioner waived ineffective assistance of counsel claim based upon his counsel's advice to enter into a plea agreement). Petitioner therefore waived these ineffective assistance of counsel claims when he chose to enter his no contest plea pursuant to the plea agreement reached with the prosecution.

/////

However, petitioner has not waived his claim to the extent he is attacking the voluntary and intelligent character of his no contest plea. See Tollett, 411 U.S. at 266-67; Hudson, 760 F.2d at 1030; Hodge, 2006 WL 236932 at *5. Here, petitioner alleges that his mental and personal history was admittedly known by his trial counsel but not proffered to the Court. Petitioner claims that if counsel had done so the trial court would have become concerned that petitioner suffered from a developmental disability, thus triggering an examination by a court-appointed director of the regional center for the developmentally disabled under California Penal Code § 1369.[5] (Pet. at 5, 5(a), 5(b).) In other words, petitioner argues, if he was developmentally disabled he could not have given a voluntary and intelligent plea. Although no evidence has been presented by petitioner that any party to his hearings found him incompetent to enter a plea at the time he did so, petitioner is attacking the voluntary and intelligent nature of his guilty plea and therefore his ineffective assistance of counsel claim, which occurred prior to his plea, may be considered.

In order to demonstrate ineffective assistance of counsel in the context of a challenge to a guilty plea, the petitioner must show that counsel's advice fell below an objective standard of reasonableness as well as a reasonable probability that, but for counsel's errors, he would not have plead guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S.

---

[5] California Penal Code § 1369 provides for the court appointment of a psychiatrist or licensed psychologist to examine a defendant in a criminal case to evaluate the nature of the defendant's mental disorder, if any, the defendant's ability or inability to understand the nature of the criminal proceedings or assist counsel in the conduct of a defense in a rational manner as a result of a mental disorder and, if appropriate, whether or not treatment with antipsychotic medication is medically appropriate for the defendant and whether antipsychotic medication is likely to restore the defendant to mental competence. The thrust of Penal Code §§ 1367, 1368 and 1369 is to prevent the prosecution and possible confinement of a person who is incompetent to properly defend himself. People v. Rojas, 118 Cal. App. 3d 278, 285 (1981). A defendant, however, is presumed to be competent and has the burden of showing incompetence by a preponderance of the evidence. (Id.) See also People v. Rells, 22 Cal. 4th 860, 866 (2000); Cal. Penal Code § 1369(f). However, if the court has doubts about a defendant's competence and the defendant does not seek a competency determination, the court must appoint two psychiatrists or psychologists to examine the defendant, one named by the prosecution and one by the defense. See Faulks v. Castro, No. C995086 WHAPR, 2003 WL 22749075, * 8 (N.D. Cal. Nov. 14, 2003).

52, 58-59 (1985); Strickland v. Washington, 466 U.S. 668, 688 (1984). Petitioner has failed to make a showing meeting this standard here.

Even assuming *arguendo* that but for counsel's alleged errors, petitioner would not have plead no contest and would have instead insisted on going to trial, petitioner's claim still lacks no merit. In order for petitioner to be entitled to habeas relief, his trial counsel's advice must have fallen below an objective standard of reasonableness. See Hill, 474 U.S. at 56; Strickland, 466 U.S. at 688; Tollett, 411 U.S. at 267; McMann v. Richardson, 397 U.S. 759, 774 (1970) (a petitioner must show a "serious dereliction" by his attorney to demonstrate that a guilty plea was not a knowing and intelligent act); Perez v. Rosario, 459 F.3d 943, 946 (9th Cir. 2006) ("Perez must show that his prior counsel's advice during the plea bargaining process 'fell below an objective standard of reasonableness.'") Here, both counsel's performance and his apparent advice were objectively reasonable.

Petitioner's trial counsel indicated on the record that he had at one point in the proceedings initiated a motion to trigger review of whether petitioner was competent to stand trial which in turn led to petitioner being evaluated by two mental health professionals. (RT-II at 11.) Of course those psychiatric evaluations from Dr. Lancaster and Dr. Wuehler indicated that petitioner was not only sane at the time the charged offenses were committed but was also competent to stand trial. Counsel also stated on the record that based upon his own knowledge of petitioner's personal and mental history and the other facts of the case, that his professional assessment was that a defense based upon petitioner's "mental health problems" would not be effective. (Id.) Finally, counsel indicated on the record in petitioner's presence that he and his client had compared the determinate term sentence being offered by the prosecution in the proposed plea bargain to the potential for two life sentences that petitioner faced if convicted at trial. (Id.) According to counsel, after considering the alternatives, petitioner had elected to accept the plea bargain which was far more beneficial to petitioner than the original plea bargain
/////

offered by the prosecution and under which he would be eligible for parole upon completion of his term instead of facing an indeterminate term sentence. (Id. at 12.)

There is, of course, a "strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 688-89). See also McMann, 397 U.S. at 771 (the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded of attorneys in criminal cases"). As summarized above, the record in this case establishes that petitioner's counsel explored any defenses petitioner might have had, including those based on his mental state or condition. Counsel was aware of two psychiatric evaluations that had concluded that petitioner was sane at the time the charged offense were committed and also indicated that petitioner was then competent to assist in his own defense and to stand trial. Counsel was also well-aware that if he proceeded to trial and was convicted, petitioner faced the possibility of two life sentences. Counsel was able to convince the prosecution to improve on their original plea offer and to offer a plea bargain under which petitioner would become eligible for probation. This performance by petitioner's trial counsel was reasonably competent and was certainly within the range of competence demanded of attorneys in criminal cases. Therefore petitioner is not entitled to relief with respect to his challenge to his plea on the grounds of ineffective assistance of counsel.

2. Failure to "Personally" Take Voluntary and Intelligent Waiver of Right to Trial

Next, petitioner claims that his constitutional rights were violated when the trial court failed to "personally" take a waiver of his "fundamental" rights prior to accepting his no contest plea. (Pet. at 5(c).) Petitioner has never clearly identified how the trial court should have, in his opinion, "personally" taken his waiver. Nor has petitioner cited any authority in support of this claim that would assist in interpreting it. However, the undersigned infers that petitioner equates the court's "personal" taking of a waiver of constitutional rights with the enumeration of specific constitutional rights by the trial court on the record in open court. (Id at

5(c), 5(d).) A failure by the trial court to "personally" take a waiver of constitutional rights in connection with a plea, according to petitioner, makes a voluntary and intelligent no contest plea impossible. Id.

A guilty plea must be knowing, intelligent and voluntary. Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).[6] "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 F.2d at 749. In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the presumption of verity to be given the record of plea proceeding when the plea is subsequently subject to a collateral challenge. While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of that plea, the Supreme Court recognized that the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." Id. at 74. See also Marshall v. Lonberger, 459 U.S. 422, 437 (1983) (a plea is presumed valid in habeas proceeding when the pleading defendant was represented by counsel); Little v. Crawford, 449 F.3d 1075, 1081 (9th Cir. 2006); Chizen v. Hunter, 809 F.2d 560, 561 (9th Cir. 1986).

In Boykin, the United States Supreme Court held that the record must affirmatively reflect that a criminal defendant's guilty plea is intelligent and voluntary. 395 U.S. at 242-43. In that case, the judge taking the plea had asked no questions of the petitioner concerning his guilty plea and the petitioner had not addressed the Court. The Supreme Court concluded the record must reflect that a criminal defendant pleading guilty understands, and is

---

[6] Petitioner pled no contest to the charges against him. Under California law, a no contest plea has the same effect as a plea of guilty in the context of the criminal proceedings. See, e.g., People v. West, 3 Cal. 3d 595, 601 (1970). Accordingly, federal constitutional principles governing guilty pleas apply to petitioner's claim. Miller v. McCarthy, 607 F.2d 854, 856 (9th Cir. 1979).

voluntarily waiving, his constitutional rights to the privilege against compulsory self-incrimination, to trial by jury and to confront one's accusers and that the court would not presume such a waiver from a silent record. Id. In Brady, the Supreme Court cited the decision in Boykin while upholding a guilty plea as voluntary and intelligent even though the defendant had not been specifically advised of the three rights discussed in Boykin. The Supreme Court clarified the holding of Boykin by stating, "the new element added in Boykin was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." Brady, 397 U.S. at 747-48 n.4. Thus, it has subsequently been recognized by the courts that a specific articulation of the Boykin rights "is not the sine qua non of a valid guilty plea." Wilkins v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974). See also Rincon v. Roe, No. Civ. S-02-2647 RRB DAD P, 2007 WL 4126079 (E.D. Cal. Nov. 20, 2007). Rather, if the record demonstrates that a guilty plea is knowing and voluntary, "no particular ritual or showing on the record is required." United States v. McWilliams, 730 F.2d 1218, 1223 (9th Cir. 1984).

Upon a full review of the record in this case, the undersigned concludes that the record reflects that petitioner's plea was freely and voluntarily made, with knowledge of the consequences thereof. There was an adequate colloquy between the court and petitioner at the time he entered his plea. (RT at 6-11.) In this regard, the trial judge asked petitioner if he had read and understood the plea form that he had completed and signed, if he had spoken with his counsel, and if he was entering his plea freely and voluntarily. (Id. at 6-7.) The judge then went through each of the charges with petitioner, asked him for his plea, and found him to have voluntarily and intelligently entered his plea. (Id. at 8-10.) In addition, petitioner had initialed and signed the written plea form used by the Butte County Superior Court that explained in detail the terms of the plea agreement and the constitutional rights he was giving up by entering his no contest plea. (CT at 140-44.) In particular, petitioner initialed the boxes that expressly represented to the court that in entering his no contest pleas, he understood he was waiving his

constitutional rights to a jury trial, to confront all witnesses against him and to remain silent. (Id. at 141.) The plea form included the statement signed by petitioner's attorney attesting to the fact that he had reviewed the form with petitioner, explained each of his rights to him, answered all of his questions with regard to his plea, discussed with petitioner the content, substance and meaning of each of the paragraphs initialed by petitioner, discussed the facts of the case, the consequences of the plea, the elements of the charged offenses and the possible defenses he might have with petitioner and that counsel concurred in the plea and with his client's decision to waive his constitutional rights in that regard. (CT at 144.) Finally, the judge who accepted the plea signed the form, finding that petitioner had been informed of his constitutional rights and the consequences of his pleas and that petitioner was knowingly, understandingly and intelligently waiving his constitutional rights and freely and voluntarily entering his change of plea. (Id.)

This record reflects that petitioner made a voluntary and intelligent choice to plead no contest to the charges against him pursuant to a plea bargain that was favorable to him. He voluntarily waived his rights to a jury trial, to confront his accusers and his right against self-incrimination. See Boykin, 395 U.S. at 243. Further, petitioner had notice of the nature of the charges against him. See Lonberger, 459 U.S. at 436 (in order for a plea to be voluntary, an accused must receive notice of the nature of the charge against him, "the first and most universally recognized requirement of due process"); Smith v. O'Grady, 312 U.S. 329, 334 (1941). This is sufficient for purposes of federal review. Lonberger, 459 U.S. at 436. Aside from petitioner's unsupported allegation that his attorney was "in a hurry" (Pet. at 5(d)), there is no evidence that petitioner was threatened in any way in order to induce him to enter his no contest pleas. See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'"); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). Petitioner has failed to demonstrate any special circumstances that would allow for habeas relief. See Rodriguez v. Ricketts, 777 F.2d 527, 528 (9th Cir. 1985) ("We do not address a case where special circumstances exist, for example, a

defendant's specific protestation of innocence, which might impose on a state court the constitutional duty to make inquiry and to determine if there is a factual basis for the plea.") Accordingly, petitioner is not entitled to habeas relief on his claim that his no contest pleas were not "personally" taken by the court in violation of his constitutional rights or that his pleas were not voluntarily and intelligently made.

    3. <u>Ineffective Assistance of Appellate Counsel</u>

Finally, petitioner claims that his appellate counsel rendered ineffective assistance by waiving potentially meritorious constitutional claims. (Pet. at 5(e).) However, petitioner has identified no issue that he believes his appellate counsel should have raised, nor does he offer any facts to support this claim. Rather, petitioner makes only brief reference to the decisions in <u>Anders v. California</u>, 386 U.S. 738 (1967) and <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) in presenting this claim. Petitioner's failure to identify issues he believes should have been raised on his behalf on appeal and his mere vague mention of the two decisions noted above do not warrant the granting of habeas relief. See <u>Jones</u>, 66 F.3d at 204; <u>James</u>, 24 F.3d at 26.

### CONCLUSION

For all of the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within five days after service of the objections. The parties are advised

/////

/////

/////

that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 4, 2009.

                                              /s/ Dale A. Drozd
                                              DALE A. DROZD
                                              UNITED STATES MAGISTRATE JUDGE

DAD:3
brown1195.hc