Edward Don, Brown, T-60348
Salinas Valley State Prison
P. O. Box 1050
Soledad, CA 93960

**FILED**

JAN - 8 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
　　　　DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD DON, BROWN,<br><br>　　　Petitioner,<br><br>　v.s.<br><br>A. HEDGPETH, WARDEN,<br><br>　　　Respondent. | NO. CIV S-05-1195 LKK DAD P<br><br>REQUEST FOR FED. R. CIV. P<br>RULE 60(b)(1) Hearing And<br>MOTION FOR APPOINTMENT<br>OF COUNSEL |

INTRODUCTION

Pursuant to Rule 60(b)(1) of the Federal Rules
of Civil Procedure, Petitioner, Edward Don Brown,
hereby request a hearing for this Court to
reconsider it's June 15, 2005 federal petition for writ
of habeas corpus. (Exhibit A.)
For excusable neglect, petitioner now seeks
permission to file late objections to the
Magistrate's March 4, 2009 "Findings and
Recommendations.
Petitioner also seeks appointment of

1.

Counsel as an mentally incompetent inmate.

A.   BACKGROUND

On June 18, 2001, in the Butte County Superior Court, petitioner through his trial counsel entered a dual plea of not guilty and not guilty by reason of insanity to the charges set forth in an amended information. (Reporter's Transcript on Appeal (RT-1) at 6.) On April 11, 2002, upon advice from counsel, petitioner withdrew his previously entered plea and entered pleas of no contest to assault with a firearm on a police officer, kidnapping, first degree robbery, and resisting an officer. (RT-II at 6.) With sentencing enhancements for causing great bodily injury and intentional use of a firearm causing great injury, petitioner was sentenced to an aggregate term of 49 years in state prison. (RT-II at 23-25.) On appeal, the California Court of Appeal for the Third Appellate District modified the judgment due to sentencing error, thereby reducing petitioner's sentence to a total aggregate term of 36 years and four months. (opinion at 3-6.)

On November 14, 2003, petitioner filed a petition for writ of habeas corpus in the Butte County Superior Court.

2.

On February 5, 2004, Petitioner filed a petition for writ of habeas corpus with the California Court of Appeals for the Third Appellate District. That petition was denied on February 26, 2004. On April 12, 2004, Petitioner filed a habeas corpus petition with the California Supreme Court. It was denied on March 2, 2005.

On June 15, 2005, Petitioner filed his federal petition for writ of habeas corpus with this court.

On March 4, 2009 the U.S. Magistrate Judge entered it's Findings and Recommendations.

B. DISCUSSION

Petitioner Now seeks reconsideration of the Court's orders pursuant to Fed. R. Civ. P. 60 (b)(1). See Pioneer Inv. Service Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 393, 113 S. Ct. 1489, 123 L.Ed.2d 741 (1993)(Noting that Rule 60(b)(1) permits a court to reopen a judgment for reasons of excusable neglect within one year of the judgment.

For the reasons discussed below, The final orders from which petitioner seeks relief by this Requests should be with drawn, allowing him to file his objections to the Magistrate's Findings and Recommendation, and to seek appointment of counsel.

## I.

### ONE TO EXCUSABLE NEGLECT i.e., (Mental Incompetency) PETITIONER WAS UNABLE TO FILE HIS OBJECTIONS TO THE MAGISTRAT'S FINDINGS AND RECOMMENDATIONS, THEREFORE REQUEST HE BE ALLOWED TO FILE LATE OBJECTIONS

The doctrine of equitable tolling provides that in exceptional circumstances, a statute of limitations may be extended for equitable reasons not acknowledged in the statute creating the limitation period. (See Neverson v. Farquharson, 766 F.3d 32 (1st Cir. 2004) (quoting David v. Hall, 318 F.3d 343, 345-46 (1st Cir. 2003); See also, Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288-89 (9th Cir. 1997), Cert. denied, 523 U.S. 1061, 118 S.Ct. 1389, 140 L.Ed 2d 648 (1998)) When a putative habeas petitioner's mental competency is at issue, and the record discloses a genuine basis for concern, it is appropriate to toll the AEDPA's time bar. (See Calderon v. U.S. Dist. Court, 163 F.3d at 542 (9th Cir. 1998).)

For a Petitioner to have the benefit of equitable tolling of the Anti Terrorism and

4.

Effective Death Penalty Act of 1996 ("AEDPA")
"there must be 'extraordinary circumstances' beyond
the prisoner's control that made it impossible
to file a petition on time. (See, Frye v. Hickman,
272 F.3d 1144, 1146 (9th Cir. 2001); and (Alvarez -
Machain v. United States, 107 F.3d 696, 701
(9th Cir. 1996).)

   In Brockamp v. U.S. 67 F.3d 260 (9th Cir. 1995)
The Court held that mental incompetence can
be a ground for tolling a statute of limitations.
(See also, Audubon Soc'y v. Robertson, 931 F.2d 590,
595 (9th Cir. 1991); and (Nunnally v. Causland,
996 F.2d1, 4-5 (1st Cir. 1993))

   Here, as Petitioner's mental Health record
discloses, petitioner is in the Prison mental health
program (cccms) undergoing treatment for
depression. (Exhibit B. at p.1); Adjustment
disorder with disturbance of mood and conduct;
Antisocial personality disorder; Narcissistic
personality disorder. (Exhibit B at p 2); suicidal
behavior; Hallucinations and past Head Trauma.
(Exhibit B at p.3.)

   It is also documented that Petitioner has
a long history of multiple drug and Alcohol
use, starting at the age of 11. (Exhibit C,
at p. 20)

Since the age of 11 Petitioner has been in and out of mental Institutions, and have tried several times to commit suicide. (Exhibit D, E.)

Petitioner is currently taking the following prescribed Pych medications: zydis, buspar, Effexor, and Beradryl. (Exhibit B at p. 4.)

In Pliler v. Ford the United States Supreme Court makes clearly, that: "Explaining the details of federal habeas procedure and calculating statutes of limitations are tasks normally and properly performed by trained counsel as a matter of course. (Pliler v. Ford (2004) 542 U, S. 225; 124 S, Ct. 2441; 159 L.Ed. 2d 338.)

Therefore, Petitioner contends that because he has had no attorney to perform tasks, such as filing objections, he has had to rely on the help of inmates. This, because Petitioner is not mentally competent to represent himself.

On May 27, 2008 Petitioner transferred from Mule Creek State Prison, to Salinas Valley State Prison. There at mule creek, Petitioner had the assistance of an inmate. And it was only recently at SVSP that Petitioner obtained the assistance of another inmate,

6.

Name Fred Price, CDCR# H-63510. (Exhibit. G.)

A putative habeas petitioner's mental incompetency — a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control — renders the petitioner unable to assist in the preparation of a habeas petition. Such a condition could eviscerate the statutory right to counsel. (see Calderon v. U.S. Dist. Court, 163 F.3d 530 (9th Cir. 1998).)

Wherefore, Petitioner contends for excusable neglect, he should be allowed to file late objections, and he should be appointed legal counsel, to do so.

## II
## OBJECTIONS

THE MAGISTRATE WAS IN ERROR WHEN IT DETERMINED TRIAL COUNSEL WAS ~~COMPETENT WHEN HE FAILED TO~~ INVESTIGATE EVIDENCE OF PETITIONER'S COMPETENCY AND PRESENT EVIDENCE OF PETITIONER'S INCOMPETENCY TO STAND TRIAL

(Magistrate pages 9-12.)

Here, Petitioner contends that his mental and personal history was admittedly or should had been

7.

Known by his trial counsel, but was not
proffered to the trial court. Petitioner
further contends that if counsel had done so
the trial court would have become concerned
that petitioner suffered from a developmental
disability, thus triggering an examination by
a court-appointed director of the regional center
for the developmentally disable under California
Penal Code 1369. (Pet. at s. 5(a), 5(b).)

The Magistrate concludes, that Petitioner argues,
if he was developmentally disabled he could not
have given a voluntary and intelligent plea.
Although no evidence has been presented by
petitioner that any party to his hearing found
him incompetent to enter a plea and that
counsel's performance and his apparent advice
were objectively reasonable. (Magistrate's findings
at p. 9-11.)

Petitioner contends that the Magistrate's
conclusions are in error, and that counsel was
ineffective in his assistance to Petitioner.

On September 24, 2000, Petitioner approach
the victim a Taxi driver, with a short-barreled
shotgun in his hand. Petitioner instructed
the victim to drive him to Hicks lane.
The victim decided he would escape from the

8.

vehicle when he stopped the Taxi cab. Without having orders from Petitioner, the victim decided if petitioner was going to rob him, he would make it easy for him, so he began emptying his pockets.

The victim, then began to run towards a hospital. He heard petitioner exit the vehicle and run behind him for a short while. Petitioner then returned to the vehicle and drove away, leaving the victim's cash and receipts on the ground. Officers then received notice of a traffic collision on Manzanita Avenue in front of Hooker Oak Park. The officers noted Petitioner was armed with a bolt-action sawed off shotgun. Petitioner waived the shotgun around. In response, the officers told petitioner to put the gun down, however he continue to wave the gun around, while yelling "Fuck you cops. Go ahead and shoot me." The petitioner then lowed the gun to a shooting position and took aim. The officer was forced to shoot petitioner.

While at the hospital, a medical staff member provided the officer with blood test results. It was noted, Petitioner tested positive for

9.

methamphetamine, Marijuna and alcohol. [1]
(Clerk's Transcripts on Appeal. (CT) at 150-156.)
Immediately following petitioner's entry of his
dual plea of not guilty and not guilty by reason
of insanity on June 18, 2001, the Butte County
Superior Court ordered a psychiatric evaluation to
be conducted by a board certified psychiatrist,
Dr. Lancaster. (CT at p.112-113.) The evaluation
was to determine whether petitioner was insane
at the time of the charged offenses and
whether he was competent to stand trial.
(CCT p.112-113.) On August 6, 2001, Dr. Lancaster
submitted his report reflecting his opinion that
petitioner was sane at the time of the charged
offenses and needed no psychiatrict treatment
or medications because he did not suffer from
mental illness, either in the past or on the date
the report was authored. (CT at 119.) On
August 27, 2001, the trial court ordered another
independent evaluation of petitioner by a

[1]. Petitioner's mental Health records
reflects that starting at age 11, he has
received ppschiatrict help for attempting
suicide several times, taking LSD.
(Exhibits B, D, E.)

10.

medical examiner, Dr. Wuehler. (RT-I at 8.) The
court also requested that Dr. Lancaster prepare
a supplemental report to further clarify
whether or not, in Dr. Lancaster's opinion,
petitioner was insane at the time of the crime.
(CT at 121-122.) On October 2, 2001, the trial
court received Dr. Wuehler's report and on
October 10, 2001 received the supplemental report
of Dr. Lancaster. (CT at 123-124.) Both doctors
concluded that petitioner was sane at the time
the offenses were committed and capable of
understanding the nature of his actions and of
distinguishing right from wrong. (CT at 119, 123, 136.)
In his report Dr. Wuehler also specifically found
that petitioner was capable of assisting his
attorney with his defense. (CT at 132.)
  As a result, Trial counsel advise petitioner
to withdraw his dual plea of not guilty and not
guilty by reason of insanity. (RT-II at 4, 6.)
  The trial Court found petitioner understood the
nature of the charges, and the consequences of his
plea. (CT at 140-144.)
  Petitioner contends that Trial Counsel's failure
to investigate Petitioner's mental health history
and provide the Court with such evidence to

11.

contradict both psychologist reports and evaluations was ineffective assistance of trial counsel.

Defense counsel has an affirmative duty to conduct a careful investigation concerning the mental competency of his client when evidence exists of incompetency. People v. Corona (1978) 80 Cal. 3d 684; See also In re Saunders (1970) 2 C3d 1033. When evidence exists of incompetency, defense counsel may not "waive" or unilaterally discard this issue. Pate v. Robinson (1966) 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836; People v. Hale (1988) 44 C3d 531, 541.

In Dr. Lancaster and Dr. Wuehler's report, they both concluded Petitioner was sane at the time the offenses were committed and capable of understanding the nature of his actions. (CT at 119, 123, 136.)

As noted by the record, while at the hospital after being shot by officers, a medical staff member provided the officer with blood test results. The officer noted Petitioner tested positive for methamphetamine, marijuana, and alcohol. (CT at 150-156.) Evidence not reasonably discovered by trial counsel also shows that Petitioner has a history of drug abuse, beginning in 1991 at the age of 11 years old and continuing

12.

until his arrest in the instant offense.
(Exhibit C at p. 20,)

At the age of 17-years old, in 1998.
Petitioner took LSD then ate a teaspoon of
Decon Rat Poison in a suicide attempt. (Exhibit E.)
When long-continued intoxication results in
insanity, however, the mental disorder remains
even after the effects of the drug or alcohol have
worn off. The actor is "legal insane," and the
traditional justifications for criminal punishment are
inapplicable because of his inability to conform,
intoxicated or not, to accepted social behavior.
(People v. Kelly 10 Cal.3d 565 (1973),) (see also People
v. Reyes (1997) 52 Cal.4th 975.)

The Court appointed Psychiatrist Dr. Lancaster
stated in report that at the time of the charged
offenses Petitioner needed no psychiatric
treatment or medications because he did not
suffer from mental illness, either in the past or
on the date the report was authored. (CT at 119.)
Petitioner contends that Dr. Lancaster's report
was in error and Trial counsel did nothing
to correct Dr. Lancaster's errors.

On April 1, 1991, Petitioner was admitted in the
Tehama County Mental Health services after
attempting suicide. Petitioner remain in an

13,

Outpatient treatment program. (Exhibit D.)
In February 17, 1998, Petitioner was admitted in
the Butte County Mental Health Hospital,
after taking a teaspoon of Decon Rat Poison, and
LSD. (Exhibit E.)  It was discovered that
Petitioner has used Marijuana, Cocaine, Hallu-
cinogens such as PCP, and LSD over the years
of his life. (Exhibit E.)

   During his stay in the Butte County Jail,
Petitioner was prescribed Depakote for his
mental Health problems. (Exhibit C.)

   Since his conviction, Petitioner has been
part of the prisons mental Health program,
where he has been taking psychotropic
medications for his mental Health problems.
(Exhibit B.)

   The thrust of Penal Code sections 1367, 1368 and
1369 is to prevent the prosecution and possible
confinement of a person who is incompetent to
properly defend himself. (People v. Rojas, 118
Cal. App. 3d 278, 285 (1981). A defendant, however,
is presumed to be competent and has the burden
of showing incompetence by a preponderance of
the evidence. (Id.) See also People v. Rells, 22 Cal. 4th
860, 866 (2000); Cal. Penal Code 1369(f).

14.

Here Counsel failed to present evidence or
an argument supporting Petitioner's insanity
defense. Instead Counsel advised petitioner
to change his plea to a no contest plea. (RT-II
at 1.)

The Magistrate concludes petitioner claim of
ineffective assistance of trial Counsel lacks
merit, because Counsel himself initiated a
motion to trigger review by two mental health
professionals. And that base on Counsel's
statement that his own knowledge of petitioners
personal and mental history and the other
facts of the case, that his professional assessment
was that a defense based upon petitioner's "mental
health problems" would not be effective. (RT-II
at 11.)

Defense is not a trained psychiatrist and
should had consulted an independent
psychiatrist to evaulate Petitioner's past
mental Health history. Something the
court appointed Doctors failed to do.
The Law is clear that defense counsel has
an affirmative duty to conduct a careful
investigation concerning petitioner's mental
incompetency to stand trial. (People v. Corona

(1978) 80 Cal.3d 684.

It is ironic that court appointed pyschiatrist found Petitioner competent to stand. But prison Doctors found him to suffer serious mental illness. (Exhibit B.) Consequently, the conviction of an accused while incompetent to stand trial violates the due process clause of the 14th amendment. (Pate v. Robinson, (1966) 383 h.S. 375, 15 L.Ed. 2d 815, 86 S.Ct. 836; People v. Hale (1988) 44 cal.3d 531.

Therefore, petitioner's plea cannot be consider voluntarily and intelligent. (Brady v. United States 897 h.S. 742, 748 (1970); Boykin v. Alabama, 895 h.S. 238, 242 (1969).) See also Penal Codes 1367, 1368 and 1369.

## CONCLUSIONS

For the foregoing reasons Petitioner request that this court issue his request for Rule 60(b)(1) hearing to allow him to file late objections to the Magistrate's Findings and Recommendations, as the evidence attach demonstrate's that Petitioner's plea bargain in unconstitutional.

16.

Dated 12-23-09 _____ 2009

Respectfully submitted

Edward Don Brown
Edward D. Brown

17.

EXHIBIT A

1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA,

10   EDWARD DON BROWN,

11           Petitioner,              No. CIV-S-05-1195 LKK DAD P

12      vs.

13   WARDEN YATES,                    FINDINGS AND RECOMMENDATIONS

14           Respondent.

15   _____/

16           Petitioner is a state prisoner proceeding with an application for writ of habeas

17   corpus under 28 U.S.C. § 2254. On June 18, 2001, in the Butte County Superior Court,

18   petitioner through his trial counsel entered a dual plea of not guilty and not guilty by reason of

19   insanity to the charges set forth in an amended information. (Reporter's Transcript on Appeal

20   (RT-I[1]) at 6.) On April 11, 2002, petitioner withdrew his previously entered plea and entered

21   pleas of no contest to assault with a firearm on a police officer, kidnapping, first degree robbery,

22   and resisting an officer. (RT-II at 6.) With sentencing enhancements for causing great bodily

23

24      [1] Respondent has lodged with this court two transcripts, both entitled "Reporter's
     Transcript on Appeal - One Volume." The first such transcript is of proceedings conducted in
25   the Butte County Superior Court on June 18 and August 27, 2001 and will be referred to herein
     as "RT-I." The second such transcript is of proceedings conducted in that same court on April 11
26   and June 24, 2002 and will be referred to herein as "RT-II."

1

1  injury and intentional use of a firearm causing great bodily injury, petitioner was sentenced to an

2  aggregate term of 49 years in state prison. (RT-II at 23-25.) On appeal, the California Court of

3  Appeal for the Third Appellate District modified the judgment due to sentencing error, thereby

4  reducing petitioner's sentence to a total aggregate term of 36 years and four months. (Resp't

5  Lodged Doc. 4, Opinion at 3-6.) As modified, petitioner's judgment of conviction was affirmed.

6  (Id. at 7.)

7          Petitioner seeks federal habeas relief on the grounds that: (1) he was denied the

8  effective assistance of counsel when his attorney failed to raise the issue of petitioner's

9  developmental disability and its impact on his competency to stand trial; (2) the trial court failed

10  to "personally" take a voluntary and intelligent waiver of his right to a trial in violation of his due

11  process rights; and (3) he was denied effective assistance of appellate counsel when his attorney

12  on appeal failed to raise potentially meritorious constitutional claims. Upon careful

13  consideration of the record and the applicable law, the undersigned will recommend that

14  petitioner's application for habeas corpus relief be denied.

15                         FACTUAL AND PROCEDURAL BACKGROUND

16          Because there was no trial and the issues on appeal were limited to claims of

17  sentencing error, the following factual summary of the events of September 24, 2000, is taken

18  from the presentence report prepared in petitioner's case.[2]

19              The victim stated that he was employed as a driver by American
   Taxi. He responded to an apartment complex to pick up a fare,
20  however, he was unable to locate the fare. While leaving, he was
   flagged down by [petitioner], who requested transportation. The
21  [petitioner] entered the vehicle and sat in the middle of the rear
   seat. The [petitioner] introduced himself as "Mike" and said he
22  was intoxicated. The [petitioner] requested to be transported to a
   residence on Hicks Lane, although he did not know the specific
23  address and did not have any money to pay for transportation. The
   victim stopped the vehicle to talk to the [petitioner] when he
24  noticed the [petitioner] had a short-barreled shotgun in his hand.

25  _____

26    [2] The parties do not dispute these facts and petitioner submitted the presentence report as
   an exhibit to his federal petition. See Pet., Ex. B; Answer at 6-10.

1    The [petitioner] instructed the victim to drive to Hicks Lane and
     stated that he would then decide if he was going to take the
2    victim's money or not. The victim continued to drive and
     attempted to signal another taxi cab driver that he needed help.
3    However, his efforts were unsuccessful. The [petitioner] told the
     victim not to make any kind of signal to any other drivers.
4
     The victim said he feared for his life and decided he would escape
5    from the vehicle when he stopped for a red traffic signal light.
     When he stopped, he grabbed his bag of receipts and cash
6    ($242.00), opened the driver's side door, felt and heard the shotgun
     blast, stepped out of the vehicle, and began emptying his pockets.
7    The victim thought if the [petitioner] was going to rob him, he
     might as well make it easier and perhaps the [petitioner] would not
8    shoot him again. The victim said he began to run towards the
     Enloe [hospital] outpatient building. He heard the [petitioner] exit
9    the vehicle and run behind him for a short while. The [petitioner]
     then returned to the vehicle and drove away. The victim said he
10   returned to collect his bag of receipts and cash. He then saw
     Lynetta D. in her vehicle, so he ran to her for help and she
11   transported him to the hospital.

12                              * * *

13   . . . Officers then received notice of a traffic collision on Manzanita
     Avenue in front of Hooker Oak Park. Officers located the missing
14   taxicab. The engine was running although there were no
     occupants. The officers were advised that the [petitioner] might be
15   armed with a weapon.

16   The officer advised dispatch of the events. A few minutes later,
     another CPD officer located the [petitioner] in the Hooker Oak
17   Park Recreation Area parking lot. The officers noted the
     [petitioner] was armed with a bolt-action sawed-off shotgun.
18   While additional officers were responding, the [petitioner] waived
     [sic] the shotgun around. In response, the officers told the
19   [petitioner] to put the gun down several times however, the
     [petitioner] continued to wave the gun around while yelling "Fuck
20   you, cops. Go ahead and shoot me." The [petitioner] then lowered
     the gun to a shooting position and took aim. The officer was
21   forced to shoot the [petitioner].

22                              * * *

23   While at the hospital, a medical staff member provided the officer
     with blood test results. The officer noted the [petitioner] tested
24   positive for methamphetamine, marijuana, and alcohol.

25                              * * *

26   /////

                               3

1            The officers then proceeded to [petitioner's] hospital room. As
           they walked into the room, [petitioner] said, "Where is my lawyer?
2            Just so you know I ain't answering any questions without my
           lawyer.["] An officer advised [petitioner] he was under arrest. As
3            the officer advised the [petitioner] of his Miranda Rights, the
           [petitioner] began to recite the Miranda Warning and then said "the
4            voices, they wouldn't fucking stop." He said the "voices" had been
           talking to him all week long and making him feel "shitty" about
5            everything. The voices were telling him to hurt himself. He then
           said "they are just going to stick me in a mental institution, I'm
6            cool but I'd rather go to jail."

7 (Clerk's Transcript on Appeal (CT) at 150-56.)

8         Immediately following petitioner's entry of his dual plea of not guilty and not

9 guilty by reason of insanity on June 18, 2001, the Butte County Superior Court ordered a

10 psychiatric evaluation to be conducted by a board certified psychiatrist, Dr. Lancaster.[3] (CT at

11 112-13.) The evaluation was to determine whether petitioner was insane at the time of the

12 charged offenses and whether he was competent to stand trial. (Id.) On August 6, 2001, Dr.

13

14     [3] In this regard, California Penal Code § 1026(a) states in relevant part:

15            When a defendant pleads not guilty by reason of insanity, and also
           joins with it another plea or pleas, the defendant shall first be tried
16            as if only such other plea or pleas had been entered, and in that trial
           the defendant shall be conclusively presumed to have been sane at
17            the time the offense is alleged to have been committed. If the jury
           shall find the defendant guilty, or if the defendant pleads only not
18            guilty by reason of insanity, then the question whether the
           defendant was sane or insane at the time the offense was
19            committed shall be promptly tried, either before the same jury or
           before a new jury in the discretion of the court. In that trial, the
20            jury shall return a verdict either that the defendant was sane at the
           time the offense was committed or was insane at the time the
21            offense was committed. If the verdict or finding is that the
           defendant was sane at the time the offense was committed, the
22            court shall sentence the defendant as provided by law. If the
           verdict or finding be that the defendant was insane at the time the
23            offense was committed, the court, unless it shall appear to the court
           that the sanity of the defendant has been recovered fully, shall
24            direct that the defendant be confined in a state hospital for the care
           and treatment of the mentally disordered or any other appropriate
25            public or private treatment facility approved by the community
           program director, or the court may order the defendant placed on
26            outpatient status.

4

Lancaster submitted his report reflecting his opinion that petitioner was sane at the time of the charged offenses and needed no psychiatric treatment or medications because he did not suffer from mental illness, either in the past or on the date the report was authored. (CT at 119.) On August 27, 2001, the trial court ordered another independent evaluation of petitioner by a licensed psychologist and qualified medical examiner, Dr. Wuehler. (RT-I at 8.) The court also requested that Dr. Lancaster prepare a supplemental report to further clarify whether or not, in Dr. Lancaster's opinion, petitioner was insane at the time of the crime. (CT at 121-22.) On October 2, 2001, the trial court received Dr. Wuehler's report and on October 10, 2001 received the supplemental report of Dr. Lancaster. (CT at 123-24.) Both doctors concluded that petitioner was sane at the time the offenses were committed and capable of understanding the nature of his actions and of distinguishing right from wrong. (CT at 119, 123 & 136.) In his report Dr. Wuehler also specifically found that petitioner was capable of assisting his attorney with his defense. (CT at 132.)

On April 11, 2002, trial counsel appeared with petitioner in the Butte County Superior Court and advised the trial judge that he and petitioner had met that morning to discuss a proposed plea agreement. (RT-II at 1.) Trial counsel informed the court, in petitioner's presence, that petitioner had agreed to plead no contest to assault with a firearm, kidnapping, first degree robbery, and resisting an officer. (Id.)[4] The trial court indicated it would allow petitioner to withdraw his not guilty and not guilty be reason of insanity pleas in order to accept this plea agreement with the prosecution. (Id. at 6.) The court was provided with a completed entry of plea form executed by petitioner in which petitioner indicated that he understood the nature of the charges, the consequences of his plea and his constitutional rights. (CT at 140-44.) In addition, the trial court engaged in an abbreviated plea colloquy with petitioner in open court to ensure that petitioner understood the plea agreement in his case, the possible consequences of his

---

[4] When the plea was taken petitioner also admitted the enhancement allegations of causing great bodily injury and using a firearm causing great bodily injury. (RT-II at 3, 8-9.)

1    plea and that the plea was being freely and voluntarily made. (RT-II at 6-10.) In accepting
2    petitioner's plea, the court found that petitioner had voluntarily and intelligently waived his
3    constitutional rights, that his pleas and admissions were freely and voluntarily made and that
4    there was a factual basis for those pleas and admissions. (CT at 144; RT-II at 10.)

5           After petitioner's plea was entered, trial counsel requested that the court review
6    the preliminary hearing transcript prior to sentencing to better understand petitioner's history and
7    personal background. (RT-II at 11.) Trial counsel acknowledged that his client had previously
8    entered a dual plea of not guilty and not guilty by reason of insanity and had a history of mental
9    health problems. (Id.) Nonetheless, counsel stated that in light of the psychiatric evaluations
10   from Dr. Lancaster and Dr. Wuehler, it was counsel's evaluation that petitioner's mental health
11   problems would not serve to be an effective defense to the charges pending against him and that
12   those charges posed the potential imposition of two life sentences. (Id.) Based on the foregoing,
13   the facts of the case and their discussions, trial counsel informed the court that petitioner had
14   decided to accept the plea offer of a determinate term sentence which was substantially better
15   than the prosecution's original plea offer of 28 years-to-life. (RT-II at 11-12.) Finally, counsel
16   acknowledged that with this plea, petitioner would be legally eligible for parole upon completion
17   of his sentence. (Id.)

18          As noted above, on June 24, 2002, petitioner was sentenced to 49 years in state
19   prison. (RT at 23-25.) On January 14, 2003, he appealed from his judgment of conviction only
20   on the ground of sentencing error. (See Resp't Lodged Doc. 1, Appellant's Opening Br. on
21   Appeal.) On October 31, 2003, the California Court of Appeal for the Third Appellate District
22   modified the judgment thereby reducing petitioner's sentence to a total aggregate term of 36
23   years and four months due to sentencing error. (Resp't Lodged Doc. 4, Opinion at 3-6.) As
24   modified, petitioner's judgment of conviction was otherwise affirmed. (Id. at 7.)

25          On November 14, 2003, petitioner filed a petition for writ of habeas corpus in the
26   Butte County Superior Court alleging that he received ineffective assistance of trial counsel, the

1  trial court erred by failing to "personally" take a voluntary and intelligent waiver of his right to

2  trial in violation of his due process rights and that he received ineffective assistance of appellate

3  counsel when his counsel failed to raise potentially meritorious constitutional claims on appeal.

4  (See Resp't Lodged Doc. 5.) On January 5, 2004, the Butte County Superior Court issued a form

5  order denying the writ. (Resp't Lodged Doc. 6 at 1.) The form order had boxes checked

6  indicating that the denial was because:

7           The vague, unsupported, and conclusionary allegations contained
            in the petition are insufficient to allow for intelligent consideration
8           of the issues which petitioner has attempted to raise. (In re Swain
            (1949) 34 Cal.2D 300; In re Patton, 1918) [sic] 178 Cal. 629).
9
            Petitioner has failed to establish a prima facie case for relief on
10          habeas corpus (In re Lawler, Cal. 3rd 190, 194).

11  Id.

12          On February 5, 2004, petitioner filed a petition for writ of habeas corpus with the

13  California Court of Appeal for the Third Appellate District presenting the same issues he had

14  presented to the Butte County Superior Court. (Resp't Lodged Doc. 7.) That petition was

15  summarily denied on February 26, 2004. (Resp't Lodged Doc. 8.) On April 12, 2004, petitioner

16  filed a petition for writ of habeas corpus presenting the same issues in the California Supreme

17  Court. (Resp't Lodged Doc. 9.) That petition was summarily denied on March 2, 2005. (Resp't

18  Lodged Doc. 10.) On June 15, 2005, petitioner filed his federal petition for writ of habeas corpus

19  with this court.

20                                          ANALYSIS

21  I. Standards of Review Applicable to Habeas Corpus Claims

22          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

23  some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860,

24  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

25  Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the

26  interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

7

1 | Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas

2 | corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377

3 | (1972).

4 |     This action is governed by the Antiterrorism and Effective Death Penalty Act of

5 | 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

6 | 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting

7 | habeas corpus relief:

8
9
10 |     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

11
12 |     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

13
14 |     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

15 | See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

16 | (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

17 |     The court looks to the last reasoned state court decision as the basis for the state

18 | court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state

19 | court reaches a decision on the merits but provides no reasoning to support its conclusion, a

20 | federal habeas court independently reviews the record to determine whether habeas corpus relief

21 | is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

22 | Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not

23 | reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

24 | AEDPA's deferential standard does not apply and a federal habeas court must review the claim

25 | de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

26 | 1167 (9th Cir. 2002).

1          As noted, the Butte County Superior Court denied petitioner habeas relief in
2  reliance on the decision in In re Swain, finding that the allegations of the petition were
3  insufficient to allow for consideration of the issues presented. Nonetheless, respondent concedes
4  that petitioner's claims were properly presented in state court for purposes of the exhaustion
5  requirement and that because the state court did not issue a decision on the merits, the correct
6  standard to be employed by this court is de novo review. (Answer at 11.)

7  II. Petitioner's Claims

8          1. Ineffective Assistance of Trial Counsel

9          First, petitioner asserts that his trial counsel rendered ineffective assistance by
10  failing to adequately investigate and raise the issue of petitioner's developmental disability in
11  order to determine his competency to stand trial. (Pet. at 5, 5(a), 5(b).)

12          As a general rule, a petitioner may not raise claims of deprivation of his
13  constitutional rights that occurred prior to his guilty plea. "When a criminal defendant has
14  solemnly admitted in open court that he is in fact guilty of the offense with which he is charged,
15  he may not thereafter raise independent claims relating to the deprivation of constitutional rights
16  that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267
17  (1973). See also Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992) ("petitioner's nolo
18  contendere plea precludes him from challenging alleged constitutional violations that occurred
19  prior to the entry of that plea"); Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985)
20  (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent
21  claims" of pre-plea constitutional violations); Hodge v. Carey, No. Civ. S 04-0617 MCE DAD P,
22  2006 WL 236932, *5 (E.D. Cal. Jan. 31, 2006) (when he entered a no contest plea petitioner
23  waived ineffective assistance of counsel claim based upon his counsel's advice to enter into a
24  plea agreement). Petitioner therefore waived these ineffective assistance of counsel claims when
25  he chose to enter his no contest plea pursuant to the plea agreement reached with the prosecution.
26  /////

9

1    However, petitioner has not waived his claim to the extent he is attacking the

2    voluntary and intelligent character of his no contest plea. See Tollett, 411 U.S. at 266-67;

3    Hudson, 760 F.2d at 1030; Hodge, 2006 WL 236932 at *5. Here, petitioner alleges that his

4    mental and personal history was admittedly known by his trial counsel but not proffered to the

5    Court. Petitioner claims that if counsel had done so the trial court would have become concerned

6    that petitioner suffered from a developmental disability, thus triggering an examination by a

7    court-appointed director of the regional center for the developmentally disabled under California

8    Penal Code § 1369.[5] (Pet. at 5, 5(a), 5(b).) In other words, petitioner argues, if he was

9    developmentally disabled he could not have given a voluntary and intelligent plea. Although no

10   evidence has been presented by petitioner that any party to his hearings found him incompetent to

11   enter a plea at the time he did so, petitioner is attacking the voluntary and intelligent nature of his

12   guilty plea and therefore his ineffective assistance of counsel claim, which occurred prior to his

13   plea, may be considered.

14   In order to demonstrate ineffective assistance of counsel in the context of a

15   challenge to a guilty plea, the petitioner must show that counsel's advice fell below an objective

16   standard of reasonableness as well as a reasonable probability that, but for counsel's errors, he

17   would not have plead guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S.

---

[5] California Penal Code § 1369 provides for the court appointment of a psychiatrist or licensed psychologist to examine a defendant in a criminal case to evaluate the nature of the defendant's mental disorder, if any, the defendant's ability or inability to understand the nature of the criminal proceedings or assist counsel in the conduct of a defense in a rational manner as a result of a mental disorder and, if appropriate, whether or not treatment with antipsychotic medication is medically appropriate for the defendant and whether antipsychotic medication is likely to restore the defendant to mental competence. The thrust of Penal Code §§ 1367, 1368 and 1369 is to prevent the prosecution and possible confinement of a person who is incompetent to properly defend himself. People v. Rojas, 118 Cal. App. 3d 278, 285 (1981). A defendant, however, is presumed to be competent and has the burden of showing incompetence by a preponderance of the evidence. (Id.) See also People v. Rells, 22 Cal. 4th 860, 866 (2000); Cal. Penal Code § 1369(f). However, if the court has doubts about a defendant's competence and the defendant does not seek a competency determination, the court must appoint two psychiatrists or psychologists to examine the defendant, one named by the prosecution and one by the defense. See Faulks v. Castro, No. C995086 WHAPR, 2003 WL 22749075, * 8 (N.D. Cal. Nov. 14, 2003).

1  52, 58-59 (1985); Strickland v. Washington, 466 U.S. 668, 688 (1984). Petitioner has failed to
2  make a showing meeting this standard here.

3                 Even assuming *arguendo* that but for counsel's alleged errors, petitioner would
4  not have plead no contest and would have instead insisted on going to trial, petitioner's claim
5  still lacks no merit. In order for petitioner to be entitled to habeas relief, his trial counsel's
6  advice must have fallen below an objective standard of reasonableness. See Hill, 474 U.S. at 56;
7  Strickland, 466 U.S. at 688; Tollett, 411 U.S. at 267; McMann v. Richardson, 397 U.S. 759, 774
8  (1970) (a petitioner must show a "serious dereliction" by his attorney to demonstrate that a guilty
9  plea was not a knowing and intelligent act); Perez v. Rosario, 459 F.3d 943, 946 (9th Cir. 2006)
10  ("Perez must show that his prior counsel's advice during the plea bargaining process 'fell below
11  an objective standard of reasonableness.'") Here, both counsel's performance and his apparent
12  advice were objectively reasonable.

13                 Petitioner's trial counsel indicated on the record that he had at one point in the
14  proceedings initiated a motion to trigger review of whether petitioner was competent to stand
15  trial which in turn led to petitioner being evaluated by two mental health professionals. (RT-II at
16  11.) Of course those psychiatric evaluations from Dr. Lancaster and Dr. Wuehler indicated that
17  petitioner was not only sane at the time the charged offenses were committed but was also
18  competent to stand trial. Counsel also stated on the record that based upon his own knowledge of
19  petitioner's personal and mental history and the other facts of the case, that his professional
20  assessment was that a defense based upon petitioner's "mental health problems" would not be
21  effective. (Id.) Finally, counsel indicated on the record in petitioner's presence that he and his
22  client had compared the determinate term sentence being offered by the prosecution in the
23  proposed plea bargain to the potential for two life sentences that petitioner faced if convicted at
24  trial. (Id.) According to counsel, after considering the alternatives, petitioner had elected to
25  accept the plea bargain which was far more beneficial to petitioner than the original plea bargain
26  /////

11

1 | offered by the prosecution and under which he would be eligible for parole upon completion of
2 | his term instead of facing an indeterminate term sentence. (Id. at 12.)

3 |        There is, of course, a "strong presumption that counsel's performance falls within
4 | the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)
5 | (quoting Strickland, 466 U.S. at 688-89). See also McMann, 397 U.S. at 771 (the voluntariness
6 | of the plea depends on whether counsel's advice was "within the range of competence demanded
7 | of attorneys in criminal cases"). As summarized above, the record in this case establishes that
8 | petitioner's counsel explored any defenses petitioner might have had, including those based on
9 | his mental state or condition. Counsel was aware of two psychiatric evaluations that had
10 | concluded that petitioner was sane at the time the charged offense were committed and also
11 | indicated that petitioner was then competent to assist in his own defense and to stand trial.
12 | Counsel was also well-aware that if he proceeded to trial and was convicted, petitioner faced the
13 | possibility of two life sentences. Counsel was able to convince the prosecution to improve on
14 | their original plea offer and to offer a plea bargain under which petitioner would become eligible
15 | for probation. This performance by petitioner's trial counsel was reasonably competent and was
16 | certainly within the range of competence demanded of attorneys in criminal cases. Therefore
17 | petitioner is not entitled to relief with respect to his challenge to his plea on the grounds of
18 | ineffective assistance of counsel.

19 |        2. Failure to "Personally" Take Voluntary and Intelligent Waiver of Right to Trial

20 |        Next, petitioner claims that his constitutional rights were violated when the trial
21 | court failed to "personally" take a waiver of his "fundamental" rights prior to accepting his no
22 | contest plea. (Pet. at 5(c).) Petitioner has never clearly identified how the trial court should
23 | have, in his opinion, "personally" taken his waiver. Nor has petitioner cited any authority in
24 | support of this claim that would assist in interpreting it. However, the undersigned infers that
25 | petitioner equates the court's "personal" taking of a waiver of constitutional rights with the
26 | enumeration of specific constitutional rights by the trial court on the record in open court. (Id at

12

1    5(c), 5(d).) A failure by the trial court to "personally" take a waiver of constitutional rights in

2    connection with a plea, according to petitioner, makes a voluntary and intelligent no contest plea

3    impossible. Id.

4                 A guilty plea must be knowing, intelligent and voluntary. Brady v. United States,

5    397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).[6] "The voluntariness of

6    [a petitioner's] guilty plea can be determined only by considering all of the relevant

7    circumstances surrounding it." Brady, 397 F.2d at 749. In Blackledge v. Allison, 431 U.S. 63

8    (1977), the Supreme Court addressed the presumption of verity to be given the record of plea

9    proceeding when the plea is subsequently subject to a collateral challenge. While noting that the

10    defendant's representations at the time of his guilty plea are not "invariably insurmountable"

11    when challenging the voluntariness of that plea, the Supreme Court recognized that the

12    defendant's representations, as well as any findings made by the judge accepting the plea,

13    "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn

14    declarations in open court carry a strong presumption of verity." Id. at 74. See also Marshall v.

15    Lonberger, 459 U.S. 422, 437 (1983) (a plea is presumed valid in habeas proceeding when the

16    pleading defendant was represented by counsel); Little v. Crawford, 449 F.3d 1075, 1081 (9th

17    Cir. 2006); Chizen v. Hunter, 809 F.2d 560, 561 (9th Cir. 1986).

18                 In Boykin, the United States Supreme Court held that the record must

19    affirmatively reflect that a criminal defendant's guilty plea is intelligent and voluntary. 395 U.S.

20    at 242-43. In that case, the judge taking the plea had asked no questions of the petitioner

21    concerning his guilty plea and the petitioner had not addressed the Court. The Supreme Court

22    concluded the record must reflect that a criminal defendant pleading guilty understands, and is

23

24        [6] Petitioner pled no contest to the charges against him. Under California law, a no contest plea has the same effect as a plea of guilty in the context of the criminal proceedings.

25    See, e.g., People v. West, 3 Cal. 3d 595, 601 (1970). Accordingly, federal constitutional principles governing guilty pleas apply to petitioner's claim. Miller v. McCarthy, 607 F.2d 854,

26    856 (9th Cir. 1979).

1  voluntarily waiving, his constitutional rights to the privilege against compulsory self-
2  incrimination, to trial by jury and to confront one's accusers and that the court would not presume
3  such a waiver from a silent record. Id. In Brady, the Supreme Court cited the decision in Boykin
4  while upholding a guilty plea as voluntary and intelligent even though the defendant had not been
5  specifically advised of the three rights discussed in Boykin. The Supreme Court clarified the
6  holding of Boykin by stating, "the new element added in Boykin was the requirement that the
7  record must affirmatively disclose that a defendant who pleaded guilty entered his plea
8  understandingly and voluntarily." Brady, 397 U.S. at 747-48 n.4. Thus, it has subsequently been
9  recognized by the courts that a specific articulation of the Boykin rights "is not the sine qua non
10 of a valid guilty plea." Wilkins v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974). See also Rincon
11 v. Roe, No. Civ. S-02-2647 RRB DAD P, 2007 WL 4126079 (E.D. Cal. Nov. 20, 2007). Rather,
12 if the record demonstrates that a guilty plea is knowing and voluntary, "no particular ritual or
13 showing on the record is required." United States v. McWilliams, 730 F.2d 1218, 1223 (9th Cir.
14 1984).

15          Upon a full review of the record in this case, the undersigned concludes that the
16 record reflects that petitioner's plea was freely and voluntarily made, with knowledge of the
17 consequences thereof. There was an adequate colloquy between the court and petitioner at the
18 time he entered his plea. (RT at 6-11.) In this regard, the trial judge asked petitioner if he had
19 read and understood the plea form that he had completed and signed, if he had spoken with his
20 counsel, and if he was entering his plea freely and voluntarily. (Id. at 6-7.) The judge then went
21 through each of the charges with petitioner, asked him for his plea, and found him to have
22 voluntarily and intelligently entered his plea. (Id. at 8-10.) In addition, petitioner had initialed
23 and signed the written plea form used by the Butte County Superior Court that explained in detail
24 the terms of the plea agreement and the constitutional rights he was giving up by entering his no
25 contest plea. (CT at 140-44.) In particular, petitioner initialed the boxes that expressly
26 represented to the court that in entering his no contest pleas, he understood he was waiving his

14

1  constitutional rights to a jury trial, to confront all witnesses against him and to remain silent. (Id.
2  at 141.) The plea form included the statement signed by petitioner's attorney attesting to the fact
3  that he had reviewed the form with petitioner, explained each of his rights to him, answered all of
4  his questions with regard to his plea, discussed with petitioner the content, substance and
5  meaning of each of the paragraphs initialed by petitioner, discussed the facts of the case, the
6  consequences of the plea, the elements of the charged offenses and the possible defenses he
7  might have with petitioner and that counsel concurred in the plea and with his client's decision to
8  waive his constitutional rights in that regard. (CT at 144.) Finally, the judge who accepted the
9  plea signed the form, finding that petitioner had been informed of his constitutional rights and the
10 consequences of his pleas and that petitioner was knowingly, understandingly and intelligently
11 waiving his constitutional rights and freely and voluntarily entering his change of plea. (Id.)

12         This record reflects that petitioner made a voluntary and intelligent choice to
13 plead no contest to the charges against him pursuant to a plea bargain that was favorable to him.
14 He voluntarily waived his rights to a jury trial, to confront his accusers and his right against
15 self-incrimination. See Boykin, 395 U.S. at 243. Further, petitioner had notice of the nature of
16 the charges against him. See Lonberger, 459 U.S. at 436 (in order for a plea to be voluntary, an
17 accused must receive notice of the nature of the charge against him, "the first and most
18 universally recognized requirement of due process"); Smith v. O'Grady, 312 U.S. 329, 334
19 (1941). This is sufficient for purposes of federal review. Lonberger, 459 U.S. at 436. Aside
20 from petitioner's unsupported allegation that his attorney was "in a hurry" (Pet. at 5(d)), there is
21 no evidence that petitioner was threatened in any way in order to induce him to enter his no
22 contest pleas. See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations
23 which are not supported by a statement of specific facts do not warrant habeas relief'"); James v.
24 Borg, 24 F.3d 20, 26 (9th Cir. 1994). Petitioner has failed to demonstrate any special
25 circumstances that would allow for habeas relief.  See Rodriguez v. Ricketts, 777 F.2d 527, 528
26 (9th Cir. 1985) ("We do not address a case where special circumstances exist, for example, a

15

1  defendant's specific protestation of innocence, which might impose on a state court the

2  constitutional duty to make inquiry and to determine if there is a factual basis for the plea.")

3  Accordingly, petitioner is not entitled to habeas relief on his claim that his no contest pleas were

4  not "personally" taken by the court in violation of his constitutional rights or that his pleas were

5  not voluntarily and intelligently made.

6      3. Ineffective Assistance of Appellate Counsel

7      Finally, petitioner claims that his appellate counsel rendered ineffective assistance

8  by waiving potentially meritorious constitutional claims. (Pet. at 5(e).) However, petitioner has

9  identified no issue that he believes his appellate counsel should have raised, nor does he offer any

10 facts to support this claim. Rather, petitioner makes only brief reference to the decisions in

11 Anders v. California, 386 U.S. 738 (1967) and Strickland v. Washington, 466 U.S. 668 (1984) in

12 presenting this claim. Petitioner's failure to identify issues he believes should have been raised

13 on his behalf on appeal and his mere vague mention of the two decisions noted above do not

14 warrant the granting of habeas relief. See Jones, 66 F.3d at 204; James, 24 F.3d at 26.

15                    CONCLUSION

16      For all of the reasons set forth above, IT IS HEREBY RECOMMENDED that

17 petitioner's application for a writ of habeas corpus be denied.

18      These findings and recommendations are submitted to the United States District

19 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

20 days after being served with these findings and recommendations, any party may file written

21 objections with the court and serve a copy on all parties. Such a document should be captioned

22 "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

23 shall be served and filed within five days after service of the objections. The parties are advised

24 /////

25 /////

26 /////

16

that failure to file objections within the specified time may waive the right to appeal the District

Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 4, 2009.

Dale A. Drozd

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:3
brown1195.hc

17

EXHIBIT B

# MENTAL HEALTH TREATMENT PLAN

☐ Initial  ☐ Update  ☐ BiWeekly MHCB Review  ☐ Quarterly Review  ☒ Annual Review

| I. General Information | | | Current Level of Care: ☐ NONE ☒ CCCMS ☐ EOP | TODAY'S DATE |
|---|---|---|---|---|
| Age 28 | Race White | 1st CDC arrival 0-00-02 | ☐ MHCB ☐ OTHER<br>Custody Level: I/ II / III / **IV** / AdSeg / SHU | 7/15/09 |
| Points 43 | EPRD 2036 | DDP NCF | Current Housing: ☐ RC ☒ GP ☐ CTC<br>☐ ASU ☐ PSU ☐ SHU ☐ OTHER | NEXT UPDATE<br>7/15/10 |
| Controlling Offense Car Service<br>Attempted Murder, Kidnapping | | | Inmate Bed Number: | |

| Arrival Date This Treatment Setting: | | From: | | | |
|---|---|---|---|---|---|
| Date Reviewed: | Initials: | Date: | Initials | Date: | Initials: |

**II. CLINICAL SUMMARY:**   For historical information, see form:   dated:

Summary of progress since last treatment plan dated: I/m has been stable throughout the last year, when I/m initially arrived @ SVSP he was hospitalized @ CTC for threatening to harm himself and exacerbation of psychotic sx's. I/m eventually adjusted to this yard and has done reasonably well for the last year. I/m is currently on + meds and appears stable. I/m has recieved Ø 115's during the last year. No job @ this time.

History of past diagnoses based on UHR review: Adjustment D/O c/disturbance of Mood and conduct, ASPD, Psychotic D/o nos, Polysubstance abuse Mood d/o NOS

Additional relevant information:

**III. PROBLEM LIST**

| Number | Problem | Intervention/goals/Clinician | Progress/Date |
|---|---|---|---|
| 1 | Depression | **See attached** | |
| | | | |
| | | | |
| | | | |

**IV. PSYCHOTROPIC MEDICATION : See UHR**

**V. CURRENT RISK FACTORS/BEHAVIORAL ALERTS:**   ☐ Suicidal  ☐ Self Injurious  ☐ Assaultive  ☐ Keyhea Date Expires:

| See Form: | Dated: | Summary: |
|---|---|---|

**VI. RECOMMENDED HOUSING:**   **Deferred to Custody**

**VII. TRANSFER/DISCHARGE TO:**  ☐ Non-MHSDS ☒ CCCMS  ☐ EOP ☐ MHCB ☐ APP ☐ ICF ☐ DTP ☐ Parole

Institution: **SVSP**   Clinician: G. Goldstein, PsyD   Date: 7/1/09

MENTAL HEALTH TREATMENT PLAN
CDCR 7388 (Rev. 06/06)
Confidential Client/Patient Information
Page 1 of 6

Last Name: Brown   First Name:

JUL 2 1 2009

CDC #: T60348   DOB:

**MENTAL HEALTH TREATMENT PLAN**

## IX. CURRENT DSM DIAGNOSIS

| | | |
|---|---|---|
| **Axis I.** | 309.4 | Adjustment disorder with disturbance of mood and conduct |
| **Axis II.** | 301.7 | Antisocial personality disorder |
| | 301.81 | Narcissistic personality disorder |

**Axis III.** Claims of chronic pain of right arm due to gunshot wound

**Axis IV.** Incarceration / SNY

**Axis V.** GAF= 40   Specify Functional Impairment:  2 = Moderate  Interpersonal Behavior

| X. TREATMENT TEAM MEMBERS: | Position/Title | Signature |
|---|---|---|
| S. Kittimongcolporn, M.D. | **MHCB Medical Director** | |
| S. Kittimongcolporn, M.D. | **IDTT Leader** | |
| E. Weinstein, M.D. | **Attending Psychiatrist** | |
| O. Glover, Ph.D. | **Psychologist** | |
| L. Gutierrez, LPT | **Psychiatric Technician** | |
| Ponder | **CCI** | |

**INSTITUTION: SVSP**   CLINICIAN: S. Kittimongcolporn, M.D.

**INMATE BED NUMBER:**   DATE: 7/7/2008
MHCB - 5

Name (Last, First, MI), CDC Number, DOB

**BROWN, EDWARD**

**MENTAL HEALTH TREATMENT PLAN**
**CDCR 7388 (Rev. 06/06)**
**(Replaces MH2)**
Confidential Client/Patient Information
Page 3 of 3

**T60348**

STATE OF CALIFORNIA      DEPARTMENT OF CORRECTIONS AND REHABILITATION

2

| Institution: SVSP | Clinician: S. Kittimongcolporn, M.D. | Date: 7/7/2008 |
|---|---|---|

**VIII. Mental Status Examination:**

A. Appearance: ☒ WNL

B. Behavior/Cooperation: ☐ WNL Entitled, demanding, threat of responsibility if he is to harm himself if sent back to yard with cellie.

C. Orientation: ☒ WNL

D. Speech: ☒ WNL

*Inmate continues to say he will cut himself as soon*

E. Affect: ☒ WNL *as he goes back to yard. He declairos he will not be held*

F. Mood: ☐ WNL *res possible for his act. He feels he cannot dea l with*

G. Sleep/Appetite: ☒ WNL *it need the raises his voros while talking.*

H. Cognition: *"Why don't you guys give me a big dose of morphine*

Fund of Information ☒ WNL *So I won't hurla up"*

Intellectual Functioning ☒ WNL

Concentration ☒ WNL *"I belong to a mental hospital."*

Attention ☒ WNL

Memory ☒ WNL

I. Thought Processes: ☒ WNL   ☐ Tangential   ☐ Circumstantial   ☐ Loose

J. Perception:

Hallucinations ☒ None

K. Thought Processes:

Delusions ☒ None

Ideas of Reference ☒ None

Obsessions ☒ None

Magical Thinking ☒ None

L. Insight ☐ WNL Very poor

Judgment ☐ WNL Very poor

There is a strong possibility that the inmate is seeking medications that can be abused or sold, such as gabapentin, Wellbutrin, Seroquel and Buspar. He has strong sense of entitlement and the "hearing voices telling him to kill others" seems too specific to be genuine. This is more likely instrumental behaviors for secondary gain. Harming others, if he so chooses will be criminal activities, not MH issues.

**MENTAL HEALTH TREATMENT PLAN**
CDCR 7388 (Rev. 06/06)
(Replaces MH2)
Confidential Client/Patient Information
Page 2 of 3

Name (Last, First, MI), CDC Number, DOB

**BROWN, EDWARD**

**T60348**

STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS AND REHABILITATION

Institution: **SVSP**     Clinician: _Sandis_     Date: _5/30/08_

II. HISTORY (Continued)

*H. Medical History:*

☐ None reported or documented

☒ Significant head trauma _Multiple occasion_

☐ Coma / Loss of Consciousness

☐ Seizures

☒ Other Relevant Medical Problems:
  Bullet in Rt Arm

*I. Mental Health History:*

☐ None reported or documented     Other information:

☒ Outpatient Care: _Age 11 ; Suicidal Br, Hallucination_     _Age 17- Bad LSD trip- leading to_
                                                              _Suicide attempt = prison_

☐ Inpatient Care:

☒ While Incarcerated: _CCCMS, EOP_

☐ At Parole Outpatient Clinic:

☒ Psychotropic Medication in last two years:

☒ Substance Abuse History:

| Substance Used: | Age of onset: | Frequency of use: | Duration of use: |
|---|---|---|---|
| THC | 9 | Daily x2 | Last use: 5 yrs ago |
| EtOH | 9 | 3-4 x a week | Last use: 14 yr ago. |

*J. Psychotropic Medication:*                              _Prozac = Poor_   _Buspar = Fair to_
☒ None ~~avm~~ ⊙                                           _Paxil = Poor_            _Good Response_

☐ Current Psychotropic Medications: See Page 1 _N/a_       _Seroquel = Poor ; ↑ Sedation_

☒ Past Psychotropic Medications and Outcomes: _Wellbutrin = Fair response   Haldol = Poor Response (SE s?)_
~~Thorazine = ?~~   _Risperdal = Poor Response = "Made me cry a lot." ↑ Constipation, frequent urination_

_Depakote = ↑ Agitation, ↑ Irritability, ↓ sleep._   _Zyprexa = Good_   Name:
(1750 mg)                                             _Improved Sleep_   _Brown  Edward_
                  MENTAL HEALTH EVALUATION          _↓ irritability_
                  CDCR 7386 (Rev. 06/06)
                  Confidential Client/Patient Information
                  Page 1 of 14                                        _T60348     11/8/80_

        State of California   Department of Corrections and Rehabilitation

3 .

STATE OF CALIFORNIA
**SUICIDE RISK ASSESSMENT CHECKLIST**
CDCR 7447 (06/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## SUICIDE RISK ASSESSMENT CHECKLIST

FACILITY _____ SVSP

**LOC:** ☐ None ☑ CCCMS ☐ EOP ☐ MHCB    **HOUSING:** ☐ RC ☑ GP ☐ CTC ☐ ASU ☐ PSU/SHU ☐ OTHER _____
Marital Status: ☺ Ethnicity: _Cauc_ Controlling Offense: _Hemptd_ Custody Level: _IV_ EPRD: _3/17/26_

**Reason for Suicide Risk Evaluation (check one of the following):** _Murder_

☐ To determine the need for referral to the crisis (MCHB) program    ☑ To formulate treatment planning

☐ To assist with the discharge planning from CCCMS, EOP, or MHCB    ☐ Other _____
   program

**Sources of Information:** ☑ C/O or Staff Interview    ☑ I/M Interview    ☑ UHR    ☐ C-File

### USE THIS CHECKLIST AS A GUIDE FOR THE CLINICAL ASSESSMENT OF SUICIDE RISK:

**Static Risk Factors – (unchanging, historical):**

☑ Ethnicity: (Caucasian) Hispanic    ☑ Suicide ideation/threats in past, Dates: _Chronic, multi ple/Instruments_
☐ History of suicide attempt in CDCR    ☑ Previous suicide attempts (when and method): _Cuthis at 11, putting rope_
☐ Sex Offender _cut wrist in to. jar l 2000_    ☐ Family history of suicide _around multifiger b, took rat poison 2/17,_
☑ History of violence    ☑ History of mental illness, Axis 1 Hx: _Borderline/Antisocial_
☑ History of substance abuse    _Personality disorder_

**Slowly Changing Risk Factors – (long-term risk factors):**

☑ First prison term    ☑ Known new court proceedings/disciplinary actions
☑ Long or life sentence, three strikes    ☐ Current Ad Seg, SHU, or PSU terms
☑ Hx of poor impulse control or poor coping skills    ☑ Level 4 custody score
☐ Early in prison term    ☐ Chronic, serious or terminal illness
☐ Protective custody

**Protective Factors:**
(check all that apply)

☑ Family Support
☐ Children at home

**Dynamic Risk Factors – (short-term risk factors; continue to assess):**

☐ Suicide intent    ☐ Suicide plan
☐ Recent suicidal ideation, acute/chronic    ☐ Anniversary of important loss
☐ Recent release from psychiatric hospital    ☐ Recent rejection or loss
☐ Sudden calm following suicidal ideation/attempt    ☐ Single-cell placement
☑ Anxious, agitated or fearful    ☐ Significant current impulsivity
☐ Disturbance of mood (depression or mania)    ☐ Recent suicide attempt or self-injury
☐ Affective instability or lability    ☐ Well planned or highly lethal attempt / ideation
☐ Current insomnia, poor appetite or anorexia    ☐ Hoarding or cheeking medication
☑ Perceived lack of support system    ☐ Poor compliance with treatment or medication
☐ Hopelessness or helplessness    ☐ Recent trauma or threat to self-esteem
☐ Feelings of guilt or worthlessness    ☐ Recently assaultive or violent
☐ Fearful for safety    ☐ Pre-death behavior e.g. note, give things away

☑ Religious support
☐ Spousal support
☐ Supportive friends
☐ Helping others
☐ Insight into problem
☐ Realistic life plan
☐ Exercises regularly
☐ Group activities refused group
☐ Job assignment
☑ Other: _recds_

_He states smoking cigarettes_
_drinks, will cut_
_Illegal didati laiy told them_

**Evaluation of Risk Based on Above Factors, Interview of Inmate and other information:**

Summarize: _Inmate is asfeld, threatens to cut himself if sent to jard_
_Claims he belongs only to a mental hospital._

☐ No Apparent Significant Risk    ☐ Low Risk    ☐ Moderate Risk    ☐ High Risk    ☑ Conditional Risk

**Recommendation / Plan (check all that apply):**

☐ No referral needed
☐ Referral to Primary Clinician/Case manager
☐ Referral to Psychiatrist for medication review

☐ Discharge to lower level of care
☐ Crisis bed placement on suicide precaution
☐ Crisis bed placement on suicide watch
☐ OHU placement

☐ DMH referral
☐ IDTT/TX plan to address risk factors
☐ Suicide watch
☐ Suicide precautions

See Additional Comments: (on Form _____) Dated (required) _____

Clinician name/Title: _S Ktimingul pan M_ Signature: _____    Date: _7/3/08_    Time: _____
P.r.    . ED

**MENTAL HEALTH**
SUICIDE RISK ASSESSMENT CHECKLIST
CDCR XXXX (06/06)

Last Name: _T60348_    First Name: _____    MI: _____

STATE OF CALIFORNIA
**SUICIDE RISK ASSESSMENT CHECKLIST**
CDCR 7447 (06/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## SUICIDE RISK ASSESSMENT CHECKLIST

FACILITY SVSP

**LOC:** ☐ None ☒ CCCMS ☐ EOP ☐ MHCB    **HOUSING:** ☐ RC ☒ GP ☐ CTC ☐ ASU ☐ PSU/SHU ☒ OTHER SNY
Marital Status: S  Ethnicity: W ___ Controlling Offense: 1st murder  Custody Level: IV  EPRD: 2036

**Reason for Suicide Risk Evaluation (check one of the following):**

☑ To determine the need for referral to the crisis (MCHB) program          ☐ To formulate treatment planning

☐ To assist with the discharge planning from CCCMS, EOP, or MHCB          ☐ Other _____
program

**Sources of Information:** ☒ C/O or Staff Interview    ☒ I/M Interview    ☒ UHR    ☐ C-File

USE THIS CHECKLIST AS A GUIDE FOR THE CLINICAL ASSESSMENT OF SUICIDE RISK:

**Static Risk Factors – (unchanging, historical):**

☒ Ethnicity: (Caucasian) Hispanic              ☒ Suicide ideation/threats in past, Dates: chronic
☒ History of suicide attempt in CDCR          ☒ Previous suicide attempts (when and method): several superficial
☐ Sex Offender                                ☐ Family history of suicide
☒ History of violence                          ☑ History of mental illness, Axis 1 Hx: Borderline P/D
☒ History of substance abuse

**Slowly Changing Risk Factors – (long-term risk factors):**

☐ First prison term                            ☐ Known new court proceedings/disciplinary actions
☑ Long or life sentence, three strikes         ☐ Current Ad Seg, SHU, or PSU terms                | **Protective Factors:**
☑ Hx of poor impulse control or poor coping skills  ☑ Level 4 custody score                        | (check all that apply)
☐ Early in prison term                         ☐ Chronic, serious or terminal illness
☐ Protective custody                                                                              ☐ Family Support
                                                                                                  ☐ Children at home

**Dynamic Risk Factors – (short-term risk factors; continue to assess):**                          ☐ Religious support

☐ Suicide intent                               ☐ Suicide plan                                     ☐ Spousal support
☐ Recent suicidal ideation, acute/chronic      ☐ Anniversary of important loss                    ☐ Supportive friends
☐ Recent release from psychiatric hospital     ☐ Recent rejection or loss                         ☐ Helping others
☐ Sudden calm following suicidal ideation/attempt  ☐ Single-cell placement                        ☐ Insight into problem
☑ Anxious, agitated or fearful                 ☐ Significant current impulsivity                  ☐ Realistic life plan
☑ Disturbance of mood (depression or mania)    ☐ Recent suicide attempt or self-injury            ☑ Exercises regularly
☐ Affective instability or lability            ☐ Well planned or highly lethal attempt / ideation ☐ Group activities
☐ Current insomnia, poor appetite or anorexia  ☐ Hoarding or cheeking medication                  ☐ Job assignment
☐ Perceived lack of support system            ☐ Poor compliance with treatment or medication     ☐ Other:
☐ Hopelessness or helplessness                 ☐ Recent trauma or threat to self-esteem
☐ Feelings of guilt or worthlessness           ☐ Recently assaultive or violent
☐ Fearful for safety                           ☐ Pre-death behavior e.g. note, give things away

**Evaluation of Risk Based on Above Factors, Interview of Inmate and other information;**
Summarize: I/M is upset / psychotic over losing his single cell status.

☒ No Apparent Significant Risk    ☐ Low Risk    ☐ Moderate Risk    ☐ High Risk    ☐ Conditional Risk

**Recommendation / Plan (check all that apply):**

☐ No referral needed                    ☐ Discharge to lower level of care          ☐ DMH referral
☒ Referral to Primary Clinician/Case manager  ☐ Crisis bed placement on suicide precaution  ☐ IDTT/TX plan to address risk factors
☐ Referral to Psychiatrist for medication review  ☐ Crisis bed placement on suicide watch  ☐ Suicide watch
                                        ☐ OHU placement                              ☐ Suicide precautions

See Additional Comments: (on Form _____ ) Dated (required) _____

Clinician name/Title: Sanders Norum Signature: Vance Norum, MD Date: 7/19/08    Time: 1117

MENTAL HEALTH
SUICIDE RISK ASSESSMENT CHECKLIST
CDCR XXXX (06/06)

Last Name:              First Name:         MI:
Brown                   Edward
CDC# T60340             DOB 11 / 8 / 1980

NAME and NUMBER

CDC-128-B (Rev 4/74)
MCSP 545 (01/00) FSP41-0044

**Reason for Referral:** (Please check the **primary reason**(s) and give an example or comment on the lines below)

| | |
|---|---|
| History of psychiatric care; needs reassessment | Needs psychotropic medication review |
| Expresses suicidal ideation or recent attempts | Exhibits bizarre behavior (describe below) |
| Incapable/unwilling to care for self | Poor appetite/sad/fearful/nervous |
| Confused/disoriented/withdrawn | Poor self control/unpredictable/bothers others |
| Unprovoked hostility/assaultiveness | Hears things/sees things/imagines things |

Describe: _____

_____

_____

Referred By: _____ Title: _____ Signature: _____ Phone: _____

**Distribution:** **Original:** C-File **Copy:** Medical File **Copy:** Inmate **Copy:** Mental Health Department
Date: **STAFF REFERRAL FOR MENTAL HEALTH SERVICES** GENERAL CHRONO

---

STATE OF CALIFORNIA
**MENTAL HEALTH REFERRAL CHRONO**
CDCR 128-MH5 (Rev. 06/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**NAME** _____ (Last, First, MI)

☒ Routine

CDC # _____ INSTITUTION _____ **HOUSING** _____

☐ Urgent

☐ Non English Speaking Language: _____

☐ Emergency (Contact Mental Health Services immediately)

REASON FOR REFERRAL: (Please check **the primary reason(s)** and give an example or comment on the line below)

- History of Psychiatric care needs re-assessment
- Expresses suicidal ideation or recent attempts (Emergency)
- Incapable of caring for self / poor grooming
- Confused / disoriented / withdrawn
- Hostile / assaultive / poor self control
- Taken advantage of by other inmates
- Poor attention span / difficulty following directions
- Other (Describe:) _____

- ☒ Needs Psychotropic medication review
- Exhibits bizarre behavior (describe below)
- Poor appetite / sad / fearful / nervous
- Unpredictable / bothers others
- Hears things / sees things / imagines things
- Insomnia / sleeps too much

REFERRED BY (Print Name) _____

**Received at Mental Health By:** _____

| TITLE | PHONE / EXTENSION | TIME | DATE |
|---|---|---|---|

Time: _____ Date: _____ **Assigned to:** _____

Distribution: White - Mental Health Program; Green - CCI; Canary - C-File; Pink - UHR, Goldenrod - Inmate

# MENTAL HEALTH TREATMENT PLAN

## IX. CURRENT DSM DIAGNOSIS

| Axis I. | 309.4 | Adjustment Disorder with disturbance of conduct / mood |

| Axis II. | 301.7 | Antisocial Personality Disorder |

Axis III. See UHR / CTC medical record

Claims Chronic pain of Right arm due to gun shot wound

Axis IV. Incarceration / ASU / SNY / Safety concerns

Axis V. GAF= 35    Specify Functional Impairment: NONE    1 = Mild   2 = Moderate   3 = Severe

Work/School    ADL    Medical    Interpersonal Behavior    Psychological

## X. TREATMENT TEAM MEMBERS:

| Name | Position/Title | Signature |
|---|---|---|
| S. Kittimongcolporn, M.D. | IDTT Leader | |
| S. Kittimongcolporn, M.D. | Primary Clinician | |
| E. Weinstein, M.D. | Psychiatrist | |
| O. Glover, Ph.D. | Psychologist | |
| L. Gutierrez, LPT | Psychiatric Technician | |
| Martin S. Chavez | cc1  Sch | |

INSTITUTION: SVSP    CLINICIAN: S. Kittimongcolporn, M.D.    Name (Last, First, MI), CDC Number, DOB

INMATE BED NUMBER:    DATE:    6/9/08
MHCB - 7

MENTAL HEALTH TREATMENT PLAN
CDCR 7388 (Rev. 06/06)
(Replaces MH2)
Confidential Client/Patient Information
Page 3 of 3

STATE OF CALIFORNIA    DEPARTMENT OF CORRECTIONS AND REHABILITATION

Institution: **SVSP**   Clinician: _Sanders_   Date: _5/30/08_

V. FUNCTIONAL IMPAIRMENT Specify:   0 = NONE   1=Mild   2=Moderate   3=Severe

| Work/School | Medical | Behavioral Control |
|---|---|---|
| ADL | Interpersonal | Mental Illness Symptoms |

VI. DSM IV DIAGNOSIS ☐ See CDCR 7388-MH, dated: ___ / ___ / ___

Axis I:   Psychotic D/o NOS
          Cannabis Dep.
          D/o Malingering

Axis II:   ASPD

Axis III:   Hx of Multiple Head Injuries

Axis IV:   Incarceration

Axis V:   GAF= 65

VII. RECOMMENDATION

A) ☐ Does not meet criteria for inclusion in the Mental Health Services Delivery System (MHSDS)

B) ☒ Meets criteria for inclusion in the MHSDS (check Level of Care below)

   ☒ Axis I disorder of: _Psychotic D/o NOS_   OR

   ☐ Inclusion is for Medical Necessity (See relevant chrono for Chief Psychiatrist signature)

C) LOC ☒ Clinical Case Management (CCCMS)   ☐ Enhanced Outpatient Program (EOP)   ☐ Crisis Bed (MHCB)

   DMH: ☐ APP   ☐ DTP   ☐ ICF

D) Recommended Housing: Deferred to Custody

VIII. BEHAVIORAL ALERTS/RISKS

IX. RECOMMENDED FOLLOWUP/INITIAL TREATMENT PLAN: See CDCR 7388-MH dated: ___ / ___

Clinician's Signature: _Sanders PhD_

---

MENTAL HEALTH EVALUATION
CDCR 7386 (Rev. 06/06)
Confidential Client/Patient Information
Page 1 of 14

State of California   Department of Corrections and Rehabilitation

Name:

Brown  Edward

T60348   11/8/80

**MENTAL HEALTH TREATMENT PLAN**

☒ Initial  ☐ Update  ☐ BiWeekly  ☐ MHCB Review  ☐ Quarterly Review  ☐ Annual Review

| I. GENERAL INFORMATION: | Current Level of Care: ☐ NONE  ☐ CCCMS  ☐ EOP | TODAY'S DATE: 7/7/2008 |
|---|---|---|
| Treatment Setting: SVSP CTC-MHCB | ☒ MHCB  ☐ OTHER | NEXT UPDATE: q weekly |
| Age: 27    Race: Caucasian    Points: 139 | DDP = NCF | |
| Arrival Date This Treatment Setting: Admitted 7/3/2008 | Current Housing: ☐ RC ☐ GP ☒ CTC ☐ SNY | |
| From: A5-103  CCCMS  Dr. Sanders | ☐ ASU ☐ PSU ☐ SHU ☐ OTHER: | |
| Custody Level: IV / SNY | EPRD: 3/17/2036 | |

| Date Reviewed:    7/7/2008    Initials: | Date:    Initials: | Date:    Initials: |
|---|---|---|

**II. CLINICAL SUMMARY:** The inmate was sent back on 7/3/08 by Dr. Sanders after he was caught smoking cigarettes. After the officers did a cell search, they also found wine in his cell. He reportedly felt "the COs now are out to get me." He threatened to cut himself if sent back to A yard. Dr. Sanders attempted to work on coping strategies but he was not receptive. HE claimed to have heard "voices telling him to kill himself but this was thought to not be genuine as it was more self-serving and in the past his symptoms were questions by several providers. He also was not observed to have objective findings of psychotic disorders. His suicidal risk assessment indicated "conditional risk." He remained in safety cell for 48 hours and was finally able to go to regular cell.

**III. PROBLEM LIST:**

| Number | Problem | Intervention/Clinician | Goal Progress / Date |
|---|---|---|---|
| 1 | Instrumental Behaviors | CTC-MHCB staff | Set appropriate boundaries/Help inmate learn better coping |
| 2 | Threat to harm self | CTC-MHCB staff | Conditional in order to not be responsible for his disciplinary |
| 3 | Dysphoric Mood | CTC-MHCB staff | Reduce symptoms by next week |
| | | | |

**IV. PSYCHOTROPIC MEDICATION:**

| Number | Rx | Intervention/Clinician | Goal Progress / Date |
|---|---|---|---|
| 1 | Zydis 15 mg HS | CTC-MHCB Psychiatrist | Stabilize mood by next for possible discharge |
| 2 | Buspar 30 mg BID | CTC-MHCB Psychiatrist | Compliment antidepressant for dysphoric mood |
| 3 | Effexor XR 150 mg QAM | CTC-MHCB Psychiatrist | Stabilize mood by next week for possible discharge |
| 4 | Benadryl 50 mg PO QHS | CTC-MHCB Psychiatrist | Promote sleep-helpful |

**V. CURRENT RISK FACTORS/BEHAVIORAL ALERTS:** ☐ Suicidal    ☒ Self Injurious    ☐ Assaultive  ☐ Keyhea Date Expires:

See Form:  CTC record / UHR    Dated: multiple    For Detailed Description

Summary:  see CTC record / UHR

Last SRE date: 7/7/2008  Last SRE rating: low/conditional    History of Suicide Attempts: put rope around neck in 1991, took rat poisoning on 2/17/98, cutting self at age 17

**VI. RECOMMENDED HOUSING:**    ☐ Single Cell  ☐ Double Cell  ☒ No Recommendation

**VII. TRANSFER/DISCHARGE TO:**  ☐ Non-MHSDS  ☐ CCCMS  ☐ EOP  ☒ MHCB  ☐ APP  ☐ ICF  ☐ DTP  ☐ Parole

| INSTITUTION: SVSP | CLINICIAN: S. Kittimongcolporn, M.D. | Name (Last, First, MI), CDC Number, DOB |
|---|---|---|
| INMATE BED NUMBER:    MHCB - 5 | DATE: 7/7/2008 | BROWN, EDWARD |
| MENTAL HEALTH TREATMENT PLAN CDCR 7388 (Rev. 06/06) (Replaces MH2) Confidential Client/Patient Information Page 1 of 3 | | T60348 DOB 11/08/1980 |

STATE OF CALIFORNIA    DEPARTMENT OF CORRECTIONS AND REHABILITATION

☐ I/M REFUSES TO COMPLY WITH DOT MEDICATION ADMINISTRATION PROCEDURES ON THREE CONSECUTIVE DAYS

DISTRIBUTE TO 3

MEDICAL / PSYCHIATRIC
CIRCLE ONE

☐ I/M REFUSES TO COMPLY WITH NURSE ADMINISTERED PROCEDURES ON THREE CONSECUTIVE DAYS

DISTRIBUTE TO 3

MEDICAL / PSYCHIATRIC
CIRCLE ONE

MEDICAL / PSYCHIATRIC

☐ I/M SUSPECTED OF HOARDING/SELLING MEDICATION(S)

DISTRIBUTE TO 1-2-4

CIRCLE ONE

☒ I/M NO SHOWED/FAILED TO SHOW TO THE MEDICATION LINE ON THREE CONSECUTIVE DAYS   NEURONTIN

DISTRIBUTE TO 5

MEDICAL / PSYCHIATRIC
CIRCLE ONE

MEDICAL / PSYCHIATRIC

☐ I/M MISSED 50% OR MORE OF DOT/NAM IN A SEVEN (7) DAY PERIOD

DISTRIBUTE TO 3-5

CIRCLE ONE

MEDICAL / PSYCHIATRIC

☐ I/M REFUSED A DOSE OF INSULIN, TB, OR HIV MEDICATIONS

DISTRIBUTE TO 3-6

CIRCLE ONE

(AN URGENT REFERRAL WAS MADE TO THE PCP/POC/FATA/RN BY ☐ TELEPHONE ☐ IN PERSON

DISTRIBUTION: Original to I/M UHR

CC: 1 - HCM   2 - Chief Psychiatrist   3 - PCP/ Prescriber   4 - Facility Captain   5 - Medical / Mental Health Scheduler   6 - POC/PSYCH OC   7 - SMTA

DATE: 3/16/08     MCSP MEDICATION MANAGEMENT CHRONO     MEDICAL / DENTAL / PSYCHIATRIC

MCSP 650 (Rev. 06/06)

State of California     Department of Corrections          Salinas Valley State Prison          CCCMS:A Facility

CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES:          All Staff, Clinicians, Treatment Teams.

ID Information: Age: 29  Race: White  1st CDC Arrival: 2002  Points: 145  EPRD: 2036  DDP: NCF

| | |
|---|---|
| **Date:** 10/26/09 **Time:** 1730 | Sleep: 6-9 hour          Appetite: good          Energy Level: good |
| | Taking Medications: Yes   No  No Rx   Intermittent Compliance          Disciplinary Problems: Yes  No |
| | Medication Problem: Yes  No  Not getting   I/M requesting change   **Homicidal Ideation:** None noted or stated |
| **Location:** | S Issues Discussed: I/m seen due to Iims self referral for hearing voices and paranoia. Upon meeting z Iim, he appeared to be in no mental Health |
| **A Yard MH** | distress. I/m reported that he is not or in need of medication b/c |
| **Out of Cell** | the meds make him drowsy. I/m clenes SI/ or H/I @ this |
| **Refusal F/U** | time |
| **Cell Front** | Treatment Problem #1: NO MHR   Progress: _____ |
| | Treatment Problem #2:          Progress: _____ |

O Mental Status:

General Appearance: Neat + Clean, well groomed, clean clothes

Eye Contact: good/appropriate.

Speech: Clear, concise, no bizarre bx

Behavior: Calm + Cooperative - No evidence of internal preoccupation

Mood: calm, euthymic

Affect: congruent z mood, ont with Self-reported Sx's

ThoughtProcess/Content: no evidence of thought D/O

Delusions: None

Perceptual Disturbance: AH  VH  Other: No evidence of internal preoccupation, besides reported Sx's

Suicidal Ideation: Absent   Present No Plan   Current Plan   Recent Attempt   Denied History   History of Attempt

A Assessment: GAF-bbl.

GAF TABE = greater than 4.0 ☐ TABE = 4.0 or less and EC was established by having I/M summarize the content of this interview.

Dx: Ax\ D/O mixed z Disturbance of Emotions + Conduct          GAF: 65

P Plan: 1. F/U plan/rationale: SEE IN 90 DAYS OR PRN I/M REQUEST

E Education of Patient: Phod/on mangeing emotions + Anger

G. S. Goldstein, PsyD. Clinical Psychologist          Signature: _____

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE: | Last Name, First Name: Brown          House: |
|---|---|---|
| CDCR 7230-MH (rev. 06/06) | CCCMS | CDC #:          DOB: |
| Confidential Client/Patient Information See W & I Code, Section 5328 | | T60348 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**MENTAL HEALTH PLACEMENT CHRONO**

CDCR 128-MH3 (REV 12/08)

Inmate Name: Brown ___ ___ CDC Number: T60348 Institution: SVSP ___ Housing: ___ ___
(Last, First, Mi)

THIS INMATE HAS RECEIVED A MENTAL HEALTH EVALUATION WITH THE FOLLOWING RESULTS (check box(s) below):

    a)      **Does not** meet criteria for inclusion in the Mental Health Services Delivery System (MHSDS).

    b)   ☒ **Meets** inclusion criteria for the MHSDS. Check Level of Care (LOC) below.

             Qualifying mental disorder **or**

             ☒ Inclusion is for Medical Necessity (obtain Chief of Mental Health signature below.)

    c)      Currently included in the MHSDS. Check new or continuing LOC below.

LOC: ☒ Clinical Case Management (CCCMS) ☐ Enhanced Outpatient Program (EOP) ☐ Crisis Bed (MHCB)

Referral to DMH:     DTP     ICF     APP

Level of Functioning Assessment (GAF Score) ___ 60 ___     Psychotropic Medication Prescribed: Yes ☒ No ☐

Behavioral Alerts:

6. Goldstein PsyD

CLINICIAN'S NAME (Print)

CLINICIAN'S SIGNATURE

JUL 21 2009

CHIEF OF MENTAL HEALTH or DESIGNEE SIGNATURE

LEADER SIGNATURE

DATE

7/15/09

Pink - Correctional Counselor/C-File  Blue - Unit Health Record

**NAME and NUMBER**

$S U S F$

MCSP 542 (05-99)
CDC 128-C

Case Manager/Primary Clinician/designee has examined this Mental Health Crisis Bed (MHCB) discharge per the Mule Creek State Prison (MCSP) "Suicide Prevention Policy." Recommended custody:

☐ Discontinue rounds, no longer needed.

☐ Discontinue rounds, return to MHCB.

Orig:   C-File
cc:   Medical File
      Building Officer
      Inmate

Signature and Title

**DATE:**                  **SUICIDE PREVENTION RECOMMENDATION**              **MEDICAL-PSYCHIATRIC**

---

STATE OF CALIFORNIA
**MENTAL HEALTH REFERRAL CHRONO**
CDCR 128-MH5 (Rev. 06/06)

DEPARTMENT OF CORRECTIONS AND HABILITATION

Inmate Name: Brown                    CDC Number: T60348            Institution: SVSP          Housing: A1-112.4
(Last, First, MI)

☑ Routine      ☐ Urgent         ☐ Emergency (Contact Mental Health Services immediately)
☐ Non English Speaking Language: _____

REASON FOR REFERRAL: (Please check the primary- reasons and give an example or comment on the line below)
☐ A History of Psychiatric care needs re-assessment            ☐ Needs Psychotropic medication review

☐ Expresses suicidal ideation or recent attempts (Emergency)          ☐ Exhibits bizarre behavior (describe below)
☐ Incapable of caring for self / poor grooming                ☐ Poor appetite / sad / fearful / nervous
☐ Confused / disoriented / withdrawn                          ☐ Unpredictable / bothers others
☐ Hostile / assaultive / poor self control                    ☐ Hears things / sees things / imagines things
☐ Taken advantage of by other inmates                         ☐ Insomnia / sleeps too much
☐ Poor attention span / difficulty following directions
☐ Other (Describe:) _Requests N Hose of Effexor_

REFERRED BY (Print Name) _____     TITLE _PA_     PHONE / EXTENSION _____   TIME _____   DATE _7/25/08_
Received at Mental Health _Dr. Khan_     Date: _7/28/08_   Assigned to: _____

Distribution to Mental Health OT; → Clinician Assigned → MH OT → UHR

$S_2 - K - MD$
$7/28/08$

STATE OF CALIFORNIA
**SUICIDE RISK ASSESSMENT CHECKLIST**
CDCR 7447 (06/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## SUICIDE RISK ASSESSMENT CHECKLIST

FACILITY $SVSP$

**LOC:** ☐ None ☑ CCCMS ☐ EOP ☐ MHCB   **HOUSING:** ☐ RC ☑ GP ☐ CTC ☐ ASU ☐ PSU/SHU ☐ OTHER_____
Marital Status: S   Ethnicity: *Cauc*   Controlling Offense: *att murder*   Custody Level: *IV*   EPRD:_____

**Reason for Suicide Risk Evaluation (check one of the following):**

☐ To determine the need for referral to the crisis (MCHB) program          ☐ To formulate treatment planning

☑ To assist with the discharge planning from CCCMS, EOP, or MHCB          ☐ Other _____
program

**Sources of Information:**   ☐ C/O or Staff interview   ☐ I/M Interview   ☐ UHR   ☐ C-File

## USE THIS CHECKLIST AS A GUIDE FOR THE CLINICAL ASSESSMENT OF SUICIDE RISK:

**Static Risk Factors – (unchanging, historical):**

☑ Ethnicity: Caucasian / *Hispanic*          ☑ Suicide ideation/threats in past, Dates: *chronic*
☑ History of suicide attempt in CDCR          ☐ Previous suicide attempts (when and method): *several - non lethal*
☐ Sex Offender          ☐ Family history of suicide
☐ History of violence          ☑ History of mental illness, Axis 1 Hx: *Borderline PD.*
☑ History of substance abuse

**Slowly Changing Risk Factors – (long-term risk factors):**

| | | **Protective Factors:** (check all that apply) |
|---|---|---|
| ☐ First prison term | ☐ Known new court proceedings/disciplinary actions | |
| ☑ Long or life sentence, three strikes | ☐ Current Ad Seg, SHU, or PSU terms | |
| ☑ Hx of poor impulse control or poor coping skills | ☑ Level 4 custody score | ☑ Family Support |
| ☐ Early in prison term | ☐ Chronic, serious or terminal illness | ☐ Children at home |
| ☐ Protective custody | | ☐ Religious support |

**Dynamic Risk Factors – (short-term risk factors; continue to assess):**

| | | ☐ Spousal support |
|---|---|---|
| ☐ Suicide intent | ☐ Suicide plan | ☐ Supportive friends |
| ☐ Recent suicidal ideation, acute/chronic | ☐ Anniversary of important loss | ☐ Helping others |
| ☐ Recent release from psychiatric hospital | ☐ Recent rejection or loss | ☑ Insight into problem |
| ☐ Sudden calm following suicidal ideation/attempt | ☑ Single-cell placement | ☐ Realistic life plan |
| ☐ Anxious, agitated or fearful | ☐ Significant current impulsivity | ☑ Exercises regularly |
| ☐ Disturbance of mood (depression or mania) | ☐ Recent suicide attempt or self-injury | ☐ Group activities |
| ☐ Affective instability or lability | ☐ Well planned or highly lethal attempt / ideation | ☐ Job assignment |
| ☐ Current insomnia, poor appetite or anorexia | ☐ Hoarding or cheeking medication | ☐ Other: |
| ☐ Perceived lack of support system | ☐ Poor compliance with treatment or medication | |
| ☐ Hopelessness or helplessness | ☐ Recent trauma or threat to self-esteem | |
| ☐ Feelings of guilt or worthlessness | ☐ Recently assaultive or violent | |
| ☐ Fearful for safety | ☐ Pre-death behavior e.g. note, give things away | |

**Evaluation of Risk Based on Above Factors, Interview of Inmate and other information:**
Summarize: *Pt denies S/I at present/ Review of UHR shows no lethal suicide attempts,*
*few gestures but must threatening. Mood is better - pt wants to call his mother. Agree with Dr*

☐ No Apparent Significant Risk   ☑ Low Risk   ☐ Moderate Risk   ☐ High Risk   ☐ Conditional Risk

**Recommendation / Plan (check all that apply):**

☐ No referral needed          ☑ Discharge to lower level of care          ☐ DMH referral
☐ Referral to Primary Clinician/Case manager          ☐ Crisis bed placement on suicide precaution          ☐ IDTT/TX plan to address risk factors
☑ Referral to Psychiatrist for medication review          ☐ Crisis bed placement on suicide watch          ☐ Suicide watch
          ☐ OHU placement          ☐ Suicide precautions

See Additional Comments: (on Form_____) Dated (required)_____

Clinician name/Title: *Weinstein*   Signature: _____ Date· 7/16/08   Time: 1045

*Psychiatry*
MENTAL HEALTH          Last Name:   First Name:   MI:
**SUICIDE RISK ASSESSMENT CHECKLIST**          *Brown*   *Edward*
CDCR XXXX (06/06)          CDC# *T60848*   DOB 11/8/1980
Confidential Inmate/Patient Information

STATE OF CALIFORNIA
**MENTAL HEALTH PLACEMENT CHRONO**
CDCR 128-MH3 (Rev. 06/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Inmate Name: _Brown, Edward_ _____ CDC Number: _T60348_ ___ Institution: _SVSP_ _____ Housing: _____
(Last, First, MI)

**THIS INMATE HAS RECEIVED A MENTAL HEALTH EVALUATION WITH THE FOLLOWING RESULTS** (check box(s) below):
a) ☐ **Does not** meet criteria for inclusion in the Mental Health Services Delivery System (MHSDS).
b) ☒ **Meets** inclusion criteria for the MHSDS.  Check Level of Care (LOC) below.
   ☐ Qualifying mental disorder **or**
   ☒ Inclusion is for Medical Necessity (obtain Chief of Mental Health signature below.)
c) ☒ **Currently** included in the MHSDS.  Check new or continuing LOC below.

**LOC:** ☒ Clinical Case Management (CCCMS)  ☐ Enhanced Outpatient Program (EOP)  ☐ Crisis Bed (MHCB)
Referral to DMH:  ☐ DTP   ☐ ICF   ☐ APP
Level of Functioning Assessment (GAF Score): _____          Psychotropic Medication Prescribed: Yes ☒  No ☐
Behavioral Alerts:
_____
CLINICAIN NAME (Print)                CLINICIAN SIGNATURE          CHIEF OF MENTAL HEALTH or DESIGNEE SIGNATURE

_____                                        _____
IDTT LEADER SIGNATURE                                                           DATE
                                                                                7/23/08

DISTRIBUTION. Pink - Central File; Blue - Unit Health Record; White - MH File, Inmate

---

STATE OF CALIFORNIA
**MENTAL HEALTH PLACEMENT CHRONO**
CDCR 128-MH3 (Rev. 06/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Inmate Name: _Brown, Edward_ _____ CDC Number: _T60348_  Institution: SVSP   Housing: _A5720_
(Last, First, MI)

**THIS INMATE HAS RECEIVED A MENTAL HEALTH EVALUATION WITH THE FOLLOWING RESULTS** (check box(s) below):
a) ☐ **Does not** meet criteria for inclusion in the Mental Health Services Delivery System (MHSDS).
b) ☐ **Meets** inclusion criteria for the MHSDS. Check Level of Care (LOC) below.
   ☐ Qualifying mental disorder or
   ☐ Inclusion is for Medical Necessity (obtain Chief of Mental Health signature below.)
c) ☒ **Currently** included in the MHSDS. Check new or continuing LOC below.
**LOC:** ☒ Clinical Case Management (CCCMS)   ☐ Enhanced Outpatient Program (EOP)   ☐ Crisis Bed (MHCB)   ☐ DMH-CMF
Referral to DMH: ☐ DTP ☐ ICF ☐ APP
Level of Functioning Assessment (GAF Score): _55_          Psychotropic Medication Prescribed: Yes ☒ No ☐

Behavioral Alerts: _____

_O. Glover, Ph.D._____    _____    by Kith         _____      7/4/08
CLINICIAN NAME (Print)    CLINICIAN SIGNATURE    IDTT LEADER SIGNATURE    CHIEF OF MENTAL HEALTH or DESIGNEE SIGNATURE    DATE

DISTRIBUTION: Pink - Central File, Blue - Unit Health Record; White - MH File, Inmate

11/08/80

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**SUICIDE RISK ASSESSMENT CHECKLIST**
CDCR 7447 (06/06)

## SUICIDE RISK ASSESSMENT CHECKLIST

**FACILITY** SVSP

**LOC:** ☐ None ☒ CCCMS ☐ EOP ☐ MHCB    **HOUSING:** ☐ RC ☐ GP ☐ CTC ☐ ASU ☐ PSU/SHU ☒ OTHER SVY
Marital Status: _____ Ethnicity: Other   Controlling Offense: Attemp Wd Murder Custody Level: 4    EPRD: 2036

**Reason for Suicide Risk Evaluation (check one of the following):**

☒ To determine the need for referral to the crisis (MCHB) program          ☐ To formulate treatment planning

☐ To assist with the discharge planning from CCCMS, EOP, or MHCB           ☐ Other _____
  program

**Sources of Information:** ☒ C/O or Staff Interview    ☒ I/M Interview    ☐ UHR              ☐ C-File
USE THIS CHECKLIST AS A GUIDE FOR THE CLINICAL ASSESSMENT OF SUICIDE RISK:

**Static Risk Factors – (unchanging, historical):**

☐ Ethnicity: Caucasian                        ☒ Suicide ideation/threats in past, Dates: _____
☒ History of suicide attempt in CDCR          ☒ Previous suicide attempts (when and method): age 11  17 - cut   19 - Death
☐ Sex Offender                                ☐ Family history of suicide                          by cop
☒ History of violence                         ☒ History of mental illness, Axis 1 Hx: _____
☒ History of substance abuse

**Slowly Changing Risk Factors – (long-term risk factors):**

☒ First prison term                           ☐ Known new court proceedings/disciplinary actions
☐ Long or life sentence, three strikes        ☐ Current Ad Seg, SHU, or PSU terms                  **Protective Factors:**
☐ Hx of poor impulse control or poor coping skills  ☒ Level 4 custody score                        (check all that apply)
☐ Early in prison term                        ☐ Chronic, serious or terminal illness
☐ Protective custody                                                                               ☒ Family Support
                                                                                                   ☐ Children at home
**Dynamic Risk Factors – (short-term risk factors; continue to assess):**                          ☐ Religious support
☐ Suicide intent                              ☐ Suicide plan                                       ☐ Spousal support
☐ Recent suicidal ideation, acute/chronic     ☐ Anniversary of important loss                      ☐ Supportive friends
☐ Recent release from psychiatric hospital    ☐ Recent rejection or loss                           ☐ Helping others
☐ Sudden calm following suicidal ideation/attempt  ☐ Single-cell placement                        ☐ Insight into problem
☒ Anxious, agitated or fearful                ☒ Significant current impulsivity                    ☐ Realistic life plan
☐ Disturbance of mood (depression or mania)   ☐ Recent suicide attempt or self-injury              ☒ Exercises regularly
☐ Affective instability or lability           ☐ Well planned or highly lethal attempt / ideation   ☐ Group activities
☐ Current insomnia, poor appetite or anorexia ☐ Hoarding or cheeking medication                    ☐ Job assignment
☐ Perceived lack of support system            ☐ Poor compliance with treatment or medication       ☐ Other:
☐ Hopelessness or helplessness                ☐ Recent trauma or threat to self-esteem
☐ Feelings of guilt or worthlessness          ☐ Recently assaultive or violent
☒ Fearful for safety                          ☐ Pre-death behavior e.g. note, give things away

**Evaluation of Risk Based on Above Factors, Interview of Inmate and other information:**
Summarize: "If I go back to my cell I'm going to cut myself."

☐ No Apparent Significant Risk    ☐ Low Risk    ☐ Moderate Risk    ☐ High Risk    ☒ Conditional Risk
**Recommendation / Plan (check all that apply):**
☐ No referral needed                    ☐ Discharge to lower level of care            ☐ DMH referral
☐ Referral to Primary Clinician/Case manager  ☐ Crisis bed placement on suicide precaution  ☐ IDTT/TX plan to address risk factors
☐ Referral to Psychiatrist for medication review  ☐ Crisis bed placement on suicide watch   ☐ Suicide watch
                                        ☐ OHU placement                              ☐ Suicide precautions

See Additional Comments: (on Form _____) Dated (required) _____

Clinician name/Title: Sanders PhD    Signature: _____    Date: 7/3/08    Time: 1510

**MENTAL HEALTH**
**SUICIDE RISK ASSESSMENT CHECKLIST**     Last Name: Brown     First Name: Edward    MI:
**CDCR XXXX (06/06)**
Confidential Inmate/Patient Information    CDC# T60348    DOB ___ / ___ / ___

RECEIVED JUL 0 9 2008

STATE OF CALIFORNIA
CDCR 128-MH7 (04/07)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

ADMINISTRATIVE SEGREGATION (ASU) UNIT PRE-PLACEMENT CHRONO

| Inmate Name: Brown, Edward | Inmate CDC Number: T60348 |
|---|---|

CURRENT MENTAL HEALTH LEVEL OF CARE:  ☐ EOP      ☐ CCCMS      ☐ GP

ASK THE INMATE-PATIENT THE FOLLOWING QUESTIONS:

1.  Have things reached the point that you've had thoughts of harming yourself?

☑ YES – Suicide Risk Assessment REQUIRED   Refer for EMERGENT (immediate) mental health evaluation   Inmate cannot be placed in ASU until mental health evaluation is completed

☐ NO

☐ REFUSAL OR INAPPROPRIATE ANSWER – Refer for EMERGENT mental health evaluation

2.  Have you ever tried to kill yourself because you were placed into Administrative Segregation?

☐ If YES – Refer for EMERGENT (immediate) mental health evaluation

☒ NO

☐ REFUSAL OR INAPPROPRIATE ANSWER – Refer for URGENT (24 hour) mental health evaluation

3.  Have you been told that others may be harmed if you don't kill yourself?

☒ If YES, ask:

Are you concerned about your safety, or the safety of others, in the next 24 hours?      ☒ YES      ☐ NO

If YES, refer for EMERGENT (immediate) mental health evaluation
If NO, refer for URGENT (24 hour) mental health evaluation

☐ NO

☐ REFUSAL OR INAPPROPRIATE ANSWER – Refer for EMERGENT mental health evaluation.

4.  Is the inmate:

| | | YES | NO |
|---|---|---|---|
| a. | Speaking incoherently? | ☐ YES | ☒ NO |
| b. | Expressing bizarre thoughts? | ☐ YES | ☒ NO |
| c. | Unable to sit still or pay attention? | ☐ YES | ☒ NO |
| d. | Disoriented to time, place or person? | ☐ YES | ☒ NO |

If YES to any of the above questions, refer for EMERGENT (immediate) mental health evaluation.

5.  Does the inmate-patient appear to be hearing voices or seeing things that aren't really there?
☐ YES      If YES, refer for EMERGENT (immediate) mental health evaluation
☐ NO

IF ALL ANSWERS ARE "NO," A MENTAL HEALTH REFERRAL IS NOT NEEDED BEFORE PLACEMENT IN ASU.

| Form Completed By: Print Name. Gutman | Signature: Kaufman RN | Date 7/3/08 |
|---|---|---|

**RECEIVED JUL 0 9 2008**

*COPY INFORMATION ONTO PAGE 1 AFTER MENTAL HEALTH EVALUATION IS COMPLETE*

| Institution: **SVSP** | Clinician: Sanders | Date: 5/30/08 |

**I. PATIENT INFORMATION / PRESENTING PROBLEM / SUMMARY OF EVALUATION**

**A. Identifying Information:**

| Age: 27 | Race: Other | Non-English Lang. | Lvl of Cooperation: Coop |
| Points: 39 | 1st CDC Arrival: 2002 | EPRD: 2033 | DDP: |

Current Level of Care: ☐ NONE ☒ CCCMS ☐ EOP ☐ MHCB ☐ OTHER

Custody Level: I/ II / III ⦵ IV / AdSeg / SHU

Controlling Offense: Attempted Murder, Kidnapping, Carjacking

Current Housing: ☐ RC ☐ GP ☐ CTC ☐ ASU ☐ PSU ☐ SHU ☒ OTHER SNY
Inmate Bed Number:

Data Source(s)for this Evaluation: ☒ Interview ☐ C-File ☒ UHR ☐ Other

Consent for Release of Information on File: Yes ☐ No ☒ Records Requested Date: _____ Records obtained from:

**B. Reason for Evaluation:**

☒ New Arrival from Mule Creek ☐ Level of Care Change from: ☐ Returnee from:

☐ Staff Referral ☐ Patient Self Referral ☒ No Current Intake on File ☐ Automatic referral (currently CCCMS)

**C. Current Diagnosis**

Axis I:

Axis II:

Axis III: **See UHR**

Axis IV: **Incarceration**

Axis V: Current GAF: _____ AIMS Score: **Deferred to Psychiatry** ☐ Keyhea Keyhea Expires: _____

**D. Behavioral Alert:** ☐ Suicidal ☐ Self Injurious ☐ Assaultive ☐ Gravely Disabled ☐ Other Relevant Information:

☐ None evidenced at time of evaluation: see sections E & F for history of violence and criminality and section N for history of Danger to Self and Others.

**E. Psychiatric Medications:**

Allergies: **See UHR**

**F. Clinical Summary and Recommendation:**

Mother & depression

UHR suggests possible Malingering

Reports Hx of hallucinations & thought disturb.

ideation relating to telepathy

Displays more & s+

H+ of Alistral Nsp + THC Abuse

Begining @ age 9

than negative

3 suicide attempt - age 11, 17, 19 - Hanging, Cutting, Death by pills

Recent CTC admission

| **G. New Level of Care:** ☐ CCCMS ☐ EOP ☐ MHCB DMH: ☐ APP ☐ ICF ☐ DTP |

**H. Parole Date:** See EPRD above

| **I. Evaluation Follow Up Time Frame:** 90 days | **Medication Follow-up Time Frame:** Deferred to Psychiatry |

MENTAL HEALTH EVALUATION
CDCR 7386 (Rev. 06/06)
Confidential Client/Patient Information
Page 1 of 14

Name:
Brown Edward

T60348    11/8/80

State of California    Department of Corrections and Rehabilitation

Institution: **SVSP**        Clinician: Sanders        Date: 5/30/08

**II. DEVELOPMENTAL AND SOCIAL HISTORY**

**A. Relevant Family Information:**   Maintains contact with:
Contact maintained by:   ☒ Writing   ☒ Telephone   ☒ Visits

This inmate was raised by: ☒ Intact family  ☐ Multiple family caretakers  ☐ Foster care since age:        ☐ Other:

Family problems described include:  ☐ Mental Health  ☒ Substance Abuse  ☒ Criminal  ☐ Other:
father

☐ Childhood Abuse/Trauma:   until age 10 → Divorce.

☐ No report filed – perpetrator deceased

☐ No report filed due to insufficient information

☐ No report filed due to report being previously filed

☐ Child Protective Services or other appropriate agency notified by this clinician

☒ Denied, no evidence or report of childhood abuse / trauma

**B. Education:**   ☐ Standard   ☒ Behavior Problems   ☒ Special Education/Learning Disability   ☐ Developmental Disability
Highest Grade Completed:        Additional Information:   In Grade school
9th

**C. Marital:**   ⓢ M / D / W   3 months

Number of Marriages:  1     Longest Marriage: 3 years   ☐ Children: O   F   M   Maintains Contact? ∅
Annulled ann ⊖

Other relevant relationship information:

**D. Work History:**   ☐ None   ☒ Some   ☐ Erratic   ☐ Extensive

Income Source:   ☐ Work   ☐ Disability   ☐ SSI   ☐ Homeless   ☐ Veteran   ☐ Family

Occupation(s): helped his uncle a his construction business; Also worked at a Pet Store + Pizza Parlor briefly.

Longest Period of Employment:

**E. Criminal History:**   No Priors   Juvenile History   Gang Affiliation   Adult Arrests/Convictions

Theft 1999                          ⊕ Arson as a Juvenile
Stole a bottle of liquor           ⊕ Animal torture
                                   ⊕ Vandalism

**F. History of Violence:** ☐ None found   ☐ Criminal history   ☒ Commitment Offense

☒ Violence related RVRs: Mutual Combat 4/16/08        ☐ SHU Term:

**G. Adjustment to Incarceration:** ☐ Adequate, participates in available programs and avoids disciplinary action

☒ Problematic because: Reputation attention level as ↓ b/c he is not on meds a this time.

MENTAL HEALTH EVALUATION
CDCR 7386 (Rev. 06/06)
Confidential Client/Patient Information
Page 1 of 14

Name:
Brown Edward.

T60348   11/8/80

State of California   Department of Corrections and Rehabilitation

Institution: **SVSP**     Clinician: _Sandrz_     Date: _5/30/08_

**III. MENTAL STATUS EXAMINATION:** ☐ See CDCR 7388-MH, dated: _/     /_

*A. Appearance:* (WN) Poorly Groomed Odor Apparent Disheveled Bizarre Effeminate

*B. Behavior:* Cooperative Evasive Guarded Menacing Withdrawn Enraged Restless Agitated Argumentative Passive Resistant

*C. Eye Contact:* Appropriate Averts gaze Minimal None Glaring/Intense

*D. Speech:* (WN) Excessive Incoherent Mute Rapid Slow Stammer Slurred Disorganized Poverty

*E. Affect:* Appropriate Inappropriate Flat Blunted Constricted Labile Sad Angry Anxious Elated

*F. Mood:* Euthymic Dysphoric Irritable Anxious Angry Elevated Expansive Stated: _"off...m"_

*G. Sleep:* Good Fair Poor     *Appetite:* Good Fair Poor

*H. Thought Processes:* (WNL) Circumstantial Tangential Flight of Ideas Disorganized Slowed Blocking Loosening

*I. Thought Content:* (WNL) Compulsions Obsessions Ruminations Phobias Anxieties Distortions Exaggerations

*J. Delusions:* Absent Withdrawal Insertion Outside Control Paranoid Grandiose Erotic Religious

*K. Perceptual Disturbance:* Denied (AH) (VH) Other_____   '

*L. Cognition/Sensorium:*                                                  Sunrise = east

Fund of Information ☐ WNL ☐ HS Diploma / ☐ GED / ☐ College / ☐ Other Days in a year = 365

Intellectual Functioning ☒ WNL     9th + Spec. Ed.     Abraham - Concrete.

Concentration ☐ WNL }DCRaw     Grace always seems greener...

Attention ☐ WNL }

Memory ☒ WNL 3 Pres     " The guy on the other side likes green grass. Or does it mean ' Hindsight

Orientation: ☒ WNL     JS 20/20 ? "

*M. Insight and Judgment:* ☒ Intact ☐ Limited ☐ Impaired

*N. Danger to Self or Others:*     Envelope / Letter on ground → "Mail it."

Homicidal Ideation: ☒ None noted or stated     ☐ Present:

Suicidal Ideation: ☐ Absent ☒ Present No Plan ☐ Current Plan ☐ Recent Attempt ☐ Denied History ☐ History of Attempt

History of Attempt: Timeframe: _Age 11, 17, 19_     Methods: _Hanging, Poison, Death by Police_

For additional information regarding history, risk factors and protective factors, see baseline SRE
dated: _5 / 30 / 08_

Rating of baseline SRE: _Low_

*O. Inmate Strengths:*

---

MENTAL HEALTH EVALUATION
CDCR 7386 (Rev. 06/06)
Confidential Client/Patient Information
Page 1 of 14

State of California     Department of Corrections and Rehabilitation

Name:

Brown Edward

T60348     11/8/80.

Institution: **SVSP**   Clinician: _____   Date: 5/30/08

**IV. SUMMARY:** List DSM Criteria That Justify the Diagnosis.

List Differential Diagnoses and Rationale.

Based on reported symptoms, historical factors and a review of the UHR, this inmate:

☐ Does not appear to have an Axis I or Axis II diagnosis.

☒ Appears to have Axis I diagnosis(es) of _Alcohl_ _____ Abuse, as exemplified by recurrent use of

this/these substances resulting in impairment of social/occupational functioning, legal problems, and dangerous bx without

meeting the criteria for substance dependence. IM is currently _____ _In_ remission.

☒ Appears to have Axis I diagnosis(es) of _Cannabis_ _____ Dependence, manifesting the same symptoms

As substance abuse, with the addition of increased physical tolerance for the effects of the substance(s) and symptoms of with-

drawl in its absence. IM is currently ____ _Institutional_ ____ remission.

☐ Appears to have an Axis I diagnosis of Depressive Disorder NOS, due to the presence of depressive symptoms persistent

beyond the time frame of an adjustment disorder, but which are not severe enough to meet the criteria for a major depression.

☐ Appears to have an Axis I diagnosis of Mood Disorder NOS, due to the presence of both depressive and agitated, manic-like

symptoms which do not meet the criteria for any specific mood disorder.

☒ Appears to have an Axis I diagnosis of _Psychiatric D/O NOS_ , as exemplified by: _AH/VH, Thought_

_Mar dm_

☒ Appears to have an Axis II diagnosis of Antisocial Personality Disorder, as exemplified by a pervasive pattern of violation of

the rights of others since adolescence, including behaviors such as repeated violations of the law; deceitfulness, lying or

manipulation; impulsivity; irritability and aggressiveness; irresponsibility in work or financial obligations; lack of remorse.

☐ Appears to have an Axis II diagnosis of Borderline Personality Disorder, as exemplified by a pervasive pattern of instability

Of interpersonal relationships, self-image and affect, and marked impulsivity since early adulthood, including frantic efforts to

avoid abandonment; recurrent suicidal gestures or threats; chronic feelings of emptiness; intense anger; stress related paranoia.

☐ Appears to have an Axis II diagnosis of Personality Disorder NOS with the following traits:

☐ Appears to have an Axis II diagnosis of _____ , as exemplified by:

MENTAL HEALTH EVALUATION
CDCR 7386 (Rev. 06/06)
Confidential Client/Patient Information
Page 1 of 14

State of California  Department of Corrections and Rehabilitation

Name: Brown Edward   T60348  11/8/80

State of California                                          Department of Corrections and Rehabilitation
INFORMED CONSENT FOR MENTAL HEALTH CARE
CDCR 7448 (06/06)

## INFORMED CONSENT FOR MENTAL HEALTH CARE

## Limits of Confidentiality and Record Keeping for Mental Health Services

- I understand that my mental health treatment is confidential and mental health staff will not disclose information about my treatment to anyone who is not involved in the mental health program without my permission, unless one of the following exceptions exist:
- Any proceeding where I raise the issue of my mental or emotional condition.
- If I enlist the services of a mental health professional to aid in the commission of a crime or tort or to escape detection after the commission of a crime or tort.
- If my clinician has reason to believe that I have been involved in, or have knowledge of neglect, physical, emotional, or sexual abuse of a child. This includes abuse perpetrated against me as a child, if the abuser may still have access to children and the abuse was not previously reported.
- **If my clinician has reason to believe that I have been involved in, or have knowledge of financial exploitation, neglect, physical, emotional, or sexual abuse of an elder or dependent adult.**
- When the clinician believes my mental or emotional condition may cause me to be: (a) unable to adequately care for myself; (b) a danger to myself, or (c) a danger to others, and the clinician believes that disclosure is necessary in order to prevent any of the above (such as threats to harm myself or threats to harm others).
- In this setting, it may be necessary for my clinician to disclose confidential information in order to ensure the security of the institution and the safety of the staff, other inmates and the public, and my health and safety (e.g., to prevent escape, to prevent riots or assaults, to prevent the admittance of contraband, in the case of over familiarity or romantic relationships with staff, indecent exposure, or in the case of sexual assault regardless of whether I am the perpetrator or the victim).
- In this setting, information from my Unit Health Record may be used to complete required evaluations, including, but not limited to the Board of Prison Terms Reports, Mentally Disordered Offender evaluations, Sexually Violent Predator evaluations, and evaluations for involuntary medications (Keyhea). In these cases, information from my Unit Health Record may be made available to the courts and to mental health professionals outside of the California Department of Corrections and Rehabilitation.
- I understand that while I am under the supervision of the California Department of Corrections and Rehabilitation, the Mental Health Treatment Team may include correctional counselors, parole officers, and other correctional staff.
- I understand that my treatment will be documented in my Unit Health Record and placement chronos will be placed in my Central File.
- I understand that the Unit Health Record is confidential and can only be read by staff authorized to view it which includes mental health, medical, and dental staff members.
- I understand that my Unit Health Record is confidential and information in the record cannot be released to anyone outside the California Department of Corrections and Rehabilitation without my written consent, except as noted above
  I have read and/or discussed and understand the above statements about confidentiality and record keeping and I have been given the opportunity to ask questions about it.

*Edward Brown T-60348*          **5-30-08**
Inmate's Signature/CDCR Number                                    Date

{ ✗ } I have discussed with the inmate the information on this form regarding confidentiality and record keeping for psychological services. It is my opinion he has the capacity to understand this information.

{ } I have discussed with the inmate the information on this form regarding confidentiality and record keeping for psychological services. It is my opinion that he lacks the capacity to understand based on the following evidence:

Clinician's Name/Signature
*Sanders PhD*

Date
5/30/08

*Brown
T60348*

**MENTAL HEALTH TREATMENT ~ ~N**

| ☒ Initial | ☐ Update | ☐ BiWeekly MHCB Review | ☐ Quarterly Review | ☐ Annual Review |
|---|---|---|---|---|

| **I. General Information** | Current Level of Care: ☐ NONE ☒ CCCMS ☐ EOP | TOD'YS DATE |
|---|---|---|

Age 27  race Other   1st SDC arrival   doo 2

Current Level of Care: ☐ NONE ☒ CCCMS ☐ EOP   ☐ MHCB ☐ OTHER

Custody Level: I/ II / III / **IV** / AdSeg / SHU   6/25/08

Points 39   EBL 2033   DDP

Current Housing: ☐ RC ☐ GP ☐ CTC
☐ ASU ☐ PSU ☐ SHU ☒ SNY   NEX: u. 'ATE

Controlling Offense
Attempted Murder, Kidnapping, Carjacking   Inmate Bed Number:   6/25/09

Arrival Date This Treatment Setting: **Unknown**   From:

| Date Reviewed: | Initials: | Date: | Initials | Date: | Initials: |
|---|---|---|---|---|---|

**II. CLINICAL SUMMARY:**   For historical information, see form:   dated:

Summary of progress since last treatment plan dated: *New Arrival*

Presented t hx of hellucinations + demanding single cell. VHR reflects possible Malingering (epp Note dated 4/24/08)   Single Celled - feels Safer.   3 Part Suicide attempts - last @ age 19

History of past diagnoses based on UHR review:

Additional relevant information:

**III. PROBLEM LIST**

| Number | Problem | Intervention/goals/Clinician | Progress/Date |
|---|---|---|---|
| 1 | Hellucinatus ? | See attached | |
| 2 | Drugs | | |
| | | | |
| | | | |

**IV. PSYCHOTROPIC MEDICATION : See UHR**

**V. CURRENT RISK FACTORS/BEHAVIORAL ALERTS:**   ☐ Suicidal ☐ Self Injurious ☐ Assaultive   ☐ Keyhea Date Expires·

| See Form: | Dated: | Summary: |
|---|---|---|

**VI. RECOMMENDED HOUSING:**   **Deferred to Custody**

**VII. TRANSFER/DISCHARGE TO:** ☐ Non-MHSDS ☐ CCCMS ☐ EOP ☐ MHCB ☐ APP ☐ ICF ☐ DTP ☐ Parole

Institution: **SVSP**   Clinician: **C. Sanders, Ph.D.**   Date: 6/25/08

MENTAL HEALTH TREATMENT PLAN
CDCR 7388 (Rev. 06/06)
Confidential Client/Patient Information
Page 1 of 6

| | Last Name: | First Name: |
|---|---|---|
| | Brown | Edward |
| | CDC #: T60348 | DOB: 11/8/80 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Institution: SVSP      Clinician: C. Sanders, Ph.D.                Date: 6/28/08

## VIII. Mental Status Examination

**A. Appearance:** WNL  Poorly Groomed  Odor Apparent  Disheveled  Bizarre  Effeminate

**B. Behavior:** Cooperative  Evasive  Guarded  Menacing  Withdrawn  Enraged  Restless  Agitated  Argumentative  Passive  Resistant

**C. Eye Contact:** Appropriate  Averts gaze  Minimal  None  Glaring/Intense

**D. Speech:** WNL  Excessive  Incoherent  Mute  Rapid  Slow  Stammer  Slurred  Disorganized  Poverty

**E. Affect:** Appropriate  Inappropriate  Flat  Blunted  Constricted  Labile  Sad  Angry  Anxious  Elated

**F. Mood:** Euthymic  Dysphoric  Irritable  Anxious  Angry  Elevated  Expansive        Stated:

**G. Sleep:**    Good  Fair  Poor                    **Appetite:**    Good  Fair  Poor

**H. Thought Processes:** WNL  Circumstantial  Tangential  Flight of Ideas  Disorganized  Slowed  Blocking  Loosening

**I. Thought Content:** WNL  Compulsions  Obsessions  Ruminations  Phobias  Anxieties  Distortions  Exaggerations

**J. Delusions:** Absent  Withdrawal  Insertion  Outside Control  Paranoid  Grandiose  Erotic  Religious

**K. Perceptual Disturbance:** Denied  AH  VH  Other_____

**L. Cognition/Sensorium:**

| | | |
|---|---|---|
| Fund of Information | ☐ WNL | HS Diploma  /  GED  /  College  /  ☐ Other |
| Intellectual Functioning | ☒ WNL | 9th |
| Concentration | ☒ WNL | |
| Attention | ☒ WNL | |
| Memory | ☒ WNL | |
| Orientation: | ☒ WNL | |

**M. Insight and Judgment:** Intact  Limited  Impaired

**N. Danger to Self or Others:**

Homicidal Ideation: None noted or stated      Present:

Suicidal Ideation:  Absent    Present No Plan    Current Plan    Recent Attempt    Denied History    History of Attempt

History of Attempt: Timeframe: Age 11, 17, 19      Methods: Hanging, Poison, Death by Police

Date of last baseline SRE:                    Rating of last baseline SRE:

MENTAL HEALTH TREATMENT PLAN
CDCR 7388 (Rev. 06/06)
Confidential Client/Patient Information
Page 3 of 6

Last Name:          First Name:

Brown              E.

CDC #:              DOB:

T60348             11/8/80

MENTAL HEALTH TREATMENT PLAN

**IX. CURRENT DSM DIAGNOSIS**

| Axis I. | 298.9 | Psychotic D/o NOS |
| | 304.30 | Cannabis Dependence In Remission |
| | 305.00 | Alcohol Abuse - I R |
| | | R/O Malingering |
| Axis II. | 301.7 | ASP D |
| Axis III. | Multiple Head Injuries | |
| Axis IV. | Incarceration | |

Axis V.  GAF= 65  **Specify Functional Impairment:**  NONE   1 = Mild   2 = Moderate   3 = Severe
Work/School   ADL   Medical   Interpersonal   Behavior   Psychological

| X. Treatment Team Members | Name/Title (Please Print) | Signature |
|---|---|---|
| IDTT Leader | C. Sanders, Ph.D. | |
| Case Manager/Primary Clinician | C. Sanders, Ph.D. | |
| Psychiatrist | A.S. Abrams, MD | Ad Abrams MD |
| Correctional Counselor | | |
| Other | | |

| XI. Interventions: | Frequency and Duration | Additional Information |
|---|---|---|
| Evaluation by Staff Psychiatrist | Quarterly   PRN | |
| Case/IDTT Review | Annual   PRN | |
| Psychological Follow-up | Quarterly   PRN | |
| Group: Recommended / Not | Prior to end of treatment year | I/m Declient |
| Self-help Groups: Recommended / Not | See Distance Learning Schedule | |
| Work: Recommended / Not | Determined by supervisory staff | Job name: |
| Education: Recommended / Not | Determined by educational staff | HS / GED / College |
| AA/NA Groups: Recommended / Not | As available | Drug(s) of choice: Etoh THC |
| Other: | | |

Institution: **SVSP**   Clinician: C. Sanders, Ph.D.   Date:

MENTAL HEALTH TREATMENT PLAN
CDCR 7388 (Rev. 06/06)
Confidential Client/Patient Information
Page 5 of 6

Last Name: Brown   First Name: F.

CDC #: T60348   DOB 11/8/80

| TREATMENT PLAN PART . WO: PROBLEM → # | | | Today Date: 6/25/ 08 Add a Page | |
|---|---|---|---|---|
| ☐Initial Treatment Plan    ☐Update because | | | ☐Re-justify, | weeks |

| Prob. | Describe Problem: Hallucinations | | Possible Completion Date: Next Review Date: 6/25/09 | |
|---|---|---|---|---|
| | **Target Behavior(s):**<br>1. I/M reports experiencing internal sensory stimulation.<br>2. I/M reports experiencing strong emotional arousal in response to hallucinations<br>3. I/M describes a pattern maladaptive behavioral responses to hallucinations | | | |
| | **Treatment Goals:**<br>1. I/M indicates willingness to accept life-long need for psychotropic medications.<br>2. I/M describes incidents indicating development of hallucination distraction techniques.<br>3. I/M demonstrates use of stress management skills to decrease hallucinatory episodes.<br>4. I/M verbalizes insight into psychological dynamics of hallucinations.<br>5. I/M reports decreased frequency, intensity and duration of hallucinatory phenomena.<br>6. I/M will experience increase in reality contact. | | | |

| Date | Interventions: | Frequency and Duration. | Goal |
|---|---|---|---|
| 9/25 | **Psychiatry**<br>1. Provide inmate psychopharmacology services.<br>2. Monitor inmate's psychopharmacology experience for therapeutic and adverse effects.<br>3. Educate inmate in the role of psychopharmacology in the treatment of their severe and persistent mental illness.<br>4. Consultation and training with the inmate's case manager. | At least once per month.<br><br>Every 90 days or prn. | |
| | **Case Management**<br>1. Teach I/M hallucination distraction techniques.<br>2. Teach I/M stress management techniques.<br>3. Help I/M understand and resolve psychodynamics expressed in hallucinations.<br>4. Help I/M increase periods of reality contact. | Out of cell CM contact at least once per week.<br><br>Every 90 days or prn. | I/M will attend >80% of his scheduled CM interviews. |
| √ | **Group Therapy** | 8 offered weekly group sessions.<br><br>Not applicable in this setting. | I/M will attend >80% of his scheduled therapeutic activities. |

| Date | Progress Toward Therapeutic Objectives Since Last IDTT |
|---|---|
| 6/25 | New PL |

| MENTAL HEALTH TREATMENT PLANS, UPDATES, REJUSTIFICATION MH-2 [26 March 2001] Part One: General, Team, MSE Diagnosis, Problems, Inmate Strengths Part Two: Problem Pages -- Results Use Insert-a-Page of MH 1 Confidential Client/Patient Information-- See W & I Code, Section 5328. | LEVEL OF CARE CCCMS | Last Name, First Name: Brown CDC #: T60348 |
|---|---|---|

State of California, Departm    f Corrections: N / C / S Region, Service /    = F, Institution SVSP

| TREATMENT PLAN PART TWO: PROBLEM → # | | Today Date: 2/95/ of | Add a Page |
| --- | --- | --- | --- |
| □Initial Treatment Plan    □Update because | | □Re-justify, | weeks |

| Prob. | Describe Problem: Substance abuse | | Possible Completion Date: 6/27/09 Next Review Date : |
| --- | --- | --- | --- |

**Target Behavior(s):**
1. History of alcohol or drug dependence.
2. Current substance abuse exacerbates psychotic &/or mood symptoms, results in disruptive behavior.
3. History of failure in prior substance abuse treatment.

**Treatment Goals:**
1. Resolve I/M's denial of substance abuse problem.
2. Gain understanding of negative impact of substance abuse on I/M's legal situation, family life, physical & psychological symptoms.
3. Establish a program to maintain abstinence.
4. Develop understanding of factors involved in prior relapses, substance abuse treatment failures.

| Date | Interventions: | Frequency and Duration. | Goal |
| --- | --- | --- | --- |
| 6/25 | **Psychiatry**<br>1. Provide inmate psychopharmacology services.<br>2. Monitor inmate's psychopharmacology experience for therapeutic and adverse effects.<br>3. Educate inmate in the role of psychopharmacology in the treatment of their severe and persistent mental illness.<br>4. Consultation and training with the inmate's case manager. | At least once per month.<br><br>Every 90 days or prn. | |
| | **Case Management**<br>1. Help I/M identify triggers of substance abuse.<br>2. Help I/M gain insight regarding consequences of substance abuse (physically, psychologically, legally).<br>3. Help I/M develop & maintain a relapse prevention plan. | Out of cell CM contact at least once per week.<br><br>Every 90 days or prn. | I/M will attend >80% of his scheduled CM interviews. |
| | **Group Therapy**<br>M Declurd | 8 offered weekly group sessions.<br><br>Not applicable in this setting. | I/M will attend >80% of his scheduled therapeutic activities. |

| Date | Progress Toward Therapeutic Objectives Since Last IDTT |
| --- | --- |
| 4/25 | New rx |

| MENTAL HEALTH TREATMENT PLANS, UPDATES, REJUSTIFICATION MH 2 [26 March 2001] Part One: General, Team, MSE Diagnosis, Problems, Inmate Strengths Part Two: Problem Pages -- Results Use Insert-a-Page of MH 1 Confidential Client/Patient Information See W & I Code, Section 5328 | LEVEL OF CARE CCCMS | Last Name, First Name: Brown CDC #: T6054 |
| --- | --- | --- |

## MENTAL HEALTH TREATMENT PLAN

☑ Initial ☐ Update ☐ BiWeekly ☐ MHCB Review ☐ Quarterly Review ☐ Annual Review

| I. GENERAL INFORMATION: | Current Level of Care: ☐ NONE ☐ CCCMS ☐ EOP | TODAY'S DATE: 6/9/08 |
|---|---|---|
| Treatment Setting: SVSP CTC-MHCB | ☒ MHCB ☐ OTHER | NEXT UPDATE: q weekly |

| Age: 27 Race: Cauc | Points: 34 | DDP = NCF / Chrono not in UHR | |
|---|---|---|---|
| Arrival Date This Treatment Setting: Ad mitted 6/3/08 | | Current Housing: ☐ RC ☐ GP ☒ CTC ☐ SNY | |
| From: CCCMS AA-224 Dr. Sanders | | ☐ ASU ☐ PSU ☐ SHU ☐ OTHER: | |
| Custody Level: I / II / III / (IV) / ASU / SHU | | EPRD: 3/17/2026 | |

| Date Reviewed: | Initials: | Date: | Initials: | Date: | Initials: |
|---|---|---|---|---|---|

**II. CLINICAL SUMMARY:** The inmate was transferred from MC SP on 5/28/08, a transfer he did not want. He had psychological tests done and results dated 9/10/07 indicated exaggeration of symptom. MMPI-II was invalid due to attempt to present symptoms more than there really were. There was documentation of misrepresentation of psychotic symptoms to sit Seroquel. ... ??? Controlling Offense: Kidnapping, Assisting Assault w/ firearm. CDCR Arrival: 7/16/2002 SVSP 7/28/2008

**III. PROBLEM LIST:**

| Number | Problem | Intervention/Clinician | Goal Progress / Date |
|---|---|---|---|
| 1 | Adjustment issue to new prison | CTC-MHCB staff | To improve coping skills by next week |
| 2 | Suicidal ideation homicidal — which may be instrumental | | To help inmate cope more constructively |
| 3 | Psychotic symptom are doubtful, no signs of conceptual disorganization or other signs to indicate thought disorder. | | |

**IV. PSYCHOTROPIC MEDICATION:**

| Number | Rx | Intervention/Clinician | Goal Progress / Date |
|---|---|---|---|
| 1 | Zydis 15 mg QHS | CTC-MHCB Psychiatrist | To reduce depressed mood / stability |
| 2 | Effexor XR 150mg | | |
| 3 | BuSpar 10 mg TID | | To raise anxiety compliance for mood |

**V. CURRENT RISK FACTORS/BEHAVIORAL ALERTS:** ☐ Suicidal ☐ Self Injurious ☐ Assaultive ☐ Keyhea Date Expires:

See Form: CTC record / UHR Dated: For Detailed Description
Re Hama Co. MH Service Report 4/1/91 - diagnosed adjust ment disorder, m'ild.
Summary: see CTC record / UHR

Last SRE date: 6/9/08 Last SRE rating: conditional History of Suicide Attempts: put rope around neck in 1991

**VI. RECOMMENDED HOUSING:** ☐ Single Cell ☐ Double Cell ☒ No Recommendation

**VII. TRANSFER/DISCHARGE TO:** ☐ Non-MHSDS ☐ CCCMS ☐ EOP ☒ MHCB ☐ APP ☐ ICF ☐ DTP ☐ Parole

| INSTITUTION: SVSP | CLINICIAN-S, Kittimongcolporn, M.D. | Name (Last, First, MI), CDC Number, DOB |
|---|---|---|
| INMATE BED NUMBER: MHCB - 7 | DATE: 6/9/08 | E⁻ ¸ᴵᴰ 78038 |

MENTAL HEALTH TREATMENT PLAN
CDCR 7388 (Rev. 06/06)
(Replaces MH2)
Confidential Client/Patient Information
Page 1 of 3

1/03/80

STATE OF CALIFORNIA        DEPARTMENT OF CORRECTIONS AND REHABILITATION

| Institution: SVSP | Clinician: S. Kittimongcolporn, M.D | Date: | 6/9/00 |
|---|---|---|---|

## VIII. Mental Status Examination:

| A. Appearance: | ☑ WNL |
|---|---|

| B. Behavior/Cooperation: | ☑ WNL |
|---|---|

| C. Orientation: | ☑ WNL |
|---|---|

| D. Speech: | ☑ WNL |
|---|---|

| E. Affect: | ☑ WNL |
|---|---|
| F. Mood: | ☐ WNL  depressed |
| G. Sleep/Appetite: | ☐ WNL |

### H. Cognition:

| Fund of Information | ☑ WNL |
|---|---|
| Intellectual Functioning | ☑ WNL |
| Concentration | ☑ WNL |
| Attention | ☑ WNL |
| Memory | ☑ WNL |

| I. Thought Processes: | ☑ WNL | ☐ Tangential   ☐ Circumstantial   ☐ Loose |
|---|---|---|

| J. Perception: | Claims "hearing voices" that cause him to want |
|---|---|
| Hallucinations | ☐ None   to hurt others |
| K. Thought Processes: | |

| Delusions | ☑ None |
|---|---|
| Ideas of Reference | ☑ None |
| Obsessions | ☑ None |
| Magical Thinking | ☑ None |

| L. Insight | ☑ WNL |
|---|---|
| Judgment | ☑ WNL |

MENTAL HEALTH TREATMENT PLAN
CDCR 7388 (Rev. 06/06)
(Replaces MH2)
Confidential Client/Patient Information
Page 2 of 3

Name (Last, First, MI), CDC Number, DOB

1    , D

160348

11/09/80

STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS AND REHABILITATION

EXHIBIT C

## PERSONAL HISTORY

Full Legal Name **Edward Don Brown Jr.**                          Social Security Number **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**

Other names used **"Skeeter"**                    Age **21**                    Date of Birth **11-08-80**

Place of Birth (City, ST.) **Corning, CA**                    Mailing Address **24930 Kansas Avenue, Los Molinos, CA 96055**

Current Address **Butte County Jail**                          Telephone **(530) 528-9504**

How long at this address? **2 years**                    With whom(names) **N/A**

Relationship **N/A**                    How long in Butte County? **Unknown**                    California **21 years**

Legal Address **Butte County Jail**                    Verified by **The defendant**

Physical description: Ht. **5'10"** Wt. **150** Hair **Brown** Eyes **Hazel** Sex **Male** Race **"Whatever Jesus is"**

Distinguishing marks (tattoos, scars) **Tattoos: Marijuana leaf on left hand, skull on left arm, skull and marijuana leaf on left leg**

Driver's license number **B7974226**          Status ☐valid ☐suspended ☐revoked ☒expired

If license other than valid, explain **Expired**

Health (current physical condition) ☒good ☐fair ☐poor. If other than good, explain **N/A**

Are you currently taking prescription medication? **Yes**

If so, list name of medication and prescribing physician. **Depakote prescribed by jail physician**

Have you ever been examined/treated for mental or emotional problems? **Yes**  Have you ever participated in counseling? **Yes**   If yes, explain (when, by whom and diagnosis): **1996 until current / Tehama County Mental Health and Butte County Behavioral Health Services**

### FAMILY:

Father's name ☒ (natural) ☐ (adoptive) **Edward Don Brown Sr.**                    Age **Unknown**

Father's address **3668 Hicks Lane, Chico, CA 95973**                    Occupation **Truck driver**

Mother's maiden name ☒ (natural) ☐ (adoptive) **Joni Steen**                    Age **Unknown**

Mother's address **24930 Kansas Avenue, Los Molinos, CA, 96055**                    Occupation **Distributing**

Names of step-parents **Laura Boyer and Bruce Schnitter**

Number of brothers **2** sisters **1** Have any family members had criminal convictions? **Yes** If so, explain (include name, relationship and offense) **Ed Brown Sr. (father) for Sales and Distribution of Methamphetamine**

Additional information **The defendant stated, "I love my family very much. I don't hate anyone, family or not. I love everybody and most of all I love Jesus Christ. Jesus is helping me with my mental problems. He told me to be patient and everything will be okay."**

### EDUCATION:

Highest grade completed **8th** Where **Maywood Intermediate School, Corning, CA** When **1994**

Are you presently attending school? **No** Where **N/A**

Diploma ☐ high school ☐ GED ☐ college ☐ trade school

Further educational interests **None at this time**



People vs. Edward Don Brown Jr.                    ☐CM-14629, SCR-34161, SCR-34160, NCR-84862

toxicology report stated the defendant was positive for amphetamine and marijuana.]

In SCR-34160, the defendant entered a business, removed a bottle of liquor, and exited the business without paying for the merchandise.

In NCR-84862, the defendant violated his probation when he committed the instant offenses.

During the probation interview the defendant disclosed a history of mental illness first documented in 1991 by the Tehema County Mental Health Services and continuing until the instant offense. Additionally, the defendant admitted a long history of alcohol abuse beginning in 1982 at the age of 2 years old and lasting until his arrest the instant offense. He also admitted a history of drug abuse beginning in 1991 at the age of 11 years old and continuing until his arrest in the instant offense. The defendant stated he ingested methamphetamine and LSD "a lot and as much as I could consume."

Regardless of what the defendant's intentions were, there is little doubt that the victim endured a traumatizing event that will live within him for the rest of his life. In light of the fact that the victim was not armed and posed no threat to the defendant, this crime could have been prevented.

In view of the aforementioned information, it is recommended that probation be denied and the defendant be sentenced to 45 years in state prison. Pursuant to §2933.2(c) PC, the defendant will earn only 15% credit while incarcerated.

**RECOMMENDATION:**

**CM-14629, SCR-34161, SCR-34160:**

The Court is respectfully referred to the attached recommendation page.



**ORGANIZATIONS AND PERSONAL HABITS:**

Religious preference **"Jesus"**; Fraternal, professional associations **None**

Spare time activities **Reading the bible**

Alcohol use: What kind(s) **Beer, whiskey, wine, mixed drinks**

How much **"Until I pass out"** per ☒ day ☐ week ☐ present ☒ past   From **1982** To **2000**

Drug use: What kind(s) **Methamphetamine**

How much **"As much as I could consume"** per ☒ day ☐ week ☐ present ☒ past   From **1991**   To **2000**

Drug use: What kind(s) **LSD**

How much **"A lot"** per ☐ day ☐ week ☐ present ☒ past   From **1996** To **1999**

Additional information **The defendant stated, "The only reason I did drugs and alcohol was because I was told by my**
**family and friends that it was okay and because I was mentally challenged.  I did not understand there are more**
**reasons than this, but there isn't enough room to write it all down."**


**MARITAL:**

☐Never married   ☒Married/Intact   ☐Separated   ☐Divorced   Maiden name/spouse **Tricia Watson**

Date of marriage **04-13-02**  Place of marriage **Butte County Jail**  Number of children **0**  Ages **N/A**   Supported by **N/A**

If separated or divorced, when? **N/A**  Prior marriages **0**   Name of previous spouse(s) **N/A**

Number of children **0**     Ages **N/A**   Living with **N/A**      Supported by **N/A**


**MILITARY HISTORY:**

☐ Yes ☒ No     Branch of **N/A**                                    Service number **N/A**

Date inducted **N/A**                      Where **N/A**                      Date discharged **N/A**

Type of discharge **N/A**                 Final rank **N/A**            If less than honorable, explain **N/A**


**EMPLOYMENT:**

Are you presently working? ☐ Yes  ☒ No. If yes, for whom? **N/A**

Address **N/A**                 Telephone **N/A**            How long? **N/A**

Job title/function **N/A**  Earnings $**N/A** per ☐ hour ☐ week ☐ month

If unemployed, for how long? **2 years** Why? **Incarcerated**

Job skills **Construction**

Name of last employer **Charles Brown (2 years)**              From **Unknown**     To **Unknown**

Longest job held **Charles Brown (2 years)**                   From **Unknown**     To **Unknown**


**FINANCIAL:**

Source of income: ☐ Employment ☐ Public assistance ☐ Other (specify) **N/A**

Monthly income $**0**                               List assets: Cash $**0**   Real property (where)$**0**

Personal property (value) $**0**                    DEBTS: Total Owed $**0**

Types of debt: Mortgage(s) $**0**                   Credit cards $**0**  Loans (auto/personal) $**0**

Average monthly living expenses $**0**              Have you ever been sued for debts? **No**

Have you ever filed bankruptcy? **No**              If so, when? **N/A**

Additional information **The defendant has been incarcerated for two years.**


People vs. Edward Don Brown Jr.                    3CM-14629, SCR-34161, SCR-34160, NCR-84862



Butte County Probation Department
2279 Del Oro Avenue, Suite C
Oroville, CA 95965
(530) 538-7661
By Dawn Hurd, Deputy Probation Officer II

**BUTTE COUNTY SUPERIOR COURT**
**JUDGE STEPHEN E. BENSON**
**HEARING DATE: June 24, 2002 @ 8:30 a.m.**

|                      |               |
|----------------------|---------------|
| **ACTION NO:**       | CM-14629      |
|                      | SCR-34161     |
|                      | SCR-34160     |
|                      | NCR-84862     |
| **PROBATION NO:**    | A-15177       |

**PROBATION OFFICER'S REPORT**
**(ORIGINAL)**

**PEOPLE vs. Edward Don BROWN Jr.**

| CHARGES | CODE § | OFFENSE | RANGE | PC 654/RESTRICTIONS |
|---------|--------|---------|-------|---------------------|
| Ct. II<br>CM-14629 | §245(d)(1) PC | Assault with a Firearm Upon a Peace Officer | 4-6-8 | None |
| Ct. III<br>CM-14629 | §207 PC | Kidnapping | 3-5-8 | None |
| Ct. IV<br>CM-14629 | §211 PC | First Degree Robbery | 3-4-6 | None |
| Ct. V<br>CM-14629 | §69 PC | Resisting or Deterring Officer | 16-2-3 | None |
| Ct. I<br>SCR-34161 | §11550(a) H&S | Under the Influence of a Controlled Substance | 1 Year | None |
| Ct. I<br>SCR-34160 | §148.9 PC | Resist Arrest | 1 Year | None |
| Ct. I<br>NCR-84862<br>(VOP) | §484(a) PC | Petty Theft | 1 Year | None |
| Ct. II<br>NCR-84862<br>(VOP) | §25662(a) B&P | Minor in Possession | 1 Year | None |

| PRIORS/<br>ENHANCEMENTS | CODE § | DESCRIPTION | RANGE | RESTRICTIONS |
|-------------------------|--------|-------------|-------|--------------|
| Ct. I<br>CM-14629 | §12022.53(b) PC | Intentional Discharge of Firearm | 10 Years | None |
| Ct. II<br>CM-14629 | §12022.53(c) PC | Intentional Discharge of Firearm | 20 Years | None |
| Ct. III<br>CM-14629 | §12022.7 PC | Great Bodily Injury | 3 Years | None |
| Ct. IV<br>CM-14629 | §12022.53(b) PC | Intentional Discharge of Firearm | 10 Years | None |
| Ct. V<br>CM-14629 | §12022.5 PC | Use of Firearm | 3-4-10 | None |

AP-16-96(Rev.1/99)



RESTRICTIONS ON PROB: ⊠ ELIGIBLE ☐ INELIGIBLE

⊠ ONLY IN UNUSUAL CASE; CODE **§1203(e)(2) PC and §1203(e)(3) PC**

CONVICTED BY: **NO CONTEST PLEA** DEF'S AGE: **21** DEFENSE ATTORNEY: **DENNIS HOPTOWIT**

RECOMMENDATION: ☐ PROBATION; ⊠ S.P.; ☐ 1203.03; ☐ W&I 3051; ☐ OTHER **N/A**

N.I.S.P. AGREEMENT ☐ YES ⊠ NO  RECOMMENDED TERM: **UPPER**

DATE OF OFFENSE: **CM-14629: 09-24-00, SCR-34161: 09-21-00, SCR-34160: 09-14-00, NCR-84862: 10-24-99**

DATE OF ARREST: **CM-14629: 09-24-00, SCR-34161: 09-21-00, SCR-34160: 09-14-00, NCR-84862: 10-24-99**

DATE OF CONVICTION: **CM-14629: 04-11-02, SCR-34161: 04-11-02, SCR-34160: 04-11-02, NCR-84862: 11-23-99**

CUSTODIAL STATUS: ⊠ B.C. JAIL ☐ BAIL ☐ O.R.  TIME CREDITS (DAYS): **587** ACTUAL: **88** §4019 PC

INVESTIGATING AGENCY/#: **CM-14629: CHICO POLICE DEPARTMENT / #00-6388, SCR-34161: CHICO POLICE DEPARTMENT / #00-6297, SCR-34160: CHICO POLICE DEPARTMENT / #00-6112, NCR-84862: CHICO POLICE DEPARTMENT / #99-7480**

ARRESTING AGENCY **CM-14629: CHICO POLICE DEPARTMENT, SCR-34161: CHICO POLICE DEPARTMENT, SCR-34160: CHICO POLICE DEPARTMENT, NCR-84862: CHICO POLICE DEPARTMENT**

PRIOR CONVICTIONS: (CII #**A22005233**) FELONY **2**, MISDO **0**, INFRACTIONS **0**

WAS DEFENDANT ON PROBATION/PAROLE AT THE TIME OF OFFENSE? **YES (NCR-84862)**

PRIOR PERFORMANCE ON PROBATION/PAROLE WAS ☐ SATISFACTORY ⊠ UNSATISFACTORY ☐ N/A

1202.4(b) PC REST. FINE (**$10,000.00** RECOMMENDED) REST. FINE SUSPENDED PER 1202.45 PC **$10,000.00**

H&S CODE 11372.5 FINE $**N/A**                                    H&S CODE 11372.7 FINE $**N/A**

"I HAVE READ AND CONSIDERED THIS ENTIRE PROBATION REPORT."

_____
JUDGE OF THE SUPERIOR COURT

1 | **DETAILS OF THE OFFENSE:**

2 | **CM-14629:**

3 | The following information was obtained from the Chico Police Department (CPD)
4 | Report #00-6388.

5 | On September 24, 2000, at approximately 5:16 a.m., a CPD officer was at Enloe
6 | Hospital on an unrelated matter when Lynetta D. ran into the emergency room shouting, "This
7 | man has been shot." The officer observed Greg Bart (the victim) lying in the back of the
8 | vehicle. It appeared the victim was bleeding from his right shoulder, as his upper torso was
9 | covered in blood.

10 | In an interview, Lynetta D. stated she was delivering newspapers when the victim stood
11 | in her lane of traffic, forcing her to stop her vehicle. He walked to the passenger side door and
12 | explained he had been shot and his taxicab had been stolen. He requested that she transport
13 | him to a telephone. She agreed and told the victim to get into the back of her vehicle. She then
14 | transported the victim to Enloe Hospital for treatment.

15 | The victim was moved into the emergency room for treatment. Upon further
16 | examination, it was determined the victim had a gunshot wound to his right upper arm. From
17 | the appearance of the wound, it appeared the victim had been shot at close range. The wound
18 | was approximately four inches wide and seven inches long. The muscle was missing,
19 | displaying the bone.

20 | The victim stated American Taxi as a driver employed him. He responded to an
21 | apartment complex on California Park Drive to pick up a fare, however, he was unable to
22 | locate the fare. While leaving, he was flagged down by Edward Don Brown Jr. (the
23 | defendant), who requested transportation. The defendant entered the vehicle and sat in the
24 | middle of the rear seat. The defendant introduced himself as "Mike" and said he was
25 | intoxicated. The defendant requested to be transported to a residence on Hicks Lane, although
26 | he did not know the specific address and did not have any money to pay for the transportation.
27 | The victim stopped the vehicle to talk to the defendant when he noticed the defendant had a

28 |

People vs. Edward Don Brown Jr.          4          CM-14629, SCR-34161, SCR-34160, NCR-84862

1  short-barreled shotgun in his hand. The defendant instructed the victim to drive to Hicks
2  Lanes and then he would decide if he was going to take the victim's money or not. The victim
3  continued to drive and attempted to signal another taxi cab driver that he needed help.
4  However, his effort was unsuccessful. The defendant told the victim not to make any kind of
5  signal to any other drivers.

6      The victim said he feared for his life and decided to attempt to escape the vehicle and
7  the defendant when he stopped for a red traffic signal light. He said when he stopped he
8  grabbed his bag of receipts and cash ($242.00), opened the driver's side door, felt and heard the
9  shotgun blast, stepped out of the vehicle, and began emptying his pockets of his property. The
10 victim thought if the defendant was going to rob him, he might as well make it easier and
11 perhaps the defendant would not shoot him again. The victim said he began to run toward the
12 Enloe outpatient building. He stated he heard the defendant exit the vehicle and run behind
13 him for a short while. The defendant then returned to the vehicle and drove away. The victim
14 said he returned to collect his bag of receipts and cash. He then saw Lynetta D. in her vehicle,
15 so he ran to her for help and she transported him to the hospital.

16     At approximately 5:20 a.m., Brian O, a witness telephoned 9-1-1 to report he saw a
17 possible robbery and shooting of an American Taxi Cab Company driver on California Park
18 Drive. Upon contacting Brian O. and his girlfriend Gabriella S. They stated they heard a
19 gunshot and witnessed the victim "fall out" of the vehicle. He stood up and walked away from
20 the vehicle. He appeared to be favoring his shoulder and leaning to one side. At the same time
21 the defendant exited the rear seat of the taxicab. He moved toward the front of the vehicle and
22 appeared to be holding a gray, two-foot long object. He then began moving toward the victim
23 and they heard shouting although they could not specifically say what was said. The victim
24 kept moving away from the defendant until the defendant turn around and headed toward the
25 taxicab.

26     Officers were dispatched to the scene however; they were unable to locate the taxicab
27 or victim. Officers contacted Danny H. and John M., whom had located coins (U.S. currency),
28

1    a pair of eyeglasses, a check draft, a spent shotgun shell, business cards, papers, blood,

2    receipts, a wallet, a moneybag, a pack of cigarettes, and a live shotgun shell. Officers then

3    received a dispatch of a traffic collision on Manzanita Avenue in front of Hooker Oak Park.

4    Officers located the missing taxicab. The engine was running although there were no

5    occupants. The officers were advised that the defendant might be armed with a weapon.

6        The officer advised dispatch of the events. A few minutes later, another CPD officer

7    located the defendant in the Hooker Recreation area parking lot. The officers noted the

8    defendant was armed with a bolt-action sawed-off shotgun. While additional officers were

9    responding, the defendant waived the shotgun around. In response, the officers told the

10    defendant to put the gun down several times however, the defendant continued to wave the gun

11    around while yelling "Fuck you cops. Go ahead and shoot me." The defendant then lowered

12    the gun to a shooting position and took aim. The officer was forced to shoot the defendant. As

13    backup officers arrived the defendant was taken into custody and the weapon was secured. An

14    officer noted the defendant appeared to be bleeding from the back of his head and upper torso.

15    Additionally the defendant had a strong odor of alcoholic beverage emitting from his person.

16    Medical personal arrived and assumed care of the defendant. A search of the scene revealed a

17    spent shotgun shell in the ground. The defendant was transported to Enloe Hospital for

18    treatment. Upon processing the crime scene, officers located a spent shotgun shell, bloody

19    clothing, a pair of shoes, a wallet, a pack of cigarettes, a pair of socks, a leatherman tool, a

20    small flashlight, an empty Gatorade bottle, and three pools of blood.

21        While at the hospital, a medical staff member provided the officer with blood test

22    results. The officer noted the defendant tested positive for met amphetamine, marijuana, and

23    alcohol. Additionally, the officer noted the defendant's injuries to include a wound to the right

24    of his right eye, a wound on his right front shoulder, two wounds to his right upper arm, and

25    five additional wounds to his lower right arm and hand. The officer contacted the defendant

26    who said, "Why did you guys shoot me? I was putting my hands up. You must have thought I

27    had a gun." He paused for a moment and said, "Maybe I was being an asshole or something.

28

1   That's why you shot me. You should have shot me in the head. I'd be better off." The

2   defendant denied possessing a gun and said, "tell the officer I'm sorry. I wish you guys would

3   have shot me dude. Why didn't I just be good?" The defendant was moved to the operating

4   room for surgery to repair the radial bone that was shattered. and remove the shotgun pellets in

5   his arm.

6          The victim was taken to the operating room to repair the damage to his right arm. The

7   physician noted there was much soft tissue damage with portions of the triceps missing.

8   Located within the wound were a wad and multiple pellets that appeared to be from a 12-gauge

9   shotgun. The wound was closed with an unknown amount of sutures. The victims release date

10   and prognosis is undocumented.

11          Another officer contacted Brian O., a witness who stated heard a single gun shot and

12   then observed the defendant exit the passenger side of the taxicab. The victim exited the

13   driver's door and began to walk away from the taxicab with an unknown object in his hand.

14   The defendant appeared to follow the victim for a short while and then returned to the taxicab.

15          The investigation officers responded to the apartment complex on California Park

16   Drive when the telephone call for a taxicab had been made. The officers noted this was the

17   residence of Roxanne High and her daughter (age unknown). Upon contacting Ms. High, stated

18   she knew the defendant and he was a friend of her son's (age unknown). The defendant had

19   spent the night at her residence. He was intoxicated and saying "stupid things" such as blaming

20   his father for his being homeless, not having a job, and being addicted to drugs as he sat on the

21   couch listening to music and consuming a bottle of peach schnapps. She said the defendant

22   was very angry with his father and had commented he wanted to shoot his father with a

23   shotgun that he had "stashed" somewhere although she had never seen the shotgun. Later in the

24   early morning hours, the defendant asked her if she would transport him to his father's

25   residence so he could "shoot him." When Ms. High refused, he walked to the telephone and

26   called a taxi. She said he walked out of her sliding glass door and onto the patio, when he

27   returned he was carrying a sleeping bag in a peculiar way (45 degree angle). He then exited the

28

1 | apartment carrying the sleeping bag and the bottle of peach schnapps.

2 |     Ms. High's daughter was also interviewed. She stated the defendant was at the
3 | residence and appeared intoxicated. He was "talking like a fool." He made a statement about
4 | going to his father's residence on Hicks Lane to shoot him. She said she believed the
5 | defendant's father called the defendant lazy and this upset him. She also remembered the
6 | defendant telephoning for a taxicab and that he has told her several times about a sawed off
7 | shotgun he owned although she did not see the weapon. She stated on the evening previous to
8 | the instant offense, the defendant talked about shooting his father and then shooting himself.
9 | She said, "I think Ed just wanted to die." He also talked about committing a home invasion
10 | robbery in the past.

11 |     Ramon M. contacted the Chico Police Department to report he witnessed the defendant
12 | chase the victim on California Park Drive. He though the victim may have been hurt due to the
13 | way he was limping. The defendant appeared to have something in his right hand that he was
14 | attempting to conceal. Ramon M said the defendant chased the victim for a short while and
15 | then returned to the taxicab and drove away. Ramon M. said he saw the victim attempt to wave
16 | him down but he was afraid the victim might be armed.

17 |     Ramon M. was shown a photographic lineup, which he positively identified the
18 | defendant as the person he witnessed chasing the victim.

19 |     The investigation officers contacted the defendant's stepmother, Laura Brown and his
20 | father Edward Brown Sr. at their residence on Hicks Lane. Mr. And Mrs. Brown was advised
21 | of the events surrounding their son. Mr. Brown said his son was an extremely lazy person. He
22 | said, "some weeks ago I had to kick him out because, he was not working." Mr. Brown stated
23 | he knew the defendant had a drug problem (met amphetamine and marijuana) and wanted to
24 | commit suicide. He said the defendant has had a history of mental problems for a long time. In
25 | 1998 he was admitted to the Butte County behavioral Health Department pursuant to §5150
26 | W&I because he ingested rat poison and acid because he thought he was a homosexual.

27 |     Mr. Brown said the last time he saw the defendant was approximately three weeks prior

28 |

1    to the instant offense. He arrived at Mr. And Mrs. Brown's residence, ate dinner, and
2    experienced an "enjoyable evening."

3          On September 25, 2000, the investigating officers arrived at Enloe Hospital and
4    contacted the victim. They showed the him a photographic line up which the victim positively
5    identified the defendant as the person who shot him.   The officers then proceeded to the
6    defendant's hospital room. As they walked into the room the defendant said, "Where is my
7    lawyer. Just so you know I ain't answering any questions without my lawyer. The officers and
8    the defendant engaged in menial conversation when an officer advised the defendant he was
9    under arrest. As the officer advised the defendant of his Miranda Rights, the defendant said "I
10   know my rights." The defendant began to recite the Miranda Warning and then said "the
11   voices, they wouldn't fucking stop." He said the voices had been talking to him all week long
12   and making him feel "shitty" about everything. The voices were telling him t hurt himself. He
13   then said "they are just going to stick me in a mental institution, I'm cool but I'd rather go to
14   jail."

15         The defendant talked about how "messed" up his life as and said, "I just wanted to die.
16   That is why I was trying to get those cops to shoot me. But they shot me in the arm and fucking
17   teased me with that bullshit" The defendant refused to answer any questions about the shotgun.
18   He then went on to say "I was shooting up a bunch of dope, the voices kept getting louder and
19   louder. They told me to kill myself because of the molestation that happen to me when I was
20   growing up, but I did not want to think about it anymore."

21         The defendant stated, " I don't know what happen, the gun just went off. It was an
22   accident. I was talking to the guy. I did not know it was loaded. He jumped put of the car and
23   the gun just went off. I do not think I pulled the trigger." The defendant asked how the victim
24   was doing and then the interview was terminated.

25         The defendant's mother, Joanie Schnitter contacted the investigating officer at the
26   Chico Police Department. Mrs. Schnitter stated during the time she and the defendant's father
27   were married there was "a lot" of domestic violence and drug abuse. She reported his much
28

People vs. Edward Don Brown Jr.                9      CM-14629, SCR-34161, SCR-34160, NCR-84862

older cousins molested the defendant at the age of 2 ½. She personally witnessed his 10 year old cousin sodomize him. She counseled both children and stated she did not think this was the first incident. She first noticed the defendant had an abnormally volatile temper when he was two or three years old. By the time he was 10 years old, he began to steal and vandalize things within the neighborhood. When he was 12 years old he went to reside with his father for the next two years. During that time he began to use illegal drugs and sniffing gasoline, which made him even more violent and anti-social. When he turned 14 years old his father was arrested and convicted of possessing methamphetamine. When he was 15 years old he was arrested in Tehema County Sheriff's Office, held in juvenile hall, and placed on probation for violations of §10851(a) VC and §594(a) PC as he stole a vehicle and lit a telephone pole on fire. He refused to attend counseling and was for the most part living on his own as a transient. She said he went on a "spree of stealing" and was arrested again for a violation of §1203.2(a) PC

Mrs. Schnitter stated she had seen the defendant in possession for a shotgun as it was found in his bedroom under the mattress. She removed the weapon and hid it at a neighbor's residence. A couple of days later the defendant demanded to know where the weapon was, as he needed to return it to the owner who was threatening to beat him up if it was not retuned. Mrs. Schnitter said she retrieved the weapon and personally handed it to the defendant. When shown a photograph of the weapon in the instant offense, she stated it was in fact the same weapon she had seem earlier in the defendant's bedroom.

Mrs. Schnitter said approximately two weeks prior to the instant offense, she and her husband told the defendant to leave their residence because he was "extremely lazy" and was not willing to seek employment. She said the defendant is an "extremely depressed and a danger to society." He needs mental help.

Mrs. Schnitter was allowed to visit the defendant in the hospital under the supervision of the investigating officer. The defendant was advised that the visit would not be confidential and was again advised of his Miranda Rights. As Ms. Schnitter entered the room, they

1     embraced. The defendant said, "I'm very very sorry that someone got hurt. See I tried to get the

2     cops to shoot me but it did not work. I wanted to be dead right now. It is the only reason I

3     pointed the gun at the cops" At this point the investigation officer resumed his interview with

4     the defendant. The defendant stated he telephoned for a taxi while at Ms. High's residence

5     because he wanted to go to Hooker Oak Park to kill himself. After he entered the taxicab, he

6     told the driver he did not have any money and the driver began to "flip out." "I pointed the gun

7     at him and was just going to scare him so he would take me to the park but it did not work."

8     The defendant stated he had obtained the shotgun approximately one week prior to the instant

9     offense but would not elaborate any further. The defendant said he did not remember asking

10    the taxicab driver to transport him to Hicks Lane. As the officer recounted the events, the

11    defendant became agitated and said, "I made the phone call. I did the whole fucking thing

12    dude. I did it step by step. I not talking anymore without my lawyer."

13          On September 27, 2000, the investigation officers obtained a search warrant for the

14    telephone record of Ms. High's residence. According to the records, a telephone call was

15    placed from the residence to American Taxi Company on the date, just pervious to the instant

16    offense.

17          On October 4, 2000, the investigation officers re-contacted Roxanne H.'s daughter. She

18    stated the defendant had talked about killing a police officer and killing he in the past. She said

19    when the defendant was "high" he would talk about "killing himself and having a shoot out

20    with the cops." He thought all his friends would think it was cool and hold him to a higher

21    level.

22          On July 30, 2001, Dr. Thomas J. Lancaster preformed a psychiatric evaluation of the

23    defendant. Dr. Lancaster noted, "Although Mr. Brown claims to have suffered from

24    depression, auditory and visual hallucinations and symptoms of Post Traumatic Stress Disorder

25    (PTSD) for many years, it appears unlikely given the lack of past psychiatric treatment, his

26    ability to relate all of this history without much distress and his intact thought process. At the

27    time of the instant offense, he most likely "blacked out" while intoxicated."

28

1    On October 7, 2001, Dr. Paul R. Wuehler preformed a psycho-legal examination of the

2    defendant. Dr. Wuehler noted, "at the time of the instant offense, the defendant was suffering

3    from a mental defect. He suffered from depression, and anger control problems. Additionally,

4    he was highly intoxicated. The substance abuse did some clouding of his reasoning ability, but

5    not to a serious level. There were no evidence or psychosis or delusions at the time of the

6    instant offense.

7    Additionally, on June 5, 1997, an officer noted on a field identification card, the

8    defendant claimed to be a gang member associated with the Westside Stockton-Lewis Park

9    Norte. The defendant stated he was "jumped in" 2 ½ years previously by four other gang

10   members. The defendant was wearing gang clothing, is tattooed with a gang logo and admitted

11   gang membership.

12   On November 14, 2000, the Butte County District Attorney's Office filed an

13   Information against Edward Don Brown alleging Count I, a violation of § 209(b)(1) PC,

14   Kidnapping to Commit Robbery, a felony; Count II, a violation of § 245(d)(1) PC, Assault

15   with a Firearm Upon a Peace Officer, a felony; Count III, a violation of § 207 PC Kidnapping,

16   a felony; Count IV, a violation of § 211 PC, Robbery, a felony; and Count V, a violation of §

17   69 PC, Resist Executive Officer with Force, a felony. Also alleged were Special allegations

18   pursuant to §12022.53(b) PC,

19   On May 13,2002, the defendant pled No Contest to Counts II, III, IV, V and Special

20   Allegations pursuant to §12022.53(b) PC (Count II), Intentional Discharge of Firearm;

21   §12022.53(c) PC (Count III), Intentional Discharge of Firearm; §12022.7 PC (Count III), Great

22   Bodily Injury; §12022.53(b) PC (Count IV), Intentional Discharge of Firearm; §12022.5 PC

23   (Count V), Use of Firearm. Count I was dismissed. The defendant is currently in custody in the

24   Butte County Jail pending the Sentencing Hearing scheduled for June 24, 2002, at 8:30 a.m.

25   **SCR-34161:**

26   The following information was obtained for the Chico Police Department (CPD)

27   Report # 00-6297.    On September 21, 2000, CPD officers contacted the defendant while on

28

1 an unrelated matter. While talking to the defendant the officer observed the defendant's pupils
2 appeared dilated. When light was introduced there was little reaction. His pulse was elevated.
3 The defendant was placed under arrest for a violation of §11550(a) H&S and transported to the
4 Chico Police Department where the defendant provided a urine test. The defendant was then
5 transported to the Butte County Jail for booking.

6        On September 27, 2000, Valley toxicology Services Inc. tested the defendant's urine,
7 which tested positive for amphetamines and marijuana.

8        On March 28, 2001, the Butte County District Attorney's Office filed a Complaint
9 against Edward Don Brown Jr. alleging Count I, a violation of §11550(a) H&S, Under the
10 Influence of a Controlled Substance, a misdemeanor.

11       On May 13, 2002, the defendant pled No Contest to Count I as alleged. The defendant
12 is currently in custody in the Butte County Jail pending the Sentencing Hearing scheduled for
13 June 24, 2002, at 8:30 a.m.

14 **SCR-34160:**

15       The following information was obtained for the Chico Police Department (CPD)
16 Report #00-6112.

17       On September 14, 2000, a CPD officer observed Edward Don Brown Jr. (the
18 defendant) ride a bicycle past his location and through a stop without stopping. The officer
19 activated the vehicles emergency lights and siren in an attempt to stop the defendant however;
20 the defendant looked back at the officer and continued to ride forward without stopping. The
21 officer utilized the vehicle's P.A. system and verbally instructed the defendant tot stop. The
22 defendant rode up onto the sidewalk and stopped his bicycle. The officer contacted the
23 defendant and preformed a pat down search for weapons. No weapons were located however;
24 the officer noted the defendant was in possession of a wallet. The officer requested to see the
25 defendant's identification, which the defendant responded he did not have any identification.
26 The officer asked the defendant for his name. The defendant identified himself as Travis
27 Sanchez. The officer then recognized the defendant from prior contacts as Edward Don Brown
28

1   Jr. The defendant confirmed his identity. When asked why he lied, the defendant stated,

2   "because I hate you guys." The defendant was placed under arrest and transported to the Butte

3   County Jail where he was booked on a violation of §148.9 PC.

4   On April 2, 2001, the Butte County District Attorney's Office filed a Complaint against

5   Edward Don Brown Jr. alleging Count I, a violation of §148.9 PC, Giving False Information to

6   a Police Officer, a misdemeanor.

7   On May 13, 2002, the defendant pled No Contest to Count I as alleged. The

8   defendant is currently in custody in the Butte County Jail pending the Sentencing Hearing

9   scheduled for June 24, 2002, at 8:30 a.m.

10   **NCR-84862 (VOP):**

11   The following information was obtained for the Chico Police Department (CPD)

12   Report #99-7480.

13   On October 24, 1999, a CPD officer was dispatched to Safeway on a report of a

14   shoplifter. Upon arrival the officer contacted a store employee who stated he witnessed Edward

15   Don Brown Jr. (the defendant) enter the store, walk to the liquor isle, remove a bottle of Ron

16   Bacardi, place it in his jacket and exit the store without paying for the merchandise. Once

17   outside, the employee approached the defendant and escorted him back into the store and to the

18   security area.

19   The officer contacted the defendant was transported to the Chico Police Department,

20   booked and issued a citation for violations of §484(a) PC, §488 PC, §490.5 PC, and §25662(a)

21   B&P.

22   On November 19, 1999, the citation was filed with the Butte County Superior Court.

23   On November 23, 1999, the defendant pled No Contest to a violation of §25662(a)

24   B&P, Minor in Possession, a misdemeanor. The defendant was granted 24 months

25   Conditional/Revocable release and was ordered to pay a fine.

26   On May 13, 2002, the defendant was found in violation of probation by virtue

27   of his pleas in CM-14629, SCR-34160 and SCR-34161. The defendant is currently in custody

28

People vs. Edward Don Brown Jr.          14   CM-14629, SCR-34161, SCR-34160, NCR-84862

1 │ in the Butte County Jail pending the disposition after violation of probation scheduled for June
2 │ 24, 2002, at 8:30 a.m.

3 │ **VICTIM'S STATEMENT:**

4 │ On April 24, 2002, the Butte County Victim Witness Assistance Program advised the
5 │ Butte County Probation Department that the victim has declined service.

6 │ On April 24, 2002, the defendant was sent a letter via the U.S. Postal Service
7 │ requesting information regarding sentencing and restitution. As if the date of this writing, no
8 │ response has been received.

9 │ **DEFENDANT'S STATEMENT:**

10 │ On June 5, 2002, the defendant was interviewed at the Butte County Jail.   The
11 │ defendant has submitted the attached written statement for the Court's consideration.

12 │ In CM-14629, the defendant stated he was in the living room listening to the radio. He
13 │ was sad because he and his girlfriend had just broken up. A friend (Sabrina) asked if he
14 │ wanted to get high.  The defendant stated he injected methamphetamine and began seeing
15 │ things (pictures of him being molested on the wall), so he began drinking alcohol in hopes of
16 │ getting drunk and passing out. The defendant said he drank an entire bottle of peach flavored
17 │ Schnapps, sat down and listened to the radio again.  He then went to the porch and got a
18 │ sleeping bag and the shotgun. He put the shotgun in the sleeping bag but he did not know why.
19 │ He got into a cab, although he did not know why. He instructed the driver to drive to Hicks
20 │ Lane.  The defendant stated he was hearing voices all around him.  The voices were fighting
21 │ against each other. The defendant said, "I was going crazy. The voices were telling me what
22 │ tot do" He said the voices told him he was going to kill his dad, but the defendant said he
23 │ loves his dad and he did not want to kill his dad.  The defendant stated when the driver found
24 │ out that he did not have money to pay for the transportation, the driver refused to transport the
25 │ defendant.  The defendant pulled out the gun and told the driver, "If you don't take me..." The
26 │ defendant stated he also talked about robbing the driver but does not recall his exact words.
27 │ All of a sudden, the driver grabbed something and jumped from the car.  The defendant said he
28 │

People vs. Edward Don Brown Jr.          15    CM-14629, SCR-34161, SCR-34160, NCR-84862

1 was scared and the gun was about one to two feet from the driver when he shot the driver. He
2 said the voices just reacted. The defendant said he did not mean to shoot the driver; he did not
3 want to hurt anyone.

4 The defendant said, "I can't lie to you, it has to be right. I have to make it right with
5 Jesus." He went on to say the shot scared him. He then began chasing the victim because he
6 wanted to help him. He did not want the victim to die. He saw the car and thought, "oh shit."
7 He jumped back into the car and drove away. While driving, one voice told him to turn left
8 while two other voices told him to turn right. The defendant said he was unable to manipulate
9 the turns and crashed into a house. He exited the vehicle and took the gun with him. He ran to
10 a culvert pipe and laid down to talk to the voices and to the devil. He later got up but felt lost.
11 He found his way to a parking lot and does not remember the police in the parking lot.
12 Although he remembers the lights shining. He does not remember what happened next other
13 than someone yelling at him and him yelling back, "Just shoot me! Just shoot me!" The
14 defendant said all of a sudden, he was shot. He added, "I deserve to die for what I did to the
15 victim. What I did was wrong but if I die, then how do I get punished?"

16 The defendant stated he was molested at age four or five. He always felt guilty because
17 he thought it was his fault. He wanted to die because he thought he was gay due to the molest.
18 It was not until later in life he realized he was not gay, but his low self-esteem kept him from
19 having friends. He felt frustrated, alone and depressed. Dying just seemed like a way to stop
20 the pain.

21 The defendant stated the correctional officers at the Butte County Jail communicate
22 through extra sensory perception (ESP). He knows this because he can hear what they are
23 saying. He said, "I don't know why they were telling Dr. Lancaster I'm okay and just faking."
24 The defendant said, "Even today, I can still hear the officers talking to each other through ESP.
25 I can still hear the voices and I still think about dying every day." The defendant requested the
26 undersigned to recommend the death penalty. He said, "Could you help me get the death
27 penalty?"

28

1  In SCR-34161, the defendant stated he was under the influence of methamphetamine
2  when he was arrested.

3  In SRC-34160, the defendant stated he gave the officer a false name because he did not
4  want to get into trouble.

5  In NCR-84862, the defendant stated he stole the bottle of liquor because he did not
6  have any money.

7  During the probation interview the defendant disclosed a history of mental illness first
8  documented in 1991 by the Tehema County Mental Health Services and continuing until the
9  instant offense. Additionally, the defendant admitted a long history of alcohol abuse beginning
10  in 1982 at the age of 2 years old and lasting until his arrest the instant offense. He also
11  admitted a history of drug abuse beginning in 1991 at the age of 11 years old and continuing
12  until his arrest in the instant offense. The defendant stated he ingested methamphetamine and
13  LSD "a lot and as much as I could consume." The defendant stated he sold drugs to support his
14  addictions.

15  **LETTERS OF REFERENCE AND INTERESTED PARTIES:**

16  The defendant has submitted several medical records from Tehama County Mental
17  Health and Butte County Behavioral Health for the Court's consideration.

18  On April 26, 2002, the Butte County Probation Department received the attached
19  written statements form the investigating officers.

20  **PRIOR RECORD:**

21  The defendant's Criminal Record Summary and Department of Motor Vehicles
22  printout are attached for the Court's consideration.

23  **DISPOSITIONAL CRITERIA:**

24  Dispositional criteria pages are attached for the Court's use.

25  ///

26

27

28

People vs. Edward Don Brown Jr.                    17     CM-14629, SCR-34161, SCR-34160, NCR-84862

1

**POTENTIAL PRISON TERM**

2

| Action # | Count | Offense | Appropriate Term | Enhancement | Recommended Term |
|----------|-------|---------|------------------|-------------|------------------|
| CM-14629 | III | §207 PC | 8 Years (Upper) | 20 Years (§12022.53(c) PC) | 31 Years (Upper +Full Enhancements) |
| | | | | 3 Years (§12077.7 PC) | |
| CM-14629 | II | §245(d)(1) PC | 6 Years (Mid) | 10 Years (§12022.53(b) PC) | 5 Years $ Months (1/3 Mid +1/3 Enhancement) |
| CM-14629 | IV | §211 PC | 4 Years (Mid) | 10 Years (§12022.53(b) PC)+ | 4 Year, 8 Months (1/3 Mid 1/3 mid enhancement) |
| CM-14629 | V | §69 PC | 2 Years | 10 Years (§12022.5 PC) | 4 Years (1/3 Mid + 1/3 mid Enhancement) |
| SCR-34161 | I | §11550 H&S | 1 Year | None | 1 Year |
| SCR-34160 | I | §148.9 PC | 1 Year | None | 1 Year |
| NCR-84862 | I | §484(a) PC | 1 Year | None | 1 Year |
| NCR-84862 | II | §25662(a) B&P | 1 Year | None | 1 Year |

10

**LEADING TO A GROSS UNSTAYED TERM OF FOURTY-FIVE YEARS.**

11

**DISCUSSION AND EVALUATION:**

12

13

Edward Don Brown Jr. appears before the Court having been convicted of Assault with

14

a Firearm Upon a Peace Officer, Kidnapping, First Degree Robbery, Resisting or Deterring an

15

Officer, Under the Influence of a Controlled Substance, Resist Arrest, and a violation of

16

probation. Pursuant to §1203(e)(2) PC and §1203(e)(3) PC the defendant is eligible for a grant

17

of probation only if the Court determines his case is unusual and the best interests of justice

18

19

would best be served by granting probation. In accordance with Rule of Court 4.413, the fact

20

or circumstance giving rise to the limitation on probation (use of a deadly weapon) is, in this

21

case, substantially more serious than the circumstances typically present in other cases

22

involving the same limitation (due to the victim's injury). However, the defendant has no

23

record of committing similar crimes or crimes of violence. The defendant did not participate in

24

the crime under circumstances of great provocation, coercion, or duress nor was the crime

25

26

committed because of a mental condition. The defendant is youthful and does not appear to

27

have a significant record of criminal offenses. Due to the aforementioned, the Court may find

28

the defendant's case to be unusual. However, even if the Court were to find the defendant's

case unusual, the defendant is not viewed as a suitable candidate for a grant of probation.

In CM-14629, the defendant was an active participant in the crime. The defendant was armed with and used a deadly weapon in the commission of the crime and he inflicted great bodily injury to the victim. The defendant does not appear to be remorseful for the crime. The defendant used his level of intoxication and "the voices" as rationalization for committing the crime and stated, "the voices were telling me what to do."

The defendant consumed alcoholic beverages and ingested methamphetamine. He telephoned the American Taxi Company for transportation. The defendant entered the taxicab, instructed the driver to transport him to a residence on Hicks Lane were his father resided, and then advised the driver that he did not have any funds to pay for the transportation. When the driver/victim turned around to talk to the defendant he observed the defendant holding a sawed off shotgun. The defendant told the victim that when they arrived at the residence on Hicks Lane he would decide if he (the defendant) was going to rob the victim or not. The victim fearing for his life stopped the taxicab and attempted to flee. However, the defendant shot the victim in his right shoulder. The victim exited the taxicab and ran away from the defendant. The victim located a by passer who transported him to the hospital while the defendant stole the taxicab and crashed at a nearby recreational park. Police officers located the stolen taxicab and later, the defendant who was armed with the shotgun. Officers instructed the defendant to put the weapon down several times however, the defendant would not comply. The defendant held the shotgun in his hand and pointed it at an officer at which time the officer responded by shooting the defendant.

In SCR-34161, the defendant was contacted by police officers that determined he was under the influence of a controlled substance. The defendant submitted a urine sample and the

1

**NCR-84862:**

2    It is respectfully recommended that probation be terminated unsuccessfully with credit

3    for (1 actual day) time served.

4

5                                                        Respectfully Submitted,

6
                                                         Terrence Starr
7                                                        Interim Chief Probation Officer

8

9
                                                         Dawn Hurd
10                                                       Deputy Probation Officer II

11   Date: 12/11/09
12   Reviewed and Approved by:_____
     Defendant's Name: Edward Don Brown Jr.
13   Court Number: CM-14629, SCR-34161, SCR-34160, NCR-84862

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# RECOMMENDATION

It is respectfully recommended that probation in the matter of **Edward Don Brown Jr.** be denied.  It is additionally recommended that the defendant be advised and/or ordered to:

☒ 1. Pay a restitution fine per §1202.4(b) PC in the amount of **$10,000.00.**

☒ 2. Pay a restitution fine, suspended per §1202.45 PC in the amount of **$10,000.00.**
*(Applies to offenses after August 3, 1995)*

☐ 3. Pay restitution to victim _____ in the amount of _____
victim _____ in the amount of _____
victim _____ in the amount of _____
and/or State Board of Control for restitution paid to victim(s) in the amount of _____ per §1202.4(f) PC.

☐ 4. Pay a theft fine per §1202.5 PC to: ☐ BCSO/Probation ☐ CPD ☐ PPD ☐ OPD ☐ GPD in the amount of $10.00. *(Applies to §211, 215, 459, 487 & 488 PC).*

☐ 5. Pay a fine per §290.3 PC in the amount of _____
*(Applies to any offense under §290(a) PC)*

☐ 6. Pay respective drug fines per §11372.5 H&S and §11372.7 H&S in the amounts of _____ and _____

☒ 7. Court recommends per §1203.096 PC that the defendant attend drug/alcohol counseling while in the Department of Corrections.
*(Applies to defendant's alcohol/drug history or involvement during offense.)*

☐ 8. The defendant have no visitation with the victim(s) per §1202.05 PC
*(Applies to §261, 264, 266c, 285,286,288, 288a, 288.5 and 289.)*

☐ 9. The defendant be tested for AIDS per §1202.1 PC
*(Applies to §261, 261.5, 262, 286, (288(a) if appropriate), and 288a PC.)*

☒ 10. Within 48 hours of release from the Department of Corrections, report to the Parole Office closest to your last legal residence.  (PC 1170(a)(3))

Respectfully submitted,

Terrence Starr
Interim Chief Probation Officer

Dawn Hurd, Deputy Probation Officer II

Dated: June 7, 2002
Reviewed & Approved:_____

_____
Judge of the Superior Court

People vs. Edward Don Brown Jr.                    22      CM-14629, SCR-34161, SCR-34160, NCR-84862

**PRESENTENCE CREDITS**, PEOPLE vs. **Edward Don Brown Jr.**          **#CM-14629, SCR-34161,**
                                                                     **SCR-34160, NCR-84862**

The defendant was in custody as follows exclusively because of the conduct for which convicted in this case.

|    |                      | **Dates**  |            | **Total** |
|----|----------------------|------------|------------|-----------|
|    |                      | **From**   | **To**     | **Days**  |
| A. | **Local Time**       |            |            |           |
|    | Butte County Jail    |            |            |           |
|    | NCR-84862            | 10-24-99   | 10-24-99   | *1        |
|    | SCR-34161            | 09-21-00   | 09-21-00   | 1         |
|    | SCR-34160            | 09-14-00   | 09-14-00   | 1         |
|    | CM-14629             | 09-26-00   | 06-24-02   | 585       |

Other (Specify)
*To be applied to NCR-84862 only

|                          |     |       |
|--------------------------|-----|-------|
| **TOTAL LOCAL TIME:**    | 587 | DAYS  |

B.  §1203.03 P.C.

    C. R. C.

    Other (Specify)

|                                              |     |       |
|----------------------------------------------|-----|-------|
| **TOTAL STATE TIME:**                        | 0   | DAYS  |
| **TOTAL ACTUAL TIME:**                       | 587 | DAYS  |
| §2933.1 PC Credits:<br>(Calculated at 15%)   | 88  | DAYS  |
| §2933.1 PC Credits Lost:<br>(see attached)   | 0   | DAYS  |
| **NET TOTAL TIME PLUS CREDITS:**             | 675 | DAYS  |

(Time computed through June 24, 2002)

Dawn Hurd, Deputy Probation Officer II

(Calculated at 15%)
Pursuant to §1191.3(b) P.C., the Probation Officer estimates that as many as **2,362** days conduct and work-time credits may be earned by the defendant if (s)he is committed to prison for the recommended **45-year** term.

AP-26-97

EXHIBIT D

## TEHAMA COUNTY MENTAL HEALTH SERVICES

PAGE NUMBER_____

NAME_____ BROWN, EDWARD D. "SKEETER"

CASE NUMBER_____ MH 9026

### OUTPATIENT TREATMENT PLAN

DATE OF ADMISSION:  4/1/91
DATE OF EVALUATION:  4/1/91

TREATMENT PLAN:

LONG-TERM GOAL:  Ed to live in a safe and nurturing family situation where he feels his needs are met.

PROBLEM #1:  #39 Suicidal threats.

SHORT-TERM GOAL:  Amelioration of suicidal threats.

Objective #1:  Ed will be able to give a narrative of the feelings and events  leading up to "rope around the neck" incident, within 4 weeks of counseling.

Objective #2:  Ed will be able to genuinely deny suicidal ideation on a weekly  basis, which will continue through until counseling terminates.

PROBLEM #2:  #34 Family dysfunction.

SHORT-TERM GOAL:  Increase interfamilial productive communication skills.

Objective #1:  Ed's family will come for counseling together at  least  one  time  per month during the period of time that Ed is a client at this Facility.

Objective #2:  Ed,  as well as his family,  will be able to  identify  two  underlying emotions to anger (such as, hurt,  disappointment,  embarrassment,  etc.) at least one time during each family therapy session, for 4 consecutive week.

TREATMENT INTERVENTIONS:

1.  Therapist will work with client to develop a "no suicide" contract,  which will be verbally renewed on a weekly basis, in session, with the undersigned.

2.  Therapist will engage in one  to one  psychotherapy  and will  meet  with patient at least 2 times per month.

3.  Therapist will emphasize use of "I" messages to enhance ego development and increase self-esteem.

(continued)

CONFIDENTIAL PATIENT INFORMATION
SEE CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 5328

## TEHAMA COUNTY MENTAL HEALTH SERVICES

| | PAGE NUMBER | 2 |
|---|---|---|
| NAME____ BROWN, EDWARD D. "SKEETER" | CASE NUMBER | MH 9026 |

OUTPATIENT TREATMENT PLAN   (continued)

4. Therapist will also aid client in developing and using language to reflect his affective state.

5. Therapist will monitor progress on objectives during family and individual sessions.

COUNSELING AND REFERRALS:   At this time, client will be seeing the under-
signed on a weekly basis,   with approximately one of these meetings per month being a family session.

MEDICATIONS:   No medications are prescribed at this time.

ESTIMATED LENGTH OF TREATMENT:   Approximately 12 weeks.

TENTATIVE DISCHARGE PLANS:   At the time of discharge, it is anticipated
that the family will be referred to appropriate ongoing support groups.

PROGNOSIS:   01 Guarded.
Client understands the above   stated   Treatment Plan and agrees.

Date:   4|3|91   Denise Rehberg, PSW

.....I have read and approved the above with the following changes:

Date:   4/8/91   S. A. Cheeseman, M.D.

DMR:eh
4/3/91

c: Stadler, atty 9-59/f7

CONFIDENTIAL PATIENT INFORMATION
SEE CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 5328

PROGRESS NOTES

## TEHAMA COUNTY MENTAL HEALTH SERVICES

BROWN, EDWARD D. "SKEETER"

NAME

PAGE NUMBER_____

CASE NUMBER_____  MH 9026

### INTAKE EVALUATION

SERVICE: Outpatient
DOB: 11/8/80
DATE OF ADMISSION: 4/1/91
DATE OF EVALUATION: 4/1/91

CHIEF COMPLAINT: Approximately one month ago, Ed put a rope
around his neck at school. When asked why he
did this, he stated, "I just wanted to see what it would feel like to hang".
Recently, Ed has made threats and several attempts to run away. He has exhibited
explosive rage, primarily at home, during which he becomes destructive. For example,
breaking things, and making holes in walls. Ed's family is currently in an upheaval
trying to adjust to recent changes.

Medical necessity can be justified for Medi-Cal purposes in that Ed has recently
engaged in behavior threatening or dangerous to himself, in that he put a rope around
his neck and implied that he would hang himself.

HISTORY OF PRESENT PROBLEM: Mom states that she and her husband are separ-
ated and are in the last stages of divorce.
Apparently, they have been living apart for 5 months and the divorce will be final in
approximately one month. Mother states that Ed appears to be extremely angry over the
divorce, and she also states that his father has been making it difficult for Ed, in
that when he goes to visit his father, the father tries to "pump him" for information
and makes derogatory comments about Ed's mother. Currently, the issue of custody is
being mediated by Heidi Uptegrove, the Court Mediator/Conciliator. Mental Health has
received a Release of Information from Ms. Uptegrove and we have had telephone
conversation with her on one occasion regarding our impressions of Ed. Due to the
fact that we have seen him minimally at this point, minimal information was all that
could be provided.

Ed's mother had brought him to this Facility about one month ago. At that time, Ed
saw Alan Yamamoto, who then referred the case to the undersigned. Following 2 or 3
visits, Ed's mother decided she would prefer to have Ed see the School Counselor in
Corning, due to financial burden of paying for the gas for transportation on a weekly
basis. Evidently, since that time, the situation has not gotten better, and Ed's
mother has made a verbal committment to bring Ed for counseling, one time per week,
for approximately 10-12 weeks. As stated above, approximately one month ago, while at
school, Ed put a rope around his neck and threatened to commit suicide. He would not
give a clear reason of what he was doing and why, other than he just wanted to "see
what it would feel like to hang". Mother states that Ed's father has used suicidal

(continued)

## TEHAMA COUNTY MENTAL HEALTH SERVICES

INTAKE EVALUATION   (continued)

threats as manipulation in the past, and so Ed may be employing those tactics with his mother as well.

Approximately one month ago, Ed's mother's fiance, Frank Denning,   moved into the family's home with his two teenage daughters.  This represents a very traumatic change in the family.  From Ed's point of view, he has gone from being the oldest child to being the third child in the family structure.  He has never had older siblings to deal with before.  Also,  Ed states that he "hates" Frank.  This situation is apparently going to continue indefinitely,  and it is a source of stress for Ed.   He states,   at this time,  that he wants to live with his dad,  and then several moments later,  retracts that statement,  saying he really does not want to live with his dad, but he feels unhappy the way things are at home.

PAST HISTORY:                            Ed resided with his mother, father, and younger
                                         sister until approximately 5 months ago,   when
his father moved out.  Approximately one month ago, as stated above, mother's fiance and his two daughters moved into the home,  and at this time,   these 6 people are attempting to  live  together  as  a  blended  family.  Mother is not aware of mental illness in the family.  However, there is evidence of schizotypal personality disorder in Ed's grandfather,  his mother and possibly with Ed,  due to the fact that mother states, and Ed states, that they all "hear voices".  There does not appear to be other symptomatology  which  would indicate full blown schizophrenia or other serious mental disorder.  This will continue to be observed as counseling progresses.   There  is  a history  of  minor criminality on both sides of the family,  primarily due to drug and alcohol abuse.

Mother states that she is not aware of any learning problems in the family,  nor  does she  believe  there  is any incest in the family.  Mother verbally denied child abuse, however,  upon more close interviewing, it appears that both the father and the mother have  been  abusive toward the children.  Mother filed a CPS report against the father several months ago,  and on the date of the Assessment, 4/1/91, a CPS report was filed by  the undersigned due to mother's acknowledgement that she "whipped" Ed with a belt, and did so, most recently, yesterday evening.  Mother states that she does not wish to use corporal punishment,  however,  she does not know of any other way to get  Ed  to behave.

Regarding alcoholism in the family,  mother states that his  paternal  grandfather  is alcoholic, as well as his paternal aunt.  Also, his maternal grandfather is alcoholic. Mother states that Ed's father took drugs and that his father's sister,  Debbie,  also took drugs.  She states that her two sisters used drugs extensively in  their  teenage years, but that now that they are adults with families, they do not use drugs.

(continued)

## TEHAMA COUNTY MENTAL HEALTH SERVICES

INTAKE EVALUATION    (continued)

Mother states that Ed experienced a normal developmental history. Ed is currently in Olive View School in Corning and is in the 4th grade. She says that grades on report cards are usually "A's" to "C's". He is currently in a special reading class at school. When questioned regarding special problems with school, mother states that his primary problem is with authority and rules. She states that the child does not have legal difficulties at this time. However, it should be noted, as stated above, that the custody issue is ongoing, which involves the custody of both Ed and his sister, Carrie. Mother states that he does not have health problems that she's aware of. She says he has experimented with alcohol, but that she does not believe that he uses it on a regular basis. He is on no current medications.

MENTAL STATUS:                         Present is a 10 year old, Caucasian male, who
                                       appears to be his stated age. Ed's physical
stature is somewhat larger than average. He appears healthy and clothing is appropriate for the season. Grooming and hygiene are good, and Ed wears his hair in a fashionable, neat haircut. Ed's attitude in counseling is cooperative part of the time, however, when the subject matter becomes sensitive, which would involve his suicide threats, or parents' divorce, he becomes hostile and angry and states, "I don't want to talk about that". Affect appears to be normal, for the most part, although, as stated above, he becomes hostile and at that time, does not share his thoughts and feelings. He appears guarded and suspicious regarding sharing information regarding his feelings about his father, and about staying with his mother.

There was no abnormal behavior noted during the interview, although as stated above, Ed's mother and Ed both state that they sometimes hear voices. They do not feel that this is anything to be alarmed about, and appear to see it more as something special about them that they share intergenerationally with the mother's father as well.

Estimate of intelligence appears to be within normal ranges. Judgment and insight appear to be low normal at this time, probably due to stress and anxiety regarding current life situations. Ed possesses adequate communication skills, although he is selective about what he wishes to communicate. He's able to demonstrate that he's oriented to person, time and place. Both recent and remote memory appear to be unimpaired at this time. There does not appear to be any evidence of hyperactivity at this time.

Ed's strengths appear to be that he is now in the attention of the Court system, particularly Court Mediator Heidi Uptegrove, who will make a determination regarding the optimum placement for his custodial care. Ed's mother appears to be willing, at this time, to make a committment to counseling. She also appears willing to participate herself in Parenting classes, which will be offered at Mental Health and/or through CPS. Regarding suicidal ideation, Ed states that he is not suicidal at

(continued)

CONFIDENTIAL PATIENT INFORMATION
SEE CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 5328

## TEHAMA COUNTY MENTAL HEALTH SERVICES

### INTAKE EVALUATION     (continued)

this time, however, due to the seriousness of his threats one month ago, this issue will continue to be looked at carefully on a weekly basis.

Ed shows marked impairment in his relationship with his mother since the separation from his father, and an escalation of the problem occurred when mom's new fiance and his two teenage daughters moved in. Ed has been very anxious and preoccupied. School work has suffered some, and his attitude at home is apparently extremely hostile. Behavior problems have escalated and Ed's mother states that she feels she has "no control over him any longer". There's much confusion evidenced as these two families attempt to blend.

DIAGNOSTIC IMPRESSION:

DSM III-R

AXIS I:    309.40 Adjustment disorder, with mixed
           disturbance of emotions and conduct.
           V61.20 Parent/child problem.
AXIS II:   V71.09 None.
AXIS III:  18 None.
AXIS IV:   Severity of psychosocial
           stressors:  4 Severe.
           Acute events:  Recent split of parents;
           mom's new fiance & his daughters moved
           in 1 month ago; recent suicidal threat.
           Enduring circumstances:  History
           of suicidal threats; and recently,
           histrionic behavior; family history of
           domestic violence.
AXIS V:    Global Assessment Functioning:
           Current GAF:  #60
           Highest GAF in past year: #75

PROBLEMS:                          #39 Suicidal threat
                                   #34 Family dysfunction

DISCUSSION:                        At the time of interview, Ed does not appear to
                                   be a danger to others. We discussed thoroughly
the possibility of his being a danger to himself, and Ed states that he does not have
suicidal thoughts today. This will continue to be monitored probably with the use of

(continued)

CONFIDENTIAL PATIENT INFORMATION
SEE CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 5328

PROGRESS NOTES

## TEHAMA COUNTY MENTAL HEALTH SERVICES

\ME_____     BROWN, EDWARD D. "SKEETER"    _____          CASE NUMBER_____ MH 9026

INTAKE EVALUATION    (continued)

a no suicide contract, which will be made once and renewed on a weekly basis.   Ed does
not appear to be gravely disabled as a result of a mental disorder at this time.

Date:    4-3-91                             *Denise Rehberg* PSW
                                            Denise Rehberg, PSW

I have read and approved the above with the following changes:

Date:  4/8/91                               *S. A. Cheeseman*
                                            S. A. Cheeseman, M.D.

DMR:eh
4/3/91

C. Hauller, atty - 9-5-91 p/

CONFIDENTIAL PATIENT INFORMATION
SEE CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 5328

TEHAMA COUNTY HEALTH AGENCY                    Annual Update
Mental Health Division                          New Assessment
Crisis Intervention Clinic                      Crisis Intervention        X
     MH Number  _9036_                          Crisis Stabilization

I. PERSONAL

Client _Edward A Brown, Jr_          Date _7-10-96_    Time _3.30pm_

AKA _Ed. "Skater"_                   DOB _11-8-80_  Age _15_  Sex _M_

Address _24950 Kansas Ave. Los Milinas, Ca 96055_ Phone _528-9504_

SS# _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_      Legal Status _Minor_ Marital Status _Single_

Insurance: Medi-Cal ___ Medicare ___ CMSP _____ Other _Blue Cross_

Employer _Student_          Income _$500._ Income Source _mom + step-dad's_
                                                          _work._
Person to Contact in Emergency _karie Schutter_ Relationship _mother_

Address _same_                                 Phone _527-1212_

=============================================================================

1.  Chief Complaint/Presenting Problem/Symptoms/Current Level of
    Functioning:
    _Client refered by probation, released from juvenile_
    _hall today. Was JH for stating a fire has his of_
    _vandalism. (accomplice) Felt depressed while in the hall._
    _Client reports missing his father._

2.  Current Psychotropic Meds (name and location of prescribing
    physician):
    _Ø_

3.  Current Non-psych and Over-the-Counter Meds:
    _Ø_

4.  Psychosocial History, Family/Cultural History, Current Living
    Situation, Education, Employment, Financial Circumstances, Current
    Support System:
    _Client lives with mom, step-dad, + sister Casey (13)._
    _Bio-dad in prison for drug charges, lived with dad_
    _before he went to prison. Has physically fought with_
    _sister. Will attend RBUHS next year, behind in credits._
    _Peter (consistently) considers self a loner._

13.   Crisis Intervention Delivered (Describe if applicable)

_N/A_

14.   Recommendation/Disposition:

_Client + family referred to multi-discip group_

=========================================================================

Assessment Continuation Notes (Indicate Item continued)

15.   Client is a Registered Voter?   Yes____  No_____  Refused Info____

Voter Registration Information Offered/Given____   _minor_
Assisted Completing Voter Registration____

Interviewer Signature/Discipline _Sharon Justine, RSW_   Date _7-10-?_
Co-signature (if necessary) _____   Date _____
MD Co-signature _____   Date _____
   (Medicare/Insurance only)

P:\adfatan\program\csform
01/17/96

Tehama County Mental Health

Client Episode Summary

Confidential Patient Information
See Welfare & Institutions Code 5328

Data Entry Initials [ ]

1. Client Name (Last, First, MI):

*Br Brown, Edward A., Jr.*

2. Client ID#: | M | H | 9 | 0 | 2 | 6 | | | | |

3. Provider Code: | 5 | 2 | 0 | 1 |   4. Sub Code | 1 |

## Episode Opening

5. Episode Opening Date | 0 | 7 | 1 | 0 | 9 | 6 |

6. Legal Status | W | I | 6 | 0 | 0 | 0 |

7. Client Address _2r770 Kansas Ave._ _Los Molinos, Ca._ _96055_        _528-9504_
Street                     City              State        Zip        Phone

8. Referred From _Probation - Sandy Jordan_ _____ Code: | 0 | 0 | 4 | 4 |

9. Diagnoses:

Axis I | 3 | 0 | 9 | . | 4 | ☐  Axis II | V | 7 | 1 | 0 | 9 | ☐  Axis III | | | | | ☐  Axis IV | A | B

Current | 6 | 0 |
Axis V _unknown_
Past Yr | | |

From Line 9 or Line 10, Enter one "P" for Principal Diagnosis and one "S" for Secondary Diagnosis.

10. Additional Diagnoses:  Axis I | 3 | 0 | 5 | 2 | 0 | ☐  Axis II | | | | | ☐  Axis III | | | | |

11. Clinician _Austin_ | 6 | 0 | 6 | 3 |    12. Physician _____

13. Living Situation | A | 2 |    14. Employment Status | 1 | 5 |    15. Admission Hour | | |

16. Authorization to Treat Minor | 1 |    17. Research Item | |    18. Source of Income | 2 | -parents

19. Type of Employment | 5 |    Completed by _Sharron Austin, PSW_ Date _7-10-96_

## Episode Closing

20. Episode Closing Date | 0 | 8 | 0 | 2 | 9 | 6 |

21. Legal Status | W | I | 6 | 0 | 0 | 0 |

22. Client Address _Unknown_
Street                     City              State        Zip        Phone

23. Diagnoses:

Axis I | 3 | 0 | 9 | . | 4 | ☐  Axis II | V | 7 | 1 | 0 | 9 | ☐  Axis III | | | | | ☐  Axis IV | A | B  Axis V | 5 | 0

From Line 23 or Line 24, Enter one "P" for Principal Diagnosis and one "S" for Secondary Diagnosis

24. Additional Diagnoses:  Axis I | 3 | 0 | 5 | 2 | 0 | ☐  Axis II | | | | | ☐  Axis III | | | | |

25. Living Situation | 9 | 9 |    26. Employment Status | 1 | 5 |

27. Referred To _Sandy Jordan_ _____    Code | 0 | 0 | 4 | 4 |

28. Referred To _____    Code | | | | |

29. Preferred Referral _____    Code | | | | |

30. Reason for Discharge | 0 | 5 |    31. Research Item | |

Completed by _Sharron Austin_  DEI  Date _8-2-96_

| DATE (MO/DAY/YEAR) | HRS. MI. | LOC | SERVICE | NOTES: |
|---|---|---|---|---|
| 7-25-96 | 45 | D | A | Met with client's mother + sister in Multi-Family Group. Client chose not to attend group despite my request + the requests of both his mother + probation officers that he be there. Client's family participated in a discuss. about feelings associated with had to. because of somebody else's lie. Client's sister expressed sadness over being treated poorly by others because of thing her dad + brother had done. S.Curtis, Psi |
| 8-2-96 | | O | Discharge | Discharge Note: Client being discharged because he has runaway + per his probation officer when he returns he will be placed in an out-of-state program. ~S. Curtin, PSW |

PROGRESS NOTES

Name Brown, Edward A

Number MH 9026

10/21/93 (Mormston grewas kt

| DATE (MO/DAY/YEAR) | HRS. MI. | LOC | SERVICE | NOTES: |
|---|---|---|---|---|
| `\`-96 | 2 | 00 | O | A | Met with client, his mother + sister who were refused by probation for Multi-Fam. group. Client do difficulty adjusting to Dad being in prison, he lived with Dad prior to his conviction. Client recently released from juvenile hall after tieing a telephone pole on fire. Clien medical necessity. — S Cutter, PS |
| | | | | | It, mother + sister in multi up. Discussed rules of group, length of etc. as well as expectations us of group. Client's mother request with doing things together as a dly. Started talking about trust, what means, what it takes to trust etc. w/ill individual family members to comp trust work sheet. — F Curlin, PS: |
| | | | | | Client, mother + sister attended Multi Family Group. Discussed communication difficulties the family has been faced with. Hooked at benefits of using "d messages" roadblocks to effective communi cation (blaming, not listening, etc.), an what needs to occur in order for client to feel comfortable sharing information within their family — J Cutter, PSW |

Name _____

Number _____



# TEHAMA COUNTY MENTAL HEALTH SERVICES

NAME___BROWN, FDWARD D. (SKEETER)___

PAGE NUMBER_____
CASE NUMBER___MH-9026

## OUTPATIENT DISCHARGE SUMMARY

SERVICE:                          Outpatient
DOB:                             11/08/80
DATE OF ADMISSION:               04/01/91
DATE OF DISCHARGE:               08/28/91

TREATMENT SUMMARY:                Skeeter was removed from counseling prior to the
                                  projected termination date due to the fact that
he moved to live with his father. During the time that Skeeter was in counseling
progress was made on several of the Objectives which were stated in the Outpatient
Treatment Plan.

Regarding Problem #1 which was Suicidal Threats, as stated in Objective 1, Ed was able
to give a narrative of his feelings and the events which led to his suicide attempt.
This was done on several different occasions in the counseling setting and it appeared
to be that Skeeter was effectively working through this issue and there was no evidence
of suicidal ideation during Outpatient therapy.

With regard to Problem #2 which was Family Dysfunction, it appeared that initially,
during counseling, things were getting better at home. This was primarily by report
from mother. However, things were apparently not doing so well as Skeeter, his mother
and sister soon after moved from the home they shared with the mother's boyfriend and
his children back into the home of his maternal grandmother. This had previously been
identified as a much less than ideal situation by Skeeter's mother and she felt it was
not a good place for her and the children. However, this is where she returned, when
her relationship broke-up. It was very shortly after he returned to that setting, that
Skeeter moved to live with his father.

CRITICAL INFORMATION:             As stated above, there was no evidence of suici-
                                  dal ideation during the Outpatient counseling.
sessions. Skeeter was able to discuss that situation adequately and appeared to be
feeling better. He does not appear to be a danger to others, nor is he gravely
disabled as the result of a mental disorder. It appears that the primary problem at
this time, is family dysfunction.

(continued)

**CONFIDENTIAL PATIENT INFORMATION**
SEE CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 5328

## TEHAMA COUNTY MENTAL HEALTH SERVICES

NAME BROWN, EDWARD D. (SKEETER)

PAGE NUMBER____2
CASE NUMBER____MH-9026

### OUTPATIENT DISCHARGE SUMMARY

DIAGNOSIS:

DSM III-R

AXIS I:   309.40 Adjustment disorder with
          mixed disturbance of
          emotions and conduct.
          V61.20 None
AXIS II:  V71.09 None
AXIS III: 18 None
AXIS IV:  Severity of Psycho-social Stressors:
          04-Severe. Acute events:
              Mother split from boyfriend
              and the family relocated back
              to mother's mother's home
              which had previously been
              identified as a less than
              ideal place of residence by
              the mother. Shortly there-
              after Skeeter moved to be
              with his father.
AXIS V:   Global Assessment of Functioning Scale:
          GAF upon admission:    60
          Highest GAF in past year:    75
          Discharge GAF:    65

CONDITION ON DISCHARGE:    #03   Minimal improvement

PROGNOSIS:    Six months:    #03    Fair

              (If family situation stablilizes or
              #01 Guarded if situation does not
              improve.)

              One year: Same as six months.

(continued)

CONFIDENTIAL PATIENT INFORMATION
SEE CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 5328



## TEHAMA COUNTY MENTAL HEALTH SERVICES

NAME_____BROWN, EDWARD D. (SKEETER)_____

PAGE NUMBER_____3_____

CASE NUMBER_____MH-9026_____

OUTPATIENT DISCHARGE SUMMARY

DISPOSITION:                        At the time of discharge it appeared that Skeeter
                                    would    reside   with his maternal  grandmother
mother and sister, however, as stated above, he has now gone to live with his father.
This will apparently entail attending a different school and will be a different
experience for Skeeter. Due to the fact that this family has not been heard from in
approximately four months, this chart will be closed at this time.

_____8|29|91_____
Date

_____
Denise Rehberg, MSW

I have read and approved the above with the following changes:

_____9/3/91_____
Date

_____
S. A. Cheeseman, M.D.

DR:ce
08/29/91

c. Stautler, atty 9-5-91 py

CONFIDENTIAL PATIENT INFORMATION
SEE CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 5328

DATE:

3-8-91  CM- Cts mom stated by phone yesterday she felt a male therapist would be preferable. We discussed this in session today. Skuta stated he would like to talk to me & mom stated "OK, I just want you to be comfortable." Mom stated transportation & scheduling would be a problem for the rest of March so we made a tentative plan that I would be in touch with Kristin Brown who is a school counselor that Skuta has been seeing & will continue to see. Skula indicates good rapport & Mom state the crisis seemed to arise when Kristin was unavailable the week. Skuta made a visit to his Dad. Skuta shows ambivalence re: discontinuing visits w/ Dad. Made reference to not liking it when Dad "pumps me for information". Case will not be opened at this - family, unless Mom re-contacts. It appears Skuta is in need of ongoing counseling on a consistent basis & I advised Mom of this opinion. She state they will continue to receive counseling for Kristin Wilson & may contact Mental Health again at some later date. Skuta appeared cal. & affect was light & positive. Appeared to respond in session. State things are better. Susan Rehburg/JH

PATIENT NAME: _Edward (Skuta) Brown_

FILE NUMBER: _____

CONFIDENTIAL PATIENT INFORMATION

_____ COUNTY MENTAL HEALTH SERVICES

DATE:

4-1-91  A- Ct was seen with mother & then
individually. After thinking about it Mom
has decided to go for weekly counseling for
Ed. Discussed fact that Moms fiancee
Frank & his 2 teenage daughters have recently
moved in with the family. Many changes.
Skeeter went from being oldest to 3rd in order.
Had visitation with Dad over the week-end
Come back saying he wants to live with Dad.
Told Mom "I dont love you & I have no
use for you." Mom put him in room.
Skeeter went out window. Mom had a
neighbor bring him back. Then she whipped
him 2 times with a belt. Later pummeled
his thighs with her hands. CPS report
made 4/1/91 to Jill James. Mom wants
counseling. Agrees to some indiv. &
some family. Possible parenting class.
Opened Clast today.——————— Denise Pihberg M

4-8-91  I- Pich*l Obj* l Guarded re concerning about
rope around neck. Did stay "no, teacher
worried about me" but worried of perplexed
as to why I asked if perhaps it was bcca
of the rope incident Guol with re eye conl
then said yeah probably" (Cont) famr Pihberg M
C. Stauzler, atty 959*1

PATIENT NAME: Brown, Edward (Skip

FILE NUMBER: 7114  9926

CONFIDENTIAL PATIENT INFORMATION                    NATIONAL MENTAL HEALTH SERVICES

TE:                    Obj#2

4-8-91 I (Cont) Denies suicidal ideation ✓ is in
very happy spirits today. During session
was animated & very verbally. & excited
about family move to the country. Had
many happy memories to share from past
Mom enjoyed these memories too. Prob#2
Obj#1 Made a verbal agreement that the
rest of the family will come for Counsel.
as a group in 2 weeks. Obj#2 Td acknowled
feeling possessive of Mom ' I don't want to
share you. I love you more than Kevin
does Mom shared that she remembered
feeling the same way toward her mom
Mom said she quit school after 8th
grade. glad. to work & help support the
family. Followed up with CPS report.
No new incidents. Still committed to
Counseling. Nxt appt. next week — [illegible]

1-15-91 I - Prob#1 Obj#1 Clear discussion today on self
injury. Mom brought up Dads suicide threat.
"I can't go on if you divorce me." Discussed
how that felt to Mom but now she can
let him own his own problem where before
she tried to resolve them. Skirts own
behaviors to manipulate mom (Cont. Donna Osborg MN.
a: Stauller, Atty 9-5-91 PY

PATIENT NAME: Brown, Edward

FILE NUMBER: [illegible]

DATE:
4-15-91  I-(Cont) He did this several times on a
smaller scale during this session eg:
"My teacher says I'm only as smart as a
3 year old" Mom jumped in x began to
argue that he was very bright, Skeeter
clearly felt in control. The other issue
was over self inflicted scratches on
Skeeters arm. Mom expressed anger tha
he would hurt himself. Skeeter said
"You don't care if I get hurt." I then
facilitated a discussion in which Mom
clarified her feelings of anger at being
manipulated by Skeeter. Skeeter resists
initially then began to acknowledge
own feelings to some degree. There
was a palpable lessening of tension.
Obj#2 Same suicidal ideation. Created
about moving to the country. Prob#2 Obj.
Skeeter & Mom prevent. _____ ____ ____
ship work. Obj#2 Feelings identified
by mom & _____ appropriately.
Subject matter. Next appt next wk. _____
1-22-91  I- Prob#1 Obj#1 Rope _____ _____ ____ ___
the ____ for Skeeter. We used it as a spec
board to address self-_____-_____ _____
a. Strailther atty 9-59/91                    Edward ___

PATIENT NAME: _Brown, Skeeter_

FILE NUMBER: _MH  Ed  9026_

DATE:

1-22-91 I (Cont) — Mom & sister joined us for 10 min. Skeeter taught them stress release we discussed. This was empowering for Skeeter & family also will benefit using technique. — Denise Rehburgh?

4-29-91 N/S - Grandmother called to cancel & stated Skeeter has gone to live with his father indefinitely. Will keep chart open for several months — Denise Rehburgh &

8/28/91 Discharge — Nothing has been heard since Skeeter left therapy. At this time the chart will be closed — Denise Rehburgh MW

9-3-91 PC - Mom called. She is attempting to gain custody of Skeeter back from Dad. We discussed using M.H. records. She has a very favorable evaluation from Barbara Sebastian, C.P.S & after our discussion she decided to advise her attorney of these records & let her decide. States if she gets Skeeter back she wants counseling for everyone — D. Rehburgh M

C: Stautter, Atty: 9-5-91 pj

PATIENT NAME: Brown, Edward
FILE NUMBER:
MENTAL HEALTH SERVICES
CONFIDENTIAL PATIENT INFORMATION

CHILDREN'S INTAKE QUESTIONAIRE

Confidential Information

1. Your name: ~~Joanie Brown~~     Relationship to child: _Mother_

2. Child's full name: _Edward Don Brown Jr_

3. Child's date of birth: _11-8-80_

4. Family info
   a. Parents: Mother's name: _Joanie Brown_     Age: _27_

   Father's name: _Edward D Brown Sr_     Age: _28_

   b. Please note the history of any marriages or other significant relationships as well
   as divorces of both parents: _engaged Frank Denning_

   c. Please list brothers' and sisters' names and ages: _Sister Kasie R Brown_
   _9 years old_

5. With whom does the child now live? _Me & his mother Joanie Brown_

   If not living with a parent, please explain:

6. Others who live in the child's present home: _Frank Denning &_
   _his 2 girls Jalean & Michelle Denning 15 ole_
   _years old. & his Sister Kasie_

7. Who referred the child to group? _Christian Wilson from Cormey_

8. Why was the child referred? _Because of his parents Guidance &_
   _it is very depressed._

9. Is there a history in the child's family (parents, grandparents, siblings) of:

   a. Mental illness?        Who?

   b. Trouble with the law?     Who?                   What?

   c. Learning problems?      Who?

   d. Incest?            Who?

   e. Child abuse?         Who?

TCMH SCREENING INFORMATION SHEET

NAME _EDWARD (SKEET) BROWN_ DATE _03-04-91_  PATIENT # _____

CALLER _Tim ARmosino (principal / oliverson )_ (Indicate relationship)   AGE _10_  DOB _11-08-8c_

ADDRESS _1910 McKinley ST., Corning CA 9602/_ PHONE _824-0971_

LIVES WITH:   Spouse ( )   Parents ( )   Self ( )   Other (specify) _Au TThor_
_Fri in Chico_

IN EMERGENCY NOTIFY _824-0988 - LOIS (Grandmother)_

CRISIS:   Yes ( )   No ( ✓ )

MEDI-CAL:   Yes ( ✓ )   No ( )   LEGAL HOLD _____   REFERRED BY _____

PROBLEM AND PERTINENT INFORMATION _CT MADE A STATEMENT indicating_
_suicidal ideation_

SERVICE REQUESTED _Evaluation · and intervention_ –

DATE

_03-04-91_ (Per note) Tim Armosino (Principal Oliveton School) made
a P/C to M.H. indicating a ref made to have a 1[?]yold
student evaluated. Ct made a suicidal statement and
when interviewed by school psychologist (John Hill) the
ct was described as willing or unwilling to make a clear
statement re: impulse control. Ct was then seen quietly
[?] mother so [?] mother also present. Ct was able
to express that he is not suicidal and able compable
cf controlling impulse. Ct further was able to identify
issues that would make a[?]ing on suicidal impulse
not an option. Ct identified he would not want to
lose his mother - father, pet, etc. (Per note cont.
[signature] J. m[?] R.

DATE:

13-cc-91 (Per note Cont.) Ct. expressed good motivation to control
impulses related to suicidal ideation. The Ct. stated he
of 1 suicidal gesture when he put a rope around his
neck. He thought about thinning it over a tree limb
but the action took place in the presence of a father
who he said stopped him. Ct. shows a pattern of ambion
related to acting on suicidal impulses but there is a sense
that there is manipulative benefit to this behavior. His
mother & father are separated (as of some ago) and
in the final stages of divorce. The living arrangement has
changed for the Ct. who now lives in a small house in
town c his mother & sister. Ct. presents this is disturbing to
him. There is also financial stress and a personal
source of emotional insecurity. The mother has in that
a new relationship and is also talking about starting
work or school. The ct. has been increasingly more dep-
ed and is identified as seeking more personal contr
from mother. Ct. also expressed a wish that his
mother & father could get back together. Brother has
been physically abusive to the ct in the past and he
was reported to CPS. by a counseling intern at
Chico union School. No action was taken because the
brother was living out of the home and continued to
reside in Chico. Ct. symptoms also include pro-
sleep and little interest to read the network (Per note c
Ha Ground de.

PATIENT NAME:   Edward Skeet Brown

FILE NUMBER:

ATE:

03-04-9 (Pn note cont.) Ct made reference to auditory hallucinations and visual hallucinations but there were no previous of grossly disorganized behavior or significant loss of time with psychotic symptoms. Mother shares she also has the same experiences as her her brother. There is, however, no hx of TX intervention or increase by a manager symptoms. Mother is comfortable that this is a bus condition, trait that has become a manageable part of life. The depersonalization symptoms description appears to present itself as symptoms indicative of schizotypal personality. Ct has also had conduct related difficulty in school but it is difficult to sort out the dynamics of emotional trauma of divorce in the family contributing to this or possible attention deficit hyperactivity disorder. The case was discussed at the M.H. screener with a recommendation for eval. Pt. Ct involvement in out-pt therapy. Ct mother is receptive to this and the ct expressed no specific plan of intervention by mother and discussion with the undersigned and client then school back place at ct potential to not an suicidal ideation. — Alex Command Rn

PATIENT NAME: _____

FILE NUMBER: _____

TEHAMA COUNTY MENTAL HEALTH SERVICES
OUTPATIENT PROGRESS NOTES

PATIENT INFORMATION

CASE 0 *MH 902*
(leave
TODAY'S DATE 4

PATIENT _Brown_ , _Edward_ _d_
       (last)          (first)          (middle)

SEX _M_       BIRTHDATE _11-8-80_
                        (month) (day) (year)

OTHER NAME OR NAMES (old files?) _no_

ADDRESS _1910 McKinley_ · _Corning_ _CA 96021_
        (street)                (city)              (zip)

HOME PHONE 0 _824-0971_              EMERGENCY PHONE 0

SOCIAL SECURITY NUMBER 0 _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_

HIGHEST GRADE IN SCHOOL COMPLETED _03_

OCCUPATION _14_                    IF WORKING 0 OF HOURS WORKED PER

UNEMPLOYED? _____ · SEEKING WORK? _____

RETIRED? _____       DISABLED? _____

MOTHER'S MAIDEN NAME _Steen_

MARITAL STATUS _S_                 SPOUSE'S NAME _____

RACE (white, Indian, Mexican, etc.?) _____

MEDI-CAL 0 _____       MEDICARE 0 _____

NEAREST LIVING RELATIVE:  NAME _Brown, France (Ms)_

                          ADDRESS _same_

                          PHONE 0 _____

OTHER INSURANCE

INSURED NAME          RELATIONSHIP          POLICY 0          C

EXHIBIT E

BUTTE COUNTY MENTAL HEALTH

FEB 2 3 1998

cc:   Business Office
      Butte County Mental Health

RECEIVED - Chico O.P.

CHIEF COMPLAINT:                          Ingestion.

HISTORY OF PRESENT ILLNESS:         This is a 17-year-old male who
ate a teaspoon of Decon Rat Poison in a suicide attempt.   The
patient states he was distraught over "personal problems."   The
patient took LSD last night.   He had thoughts of homosexuality.
Today he could not deal with these feelings and decided to try to
kill himself.   The patient states he was trying to kill himself.
The patient vomited the rat poison en route to the hospital.   The
vomitus has been recovered.   He denies any other ingestions.   He
denies previous history of suicide.

PAST MEDICAL HISTORY:                     Denied.

CURRENT MEDICATIONS:                      None.

ALLERGIES:                                None.

FAMILY HISTORY:                           Noncontributory.

SOCIAL HISTORY:                           He is a student.   He lives in
Chico.

REVIEW OF SYSTEMS:                        Noncontributory.

PHYSICAL EXAMINATION:
VITAL SIGNS:                              Temp 36.4°, heart rate 83,
respirations 18, blood pressure 146/94.

GENERAL APPEARANCE:                       Awake, alert, in no distress.

HEENT:                                    Pupils are equal, round and
react to light.   Mucosa is moist.

NECK:                                     Supple.

CHEST:                                    Clear.

HEART:                                    Regular rate and rhythm
without murmur.

ABDOMEN:                                  Active bowel sounds.   Soft,

continued

                                          BROWN, EDWARD
                                          ROOM #:  ER
                                          MR #:  331421
**ENLOE HOSPITAL**                        DATE SEEN IN ER: 02/17/98
                                          EMERGENCY ROOM REPORT
**EMERGENCY DEPARTMENT REPORT**           MICHAEL DISANO, M.D.

State of California—Health and Welfare Agency
Case 2:05-cv-01195-LKK-DAD Document 24 Filed 01/08/10 Page 120 of 138
Department of Mental Health

**APPLICATION FOR 72-HOUR DETENTION**
**FOR EVALUATION AND TREATMENT**

DETAINMENT ADVISEMENT

*Confidential Client/Patient Information*
See California W & I Code Section 5328

MH 302 (7/90)

My name is _____
I am a (Peace Officer, etc.) with (Name of Agency).
You are not under criminal arrest, but I am taking you
for examination by mental health professionals at
(Name of Facility).

W & I Code, Section 5157, requires that each person when first
detained for psychiatric evaluation be given certain specific information
orally, and a record be kept of the advisement by the evaluating facility.

You will be told your rights by the mental health staff.
If taken into custody at his or her residence, the per-
son shall also be told the following information in
substantially the following form:

☑ **Advisement Complete**          ☐ **Advisement Incomplete**

Good Cause for Incomplete Advisement

You may bring a few personal items with you which I
will have to approve. You can make a phone call
and/or leave a note to tell your friends and/or family
where you have been taken.

| Advisement Completed By | Position | Date |
|---|---|---|
| DISANO | MD | 2/17/95 |

To _____ BUMH

Application is hereby made for the admission of _____ Edward Bowen _____

residing at _____ 1366163 A Hug 99E, Chico _____, California, for
72-hour treatment and evaluation pursuant to Section 5150, (adult) et seq. or Section 5585 et seq. (minor), of the Welfare
and Institutions Code. If a minor, to the best of my knowledge, the legally responsible party appears to be/is: (Circle one)
Parent; Legal Guardian; Juvenile Court as a WIC 300; Juvenile Court as a WIC 601/602; Conservator. If known, provide
names, address and telephone number: _____

* * * * * * * * * *

The above person's condition was called to my attention under the following circumstances: (See reverse side for definitions)

BEBA Ambulance transport to ED
s/p Alleged ingeshion. Vomited
rat poison in Ambulance

The following information has been established: (Please give sufficiently detailed information to support the belief that the
person for whom evaluation and treatment is sought is in fact a danger to others, a danger to himself/herself and/or gravely
disabled.)
Pt ate one TSp of rat poison
(De Con) in suicide attempt.

Based upon the above information it appears that there is probable cause to believe that said person is, as a result of
mental disorder:

☑ **A danger to himself/herself.** ☐ **A danger to others** ☐ **Gravely disabled adult.** ☐ **Gravely disabled minor.**

| Signature title and badge number of peace officer, member of attending staff of evaluation facility or person designated by county. | Date 2/17/95 | Phone |
|---|---|---|
| | Time 1cc 30 | |

| Name of Law Enforcement Agency or Evaluation Facility/Person | Address of Law Enforcement Agency of Evaluation Facility/Person |
|---|---|
| Enloe | |

☐ Weapon was confiscated and detained person notified of procedure for return of weapon pursuant to W & I Code Section 8102
(officer/unit & phone #) _____

**NOTIFICATIONS TO BE PROVIDED TO LAW ENFORCEMENT AGENCY**

NOTIFICATION OF PERSON'S RELEASE FROM AN EVALUATION AND TREATMENT FACILITY IS REQUESTED BY THE REFERRING PEACE OFFICER BECAUSE:

☐ Person has been referred under circumstances in which criminal charges might be filed pursuant to W & I Code Sections 5152.1 and 5152.2
Notify (officer/unit & phone #) _____

☐ Weapon was confiscated pursuant to W & I Code Section 8102.
Notify (officer/unit & phone #) _____

SEE REVERSE SIDE FOR INSTRUCTIONS

**(Circle one)**

**INFORMATION ON:   ADOLESCENTS / INVALID 5150's / WALK-IN EVALS**

Date: _2/17/98_ _____ Time In: _4:46_ ___ Time Out: _7pm_

Client: _Ed Brown_ _____ Phone # _893-85-45_

Address: _13663 A Hwy 99 C chico_ _____

Age: _17_ DOB: _11-8-80_ ___ SS# _____

Insurance or Medical# (make copy) _____

Responsible Party: _Ed Brown_ _____ Relation: _Father_

Destination: _____ Phone # _____

Hospital contact: _____ M.D.: _____

Transported by: _____ Authorized by: _____

**MAKE COPIES OF 5150, ER PAPERWORK, AND ANY OTHER INFORMATION**

ADDITIONAL NOTES: _Came in and did a 5150_
_a assessment on ED. ED came in on_
_a 5150 Due to he took rate paisioning._
_After doing assesment Ed was regretful_
_about doing it does not want to die._
_Ed had a bad acid trip. E did a_
_suicide contract & dad & stepmom_
_will do 24hr watch with Ed. Gave_
_Ed phone no#'s he could call when in_
_need. Dad will follow through with_
_counseling through there private_
_insurance. It seems Ed is not_
_currently suicide. My recommendation is for_
_Ed to go home with dad & follow through with_
_resources for counseling for Ed. Dad will watch Ed for_
_the next few days. Ann Allen Amff Aereprogram_

**MY SUICIDE PREVENTION P**

**DESERVE TO LIVE BECAUSE:** My Family lDues me & I Love Them.
nd Becouse I hAue A Bright Furture AHEAd oF me!

**WHEN I AM FEELING SUICIDAL, I WILL:** TAlk To somebody, like my
DAD or that Hot Line

**WILL NOT:** USe Orugs Any more & IF I Feel like I want
to I will cAll that Hot liive & talk to them
I will not Attempt to kill my self!

**I WILL CALL** HERE Ovocram **AT** 1800-371-4373, wednesday between
noo 1pm and on friday sunday Tuesday. ~~IF I CAN'T GET THROUGH, I~~
**WILL CALL** my grandma **AT** 343-0986 ~~AS MY BACK-UP.~~
then I nied to talk as a alternate.

**I CAN REACH AN ON-CALL HERE CASEWORKER 24 HOURS A DAY AT** 891-2794 **OR** 1-800-371-4373.

**I PROMISE TO CALL HERE IF I FEEL LIKE HURTING MYSELF** Dad will do 24week supron
for the next day.

**CLIENT** El Brain

**CASEWORKER**

**RHY MIS**  **YOUTH PROFILE**  OMB NO. 0970-0123

## PART I: YOUTH DEMOGRAPHICS

For each youth served by the program, complete this form at, or soon after, intake. It records basic information about the youth and his or her household. To complete the form, circle the code or place check marks in the boxes below that best answer each question. For questions without coded responses, write the appropriate responses in the space provided.

### YOUTH CHARACTERISTICS

1. Agency ID: `3465`  2. Youth ID: 

3. Intake Date: `2 / 17 / 98`  4. Date of Birth: `11 / 8 / 80`

5. Gender: (Circle one)   Female   (Male)

6. How does the youth describe himself or herself using these census categories? (Circle one)

    a. American Indian or Alaskan Native
    b. Asian or Pacific Islander
    c. Black, not of Hispanic Origin
    d. Hispanic
    (e.) White, not of Hispanic Origin

7a. Would services be delivered more effectively in a language other than English?  (Circle one)   Yes      No

b. In what language(s) does the youth communicate?   (Check all that apply)

    ☐ An American Indian or Alaskan Native Language
    ☐ An Asian or Pacific Island Language
    ☒ English
    ☐ Sign
    ☐ Spanish
    ☐ Other

8. Is the youth a refugee?   (Circle one)   Yes   (No)

9. Marital Status:   (Circle one)

    (a.) Single, Never Married
    b. Single, Living with Partner
    c. Married
    d. Other

10. Is the youth pregnant, or is a female pregnant by youth?   (Circle one)

    a. Yes
    (b.) No
    c. Do Not Know

11. How many children does the youth have?   `∅`

p. 6                    LST0 968              HERE Program              d11:E0 20 L1 unr

0970-0123

12. School Program Last Attended: (Circle one)

a. Elem/Middle/High School
b. GED
c. Vocational
d. Special Education
e. Alternative/Homebound Program
f. Post-Secondary
g. College
h. Not Applicable
i. Do Not Know

13. School Status: (Circle one)

a. Attending School Regularly
b. Graduated High School
c. Completed GED
d. Attending School Irregularly/Extended Truancy
e. Dropped Out
f. Suspended
g. Expelled
h. School Not in Session
i. Do Not Know

14. Last Grade Completed: (Circle one)

a. Grade 5 or less
b. Grade 6
c. Grade 7
d. Grade 8
e. Grade 9
f. Grade 10
g. Grade 11
h. Grade 12
i. 1-3 Years of College
j. 4 or More Years of College
k. Other Post-Secondary Training
l. School Program Not Graded

## LIVING SITUATION:

15. Youth's Legal Residence: a. County _Butte_ b. Zip _95973_ - _____

16. Estimate the number of living situations in which youth has resided in the last month: _1_

17. Last Living Situation of Youth: (Circle one)

a. Parent/Legal Guardian Home
b. other Parent's Home
c. Relative's Home
d. Friend's Home
e. Other Adult's Home
f. Foster Home
g. Group Home
h. Transitional Living Program
i. Independent Living Program
j. Job Corps
k. Basic Center
l. Homeless Family Center
m. Living Independently
n. On the Run
o. On the Street
p. In Squat
q. Educational Institute
r. Drug Treatment Center
s. Residential Treatment
t. Mental Hospital
u. Correctional Institute/ Detention Center
v. Other Institution
w. Other Temporary Shelter
x. Military
y. Other
z. Do Not Know

18. Primary Living Situation for Past Year: (Circle one)

a. Parent/Legal Guardian Home
b. other Parent's Home
c. Relative's Home
d. Friend's Home
e. Other Adult's Home
f. Foster Home
g. Group Home
h. Transitional Living Program
i. Independent Living Program
j. Job Corps
k. Basic Center
l. Homeless Family Center
m. Living Independently
n. On the Run
o. On the Street
p. In Squat
q. Educational Institute
r. Drug Treatment Center
s. Residential Treatment
t. Mental Hospital
u. Correctional Institute/ Detention Center
v. Other Institution
w. Other Temporary Shelter .
x. Military
y. Other
z. Do Not Know

RHY Case 2:05-cv-01195-LKK-DAD Document 34 Filed 01/08/10 Page 125 of 138
YOUTH PROFILE

OMB NO: 0970-0123

## PART I: YOUTH DEMOGRAPHICS (continued)

### HOUSEHOLD SITUATION:

19a. Employment Status of the Youth: (Circle one)

a. Full Time (Over 35 Hours)
b. Part Time
c. Volunteer
d. Seasonal/Sporadic
e. Not Employed, Looking for work
f. Not Employed
g. Never Employed
h. Do Not Know

b. Is the youth's father figure employed? (Circle one)

a. Yes
b. No
c. Do Not Know
d. Not Applicable

c. Is the youth's mother figure employed? (Circle one)

a. Yes
b. No
c. Do Not Know
d. Not Applicable

d. Is the youth's spouse/partner employed? (Circle one)

a. Yes
b. No
c. Do Not Know
d. Not Applicable

20. Have any of the youth's household members run away or been thrown away? (Circle one)

a. Yes
b. No
c. Do Not Know
d. Not Applicable

21. Youth's Household Members: **PLACE A NUMBER** in the box to indicate the quantity of each member type that resides in the youth's household.

| HOUSEHOLD MEMBER TYPE | |
|---|---|
| **FEMALE** | **MALE** |
| ☑ Biological Mother | ☑ Biological Father |
| ☐ Adoptive Mother | ☐ Adoptive Father |
| ☑ Step-Mother | ☐ Step-Father |
| ☐ Foster Mother | ☐ Foster Father |
| ☐ Parent's Partner | ☐ Parent's Partner |
| ☐ Youth's Spouse/Partner | ☐ Youth's Spouse/Partner |
| ☐ Aunt | ☐ Uncle |
| ☐ Grandmother | ☐ Grandfather |
| ☐ Sister | ☐ Brother |
| ☐ Step/Half-Sister | ☐ Step/Half-Brother |
| ☐ Youth's Daughter | ☐ Youth's Son |
| ☐ Other: Relative | ☐ Other: Relative |
| ☐ Other: Non-Relative | ☐ Other: Non-Relative |

| **RHY MIS** | **YOUTH PROFILE** | **OMB NO: 0970-0123** |
|---|---|---|

## PART I: YOUTH DEMOGRAPHICS (continued)

22a. Is youth and/or someone in the household receiving unearned income?

> a. Yes    b. No    c. Do Not Know    d. Not Applicable

b. If yes, what type of unearned income? (Check all that apply)

**A.  Income Maintenance**
- ☐ Foster Care
- ☐ Supplemental Security Income
- ☐ AFDC
- ☐ Welfare (not AFDC)
- ☐ Unemployment Compensation
- ☐ State Allowances
- ☐ Other

**B.  Housing Services**
- ☐ Temporary Housing/Shelter
- ☐ Federal Low-Income
- ☐ Other Low-Income Housing
- ☐ Other

**C.  Nutritional Assistance**
- ☐ Women, Infants, and Children
- ☐ Food Stamps
- ☐ Other

**D.  Medical Assistance**
- ☐ Medicaid
- ☐ Medicare
- ☐ State Program for Disease/Disabilities
- ☐ Other

**E.  Community Center**
- ☐ Religious Affiliation
- ☐ Other

23. Who are the youth's legal guardians?    (Circle one **or two**, as applicable)

**FEMALE**
- a. Biological Mother
- b. Adoptive Mother
- c. Step-Mother
- d. Foster Mother
- e. Parent's Partner
- f. Youth's Spouse/Partner
- g. Aunt
- h. Grandmother
- i. Sister
- j. Other

**Male**
- k. Biological Father
- l. Adoptive Father
- m. Step-Father
- n. Foster Father
- o. Parent's Partner
- p. Youth's Spouse/Partner
- q. Uncle
- r. Grandfather
- s. Brother
- t. Other

**OTHER**
- u. Child Welfare/DSS
- v. Juvenile Justice/DJS
- w. Self
- x. Do Not Know

### REFERRAL:

24. Who referred the youth to the agency? (Circle one)

- a. Self Referral
- b. Parent's/Legal Guardian
- c. Foster Parent
- d. Other Relative
- e. Other Youth
- f. Other Adult
- g. Child Welfare/CPS
- h. Safe Place
- i. Law Enforcement/Police
- j. Juvenile Justice

- k. School Staff
- l. Street Outreach
- m. Religious Organization
- n. Other Agency Program
- o. Other Youth Services Agency
- p. Other Organization
- q. National Switchboard
- r. Other Hotline
- s. Do Not Know

| RHY MIS | YOUTH PROFILE | OMB NO: 0970-0123 |

## PART I: YOUTH DEMOGRAPHICS (continued)

REFERRAL (continued):

25.  Where did the youth hear about agency?    (Check all that apply)

| ☐ Referral Source (Item 24) | ☐ Street Outreach |
| ☐ Public Media | ☐ Public Presentations |
| ☐ Other Youth | ☐ Other Forms of Promotional Materials |
| ☐ School | ☒ Other |

### RUNAWAY AND HOMELESS YOUTH STATUS:

26.  Status of youth at intake:    (Circle one)

| a.) At Home | e.  Emancipated |
| b.  Runaway | f.  Juvenile Justice Placement |
| c.  Throwaway | g.  Child Welfare Placement |
| d.  Homeless | h.  Other |

NOTE:  If the youth is not currently runaway, throwaway, or homeless, skip to Question 30.

27.  How long has the youth been a runaway, throwaway or homeless?  (Circle one)

| a.  Overnight | g.  22-28 days |
| b.  1 day | h.  29-56 days |
| c.  2-4 days | i.  More than 56 days |
| d.  5-7 days | j.  Do Not Know |
| e.  8-14 days | k.  Not Applicable |
| f.  15-21 days | |

28.  Distance of Household from Program:    (Circle one)

| a.  Less than 1 Mile | e.  51-100 Miles |
| b.  1-10 Miles | f.  More than 100 Miles |
| c.  11-20 Miles | g.  Not Applicable |
| d.  21-50 Miles | |

29.  Location of Household Relative to the Program:    (Circle one)

| a.  In same Community | e.  In Different State |
| b.  In Same Metropolitan Area | f.  In Different Country |
| c.  In Same Rural Community | g.  Not Applicable |
| d.  Elsewhere in Same State | |

30.  Previous Runaway Information:

a.  How many times has the youth runaway?

b.  Of these runaway episodes, how many resulted in receipt of services from this agency?

c.  Of these runaway episodes, how many resulted in receipt of services from another agency?

| **RHY MIS** | **YOUTH PROFILE** | OMB NO: 0970-0123 |
| --- | --- | --- |

## PART II: OPTIONAL CONTACT INFORMATION

This form is provided to allow service providers to record important identifying information and contacts for the youth being served. This information is optional and will NOT be included with the quarterly data submission.

Agency ID: [                    ]     Youth ID: [                ]     Intake Date: [    /    /    ]

### YOUTH'S INFORMATION

1. Youth's Name: _____     Alias Name: _____

   Address: _____

   City: _____     State: _____     Zip Code: _____ - _____

   County: _____

   Telephone No.: _____

### SCHOOL INFORMATION

2. School Name: _____

   Address: _____

   City: _____     State: _____     Zip Code: _____ - _____

   County: _____

   Telephone No.: _____     Fax No.: _____

### OPTIONAL IDENTIFICATION NUMBERS

3. Case No.: _____     4. Social Security No: _____

5. Medicaid No.: _____     6. CPS No.: _____

7. Other (specify): _____
   #_____     #_____

### HEALTH INSURANCE INFORMATION

8. Insurance Company: _____

   Insurance No.: _____     Group No.: _____     Telephone No: _____

## PART III: YOUTH'S ISSUES

This form is designed to record information about issues facing runaway and homeless youth. The form should be filled out by a staff member at intake after meeting with the youth and possibly the family. The form should be reviewed and updated at exit or at three month intervals following with the intake date. This review and update will ensure that any additional insight into the youth's problems gained during his or her services will be recorded.

1. Agency ID: ⬜ 3✓/65

2. Youth ID: ⬜

3. Intake Date: ⬜ 2 / 17 / 98

4. Issues presented by Youth: (Check all that apply) NOTE: A response under each category is not necessary. The responses should reflect the youth's and staff members' perceptions.

### A. HOUSEHOLD DYNAMICS:
- ☒ Relationship with Father Figure
- ☒ Relationship with Mother Figure
- ☒ Relationship with Parent Partner
- ☒ Relationship between Parent Figures
- ☐ Relationship with Spouse/Partner
- ☐ Relationship with Foster/Group Home Member
- ☐ Relationship with Other Household Member
- ☐ No Parental Figure
- ☐ Youth Unsupervised
- ☐ Divorced Family
- ☐ Blended Family
- ☐ Youth Wants to Live with Other Parent
- ☐ Other

### B. HOUSING ISSUES:
- ☐ Youth Homeless
- ☐ Family Homeless
- ☐ Youth Rejected From Homeless Shelter
- ☐ Custody Change
- ☒ Chose to Leave Previous Residence
- ☐ Forced to Leave Previous Residence
- ☐ Legally Evicted From Previous Residence
- ☐ Other

### C. SCHOOL/EDUCATION ISSUES:
- ☐ Bad Grades
- ☐ Illiteracy
- ☐ Learning Disability
- ☐ Cannot Get Along with Teachers
- ☐ Poor School Attendance/Truancy
- ☐ Dropped Out
- ☐ Suspended
- ☐ Expelled
- ☒ Other

### D. PSYCHOLOGICAL ISSUES:
- ☒ Youth Depressed
- ☒ Youth Suicidal
- ☒ Poor Self Image
- ☐ Youth's Sexuality/Behavior
- ☐ Youth's Sexual Orientation
- ☐ Parent Figure's Sexuality/Behavior
- ☐ Parent Figure's Sexual Orientation
- ☐ Searching for Biological Parent
- ☐ Racial/Ethnic Identity
- ☐ Loss and Grief Issues of Youth
- ☐ Abandonment
- ☐ Suicidal Friend(s) of Youth
- ☐ Suicidal Family Member(s)
- ☐ Witnessed Violent Crime
- ☐ Crime Victim
- ☐ Mental Health Problem of Family Member
- ☐ Other

### E. HEALTH ISSUES:
- ☐ Youth Has/Suspects Sexually Transmitted Disease
- ☐ Youth Has/Suspects HIV/AIDS Infection
- ☐ Family Planning
- ☐ Pregnancy
- ☐ Eating Disorder
- ☐ Youth Physically Challenged
- ☐ Youth Not Appropriately Using Medication
- ☐ Health Problem of Family Member
- ☐ Other Chronic Health Problem of Youth
- ☐ Other Current Health Problem of Youth

### F. YOUTH HAVING TROUBLE GETTING SERVICES:
- ☐ Child Protective Services
- ☐ Social Services
- ☐ Alcohol and Other Drug Treatment Program
- ☐ Day Care
- ☐ Education Program
- ☐ Other

## PART III: YOUTH'S ISSUES (continued)

**G. PHYSICAL ABUSE/ASSAULT:**
- ☐ By Father Figure
- ☐ By Mother Figure
- ☐ By Parent's Partner
- ☐ By Spouse/Partner
- ☐ By Foster/Group Home Member
- ☐ By Other Household Member
- ☐ By Other Non-Household Member
- ☐ Domestic Violence
- ☐ Youth Assaulting Other
- ☐ Other

**H. SEXUAL ABUSE/ASSAULT:**
- ☐ By Father Figure
- ☐ By Mother Figure
- ☐ By Parent's Partner
- ☐ By Spouse/Partner
- ☐ By Foster/Group Home Member
- ☐ By Other Household Member
- ☐ By Other Non-Household Member
- ☐ Youth Assaulting Other
- ☐ Other

**I. EMOTIONAL ABUSE:**
- ☐ By Father Figure
- ☒ By Mother Figure
- ☐ By Parent's Partner
- ☐ By Spouse/Partner
- ☐ By Foster/Group Home Member
- ☐ By Other Household Member
- ☐ By Other Non-Household Member
- ☐ Youth Abusing Household Member
- ☐ Other

**J. ALCOHOL AND OTHER DRUG ABUSE:**
- ☐ Substance Abuse by Household Member
- ☐ Substance Abuse by Spouse/Partner
- ☒ Substance Abuse by Youth
- ☐ Other

**K. SOCIALIZATION ISSUES:**
- ☐ Lack of Social Skills
- ☐ Problem With Peers

**K. SOCIALIZATION ISSUES:(con't)**
- ☐ Violent Youth Behavior
- ☐ Gang Involvement by Youth
- ☐ Cult Involvement
- ☐ Survival Sex
- ☐ Prostitution
- ☐ Selling Drugs
- ☐ Other

**L. NEGLECT:**
- ☐ By Father Figure
- ☐ By Mother Figure
- ☐ By Parent's Partner
- ☐ By Spouse/Partner
- ☒ By Foster/Group Home Member
- ☐ By Other Household Member
- ☐ Youth Neglecting Child
- ☐ Youth Neglecting Spouse/Partner
- ☐ Other

**M. INVOLVEMENT WITH JUSTICE SYSTEM:**
- ☐ Youth Charged with Misdemeanor
- ☐ Youth Charged with Felony
- ☐ Alcohol or Other Drug
  Possession/Distribution (Youth)
- ☐ Drug Possession/Distribution (Parent Figure)
- ☐ Youth on Probation/Suspended Sentence
- ☐ Status Offense
- ☐ Use of Guns/Weapons
- ☐ Youth on Parole
- ☐ Youth in Need of Supervision
- ☐ Household Member Involvement
- ☐ Spouse/Partner
- ☐ Immigration/Naturalization
- ☐ Other

**N. UNEMPLOYMENT:**
- ☒ Father Figure
- ☐ Mother Figure
- ☐ Parent's Partner
- ☐ Spouse/Partner
- ☐ Youth Unemployment
- ☐ Other

5a. Has the youth contemplated suicide? (Circle one) (Yes) No — If Yes:

b. Estimate the number of times youth has attempted suicide (Enter zero if none): ☐☐

c. Number of times the youth has been hospitalized after suicide attempts (Enter zero if none): ⟨0⟩

| **RHY MIS** | **YOUTH PROFILE** | OMB NO: 0970-0123 |

## PART IV: ASSESSMENTS: ATOD INFORMATION (continued)

8. How Was the Youth First Influenced to Use:

|  | Never Tried | Parent Figures | Other Household Member | Friends | Through Selling It | Other |
|---|---|---|---|---|---|---|
| A) Alcohol | ☐ | ☑ | ☐ | ☒ | ☐ | ☐ |
| B) Drugs | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |

9. Household Members' Substance Use:

|  | Drug Use | | | Alcohol Abuse | | |
|---|---|---|---|---|---|---|
|  | Yes | No | N/A | Yes | No | N/A |
| A) Mother Figure | ☐ | ☑ | ☐ | ☑ | ☐ | ☐ |
| B) Father Figure | ☐ | ☑ | ☐ | ☑ | ☐ | ☐ |
| C) Spouse/Partner | ☐ | ☑ | ☐ | ☐ | ☑ | ☐ |
| D) Other Significant Person | ☐ | ☑ | ☐ | ☐ | ☑ | ☐ |

| **RHY MIS** | **YOUTH PROFILE** | OMB NO: 0970-0123 |
|---|---|---|

## PART V: SERVICES TO YOUTH

Part V, Services to Youth, records information on services provided to youth either directly or through referral while the youth is on active caseload. One form will be completed for each program in which the youth has been admitted. A staff member should complete this form at the youth's exit from each program.

1. Agency ID:   3416

2. Youth ID:   ——

3. Intake Date:   2  / 17 / 98

4. Other individuals Participating in Services: **PLACE A NUMBER** in the Box to indicate the quantity of each person participating in services.

| **FEMALE** | **MALE** |
|---|---|
| Biological Mother | ☒ Biological Father |
| Adoptive Mother | Adoptive Father |
| ☒ Step-Mother | Step-Mother |
| Foster Mother | Foster Mother |
| Parent's Partner | Parent's Partner |
| Youth's Spouse/Partner | Youth's Spouse/Partner |
| Aunt | Uncle |
| ☒ Grandmother | Grandfather |
| Sister | Brother |
| Step/Half-Sister | Step/Half-Brother |
| Youth's Daughter | Youth's Son |
| Other Relative | Other Relative |
| Non-Relative | Non-Relative |

5. Primary Method of Payment Services: (Circle One)

a. No Charge
b. Youth/Youth's Family
c. Social Welfare Agency
d. Juvenile Justice Agency
e. Other

Case 2:05-cv-01105-LKK-DAD Document 74 Filed 01/08/10 Page 133 of 138

## PART V: SERVICES TO YOUTH (continued)

6. Services Received by Youth: check all that apply. Leave blank if service was not received by the youth. It is not necessary to provide a response under each category. Categories A and B provide space to record number of hours of service received.

### A. Counseling/Therapy

| | This Agency | Coordinating Agency | Referral Made, Services Provided | Referral Made, Status Unknown | Other | Enter Service Hours |
|---|---|---|---|---|---|---|
| Crisis Intervention | ☒ | ☐ | ☐ | ☐ | ☐ | 3 |
| Individual (Youth) | ☐ | ☐ | ☐ | ☒ | ☐ | |
| Individual (Parent) | ☐ | ☐ | ☐ | ☒ | ☐ | |
| Family | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Home-Based | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Group (Youth) | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Group (Parent) | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Outdoor Adventure/Challenge | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Peer (Youth) | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Expressive/Art | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Mediation | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Other | ☐ | ☐ | ☐ | ☐ | ☐ | |

### B. Youth Education

| | This Agency | Coordinating Agency | Referral Made, Services Provided | Referral Made, Status Unknown | Other | Enter Service Hours |
|---|---|---|---|---|---|---|
| Assessment | ☒ | ☐ | ☐ | ☐ | ☐ | |
| Tutoring | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Alternative Education | ☐ | ☐ | ☐ | ☐ | ☐ | |
| GED Prep / Test | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Vocational Training | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Other | ☐ | ☐ | ☐ | ☐ | ☐ | |

### C. Life Skills Training

Estimated Hours Service: 3

| | This Agency Formal | This Agency Informal | Coordinating Agency | Referral Made, Services Provided | Referral Made, Status Unknown | Other |
|---|---|---|---|---|---|---|
| Communication Skills | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| Assertiveness | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| Conflict Resolution | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| Goal Setting / Life Planning | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Budgeting | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Employment | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Consumerism | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Hygiene | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Sex Education | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Parenting Skills | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Nutrition | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Leisure Skills | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Household Management | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

| RHY MIS | YOUTH PROFILE | | OMB NO: 0970-0123 |
|---------|---------------|--|-------------------|

## PART V: SERVICES TO YOUTH (continued)

6. Services Received by Youth (Continued):   (Check all that apply)

| | This Agency | Coordinating Agency | Referral Made, Services Provided | Referral Made, Status Unknown | Other |
|---|---|---|---|---|---|
| **D. Phone Services** | | | | | |
| Crisis Counseling | ☑ | ☐ | ☐ | ☐ | ☐ |
| Information and Referral | ☑ | ☐ | ☐ | ☐ | ☐ |
| Advocacy | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☐ | ☐ |
| **E. Basic Support Services** | | | | | |
| Food | ☐ | ☐ | ☐ | ☐ | ☐ |
| Clothing | ☐ | ☐ | ☐ | ☐ | ☐ |
| Emergency Shelter | ☐ | ☐ | ☐ | ☐ | ☐ |
| Transportation | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☐ | ☐ |
| **F. Health Care** | | | | | |
| General Medical | ☐ | ☐ | ☐ | ☐ | ☐ |
| Dental | ☐ | ☐ | ☐ | ☐ | ☐ |
| Psychological or Psychiatric | ☐ | ☐ | ☐ | ☐ | ☐ |
| Substance Abuse Assessment | ☑ | ☐ | ☐ | ☐ | ☐ |
| Alcohol and Other Drug Treatment | ☐ | ☐ | ☐ | ● | ☐ |
| Eating Disorder | ☐ | ☐ | ☐ | ☐ | ☐ |
| Gynecological | ☐ | ☐ | ☐ | ☐ | ☐ |
| Pre-Natal | ☐ | ☐ | ☐ | ☐ | ☐ |
| HIV/AIDS Related | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☐ | ☐ |
| **G. Alcohol and Other Drug Prevention** | | | | | |
| Education/Information | ☐ | ☐ | ☐ | ☐ | ☐ |
| Postive Peer Leadership | ☐ | ☐ | ☐ | ☐ | ☐ |
| Alternative Activities/Recreation | ☐ | ☐ | ☐ | ☐ | ☐ |
| Refusal Skills | ☐ | ☐ | ☐ | ☐ | ☐ |
| Substance Abuse Screening | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☐ | ☐ |
| **H. Alternative Housing** | | | | | |
| Other Youth Shelter | ☐ | ☐ | ☐ | ☐ | ☐ |
| Foster Home | ☐ | ☐ | ☐ | ☐ | ☐ |
| Host Home | ☐ | ☐ | ☐ | ☐ | ☐ |
| Group Home | ☐ | ☐ | ☐ | ☐ | ☐ |
| Transitional Living Program | ☐ | ☐ | ☐ | ☐ | ☐ |
| Independent Living Program | ☐ | ☐ | ☐ | ☐ | ☐ |
| Job Corps (Residential) | ☐ | ☐ | ☐ | ☐ | ☐ |
| Residential Treatment | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☐ | ☐ |

## PART V: SERVICES TO YOUTH (continued)

6. Services Received by Youth (Continued):    (Check all that apply)

| | This Agency | Coordinating Agency | Referral Made, Services Provided | Referral Made, Status Unknown | Other |
|---|---|---|---|---|---|
| **I. Legal Services** | | | | | |
| To the Youth | ☐ | ☐ | ☐ | ☐ | ☐ |
| To the Family | ☐ | ☐ | ☐ | ☐ | ☐ |
| **J. Recreational Activities** | | | | | |
| Organized Sports Activities | ☐ | ☐ | ☐ | ☐ | ☐ |
| Arts and Crafts | ☐ | ☐ | ☐ | ☐ | ☐ |
| Field Trips | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☐ | ☐ |
| **K. Support Groups** | | | | | |
| Alcoholics Anonymous | ☐ | ☐ | ☐ | ☒ | ☐ |
| Narcotics/Cocaine Anonymous | ☐ | ☐ | ☐ | ☒ | ☐ |
| Alateen | ☐ | ☐ | ☐ | ☒ | ☐ |
| Alanon | ☐ | ☐ | ☐ | ☐ | ☐ |
| Spiritual | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☒ | ☐ |
| **L. Employment** | | | | | |
| Career Counseling | ☐ | ☐ | ☐ | ☐ | ☐ |
| Job Training | ☐ | ☐ | ☐ | ☐ | ☐ |
| Employability Training | ☐ | ☐ | ☐ | ☐ | ☐ |
| Employment Referral/Placement | ☐ | ☐ | ☐ | ☐ | ☐ |
| Job Corps (Non-Residential) | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☐ | ☐ |
| **M. Area Services** | | | | | |
| Outreach Services | ☐ | ☐ | ☐ | ☐ | ☐ |
| Promotional/Inst. Materials | ☐ | ☐ | ☐ | ☐ | ☐ |
| Language Assistance Services | ☐ | ☐ | ☐ | ☐ | ☐ |
| Respite Care | ☐ | ☐ | ☐ | ☐ | ☐ |
| Community Educational Events | ☐ | ☐ | ☐ | ☐ | ☐ |
| Training/Consultation | ☐ | ☐ | ☐ | ☐ | ☐ |
| Other | ☐ | ☐ | ☐ | ☐ | ☐ |

P.20
896 0157
HERE Program
Jun 17 05 03:15p

5. Has the youth ever used illicit drugs? (Circle one)  Yes  No
If no, skip to question 6.

On How Many Occasions (if any) Has the Youth:

| | | NUMBER OF OCCASIONS | | | | AGE AT FIRST USE | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Never Tried | 1-2 | 3-9 | 10-29 | 30+ | 11 or younger | 12-14 | 15-17 | 18 or older |
| H) Used Marijuana/Hashish | | | | | | | | | |
| 1) In the youth's lifetime: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☒ | ☐ |
| 2) During the past 6 months: | ☐ | ☐ | ☒ | ☐ | ☐ | | | | |
| I) Used Cocaine (exclude use of Crack) | | | | | | | | | |
| 1) In the youth's lifetime: | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| 2) During the past 6 months: | ☐ | ☐ | ☐ | ☐ | ☐ | | | | |
| J) Smoked Crack Cocaine (rock) | | | | | | | | | |
| 1) In the youth's lifetime: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 2) During the past 6 months: | ☒ | ☐ | ☐ | ☐ | ☐ | | | | |

Has the Youth Ever:

| | | | | | |
|---|---|---|---|---|---|
| K) Taken Steroids | Yes | No | P) Used Two or More Drugs on the Same Occasion (exclude alcohol and tobacco) | Yes | No |
| L) Taken Stimulants (such as Prescription Diet Pills, Uppers, Speed, ice) | Yes | No | Q) Used Alcohol and Marijuana on the Same Occasion | Yes | No |
| M) Taken Depressants (such as valium, quaaludes) | Yes | No | | | |
| N) Taken Narcotice (such as heroin/smack, codeine, morphine, dilaudid) | Yes | No | R) Used a Needle to Inject Cocaine, Heroin, or Illicit Drug | Yes | No |
| O) Taken Hallucinogens (such as PCP/angel dust, LSD/acid, mescaline, mushrooms, ecstasy) | Yes | No | | | |

6. Has the Youth Ever Been Asked to Sell Drugs? (circle one)  Yes  No

7. Has the Youth Ever Sold Drugs? (circle one)  Yes  No

| **RHY MIS** | **YOUTH PROFILE** | OMB: 0970-0123 |

## PART IV: ASSESSMENT: ATOD INFORMATION

Complete this form at intake for each youth served who has indicated a problem with alcohol, tobacco, or other drugs.

1. Agency ID:  `34165`        2. Youth ID: `—`

3. Intake Date:  `2 / 17 / 98`

4. On How Many Occasions (if any) Has Youth:

|  | NUMBER OF OCCASIONS | | | | | AGE AT FIRST USE | | | |
|---|---|---|---|---|---|---|---|---|---|
|  | Never Tried | 1-2 | 3-9 | 10-29 | 30+ | 11 or younger | 12-14 | 15-17 | 18 or older |
| A) Smoked Cigarettes<br>1) In the youth's lifetime:<br>2) During the past 6 months: | ☒<br>☒ | ☐<br>☐ | ☐<br>☐ | ☐<br>☐ | ☐<br>☐ | ☐ | ☐ | ☐ | ☐ |
| B) Used Smokeless Tobacco (chewing tobacco, snuff)<br>1) In the youth's lifetime:<br>2) During the past 6 months: | ☒<br>☒ | ☐<br>☐ | ☐<br>☐ | ☐<br>☐ | ☐<br>☐ | ☐ | ☐ | ☐ | ☐ |
| C) Had Beer, Wine (other than for religious use) or Wine Coolers<br>1) In the youth's lifetime:<br>2) During the past 6 months: | ☐<br>☐ | ☐<br>☒ | ☐<br>☐ | ☒<br>☒ | ☐<br>☐ | ☐ | ☐ | ☒ | ☐ |
| D) Had Liquor (such as rum, vodka, or whiskey)<br>1) In the youth's lifetime:<br>2) During the past 6 months: | ☐<br>☐ | ☐<br>☒ | ☐<br>☐ | ☒<br>☐ | ☐<br>☐ | ☐ | ☐ | ☒ | ☐ |
| E) Had Five or More Servings of any Alcohol on the Same Occasion<br>1) In the youth's lifetime:<br>2) During the past 6 months: | ☐<br>☐ | ☒<br>☒ | ☐<br>☐ | ☐<br>☐ | ☐<br>☐ | ☐ | ☐ | ☐ | ☐ |
| F) Used Inhalants (glue, paint, rush, cleaning fluids, gasoline)<br>1) In the youth's lifetime:<br>2) During the past 6 months: | ☒<br>☒ | ☐<br>☐ | ☐<br>☐ | ☐<br>☐ | ☐<br>☐ | ☐ | ☐ | ☐ | ☐ |
| G) Used Over-the-Counter Drugs (diet pills, No-Doz, caffeine) Above the Recommended Dosage<br>1) In the youth's lifetime:<br>2) During the past 6 months: | ☒<br>☒ | ☐<br>☐ | ☐<br>☐ | ☐<br>☐ | ☐<br>☐ | ☐ | ☐ | ☐ | ☐ |

STATE OF CALIFORNIA                                        COUNTY OF MONTEREY

(C.C.P. SEC. 466 & 2015.5; 28 U.S.C. SEC 1746)

I, _Edward Brown_ _____ declare under penalty of perjury that: I am
the _Petitioner_ _____ in the above entitled action; I have read the foregoing documents and
know the contents thereof and the same is true of my own knowledge, except as to matters stated therein upon
information, and belief. and as to those matters, I believe they are true.

Executed this _23_ day of _December_ , 20 _09_ , at Salinas Valley State Prison, Soledad, CA
93960-1050.

(Signature) _Edward Ben Brown_

DECLARANT/PRISONER

- - - - - - - - - - - - - - - - - - - - - - - - -

## PROOF OF SERVICE BY MAIL

I, _Edward Brown_ _____ , am a resident of California State Prison, I the County of
Monterey, State of California; I am over the age of eighteen (18) years and am/am not a party of the above
entitled action. My state prison address is: P.O. Box 1050, Soledad, CA 93960-1050.

On _____ , 20 _____ , I served the foregoing: _Federal Rules of_
_Civil Procedure, Rule 60(b)(1) Hearing_ _____

_____

_____
(Set forth exact title of document(s) served)

On the party(s) herein by placing a true copy(s) thereof, enclosed in sealed envelope(s), with postage thereof
fully paid, in the United States Mail, in a deposit box so provided at Salinas Valley State Prison, Soledad, CA
93960-1050.

_Eastern District of California_ _____

_U.S. District Court_ _____

_501  I street, Suite 4-401_ _____

_Sacramento, CA  95814_ _____
(List parties served)

There is delivery service by United States Mail at the place so addressed, and/or there is regular communication
by mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: _12/25/_ _____ , 20 _09_

_Edward Ben Brown_
DECLARANT/PRISONER